**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
Michael H. Holland, Micheal W. Buckner,             )
B.V. Hyler and Steven F. Schaab as Trustees         )
of the United Mine Workers of America 1974          )
Pension Trust,                                      )
                          Plaintiffs,               )
                                                    )
            v.                                      )
                                                    )    Case No. 07-cv-00490 (PLF/AK)
Freeman United Coal Mining Company, et al.,         )
                                                    )
                          Defendants.               )
_____)
                                                    )
Freeman United Coal Mining Company,                 )
                                                    )
                          Plaintiff,                )    Case No. 07-cv-01050 (PLF/AK)
                                                    )
            v.                                      )
                                                    )
United Mine Workers of America, et al.,             )
                                                    )
                          Defendants.               )
_____)

**FREEMAN UNITED COAL MINING COMPANY'S REPLY BRIEF**
**REGARDING EXTENSION OF THE SUMMARY JUDGMENT BRIEFING SCHEDULE**

On September 7 and 10, 2007, the 1974 Pension Trust, BCOA, and the UMWA (collectively the "opposing parties") filed more than 400 pages of summary judgment motions and supporting affidavits. Despite the fact that they have not yet produced *a single piece* of discovery to Freeman, these parties now oppose Freeman's reasonable request for six weeks to respond to the summary judgment motions and ask instead that Freeman be required either to respond within 11 days or limit its discovery rights under the Federal Rules of Civil Procedure. In adopting this position, the opposing parties improperly reargue the same position this Court already rejected regarding limitations on Freeman's discovery rights. Consistent with the

Court's prior scheduling order, the more appropriate course of action is to allow full discovery to proceed while Freeman has a reasonable amount of time to prepare a response that addresses the opposing parties' legal and factual arguments and identifies, under Federal Rule of Civil Procedure 56(f), the *additional* discovery it may need in order to respond in a comprehensive way. Freeman has suggested that six weeks is an entirely reasonable period of time for that process to occur, and nothing in the opposing parties' response suggests otherwise.

## **ARGUMENT**

On July 19, 2007, when the parties initially appeared before the Court for a status conference, the Court specifically rejected the position taken then, and taken now again, by the opposing parties. The opposing parties had proposed that "[d]iscovery initially will occur only as appropriate and permitted pursuant to Federal Rule of Civil Procedure 56(f)" and that "[e]xcept as permitted by Fed. R. Civ. P. 56(f), no discovery will begin until and unless the Court rules that there are genuine disputes of material fact that preclude summary judgment on one or more claims." Ex. A (Proposed Discovery Plan of 1974 Pension Trust, BCOA, and UMWA). At the conference, this Court disagreed and recognized that if the opposing parties file a summary judgment motion, there may be "two different tracks" of discovery going on simultaneously – one general and one related to Rule 56(f). Ex. B (Tr. at 15). Following the conference, the Court ruled that there would be "no limits on discovery other than those specified in the Federal Rules of Civil Procedure and the Local Rules." Ex. C (Order at 2 (July 20, 2007)). By withholding their consent to Freeman's entirely reasonable six-week proposed briefing schedule (which is now less than five weeks away), the opposing parties are attempting to force Freeman to accept a position this Court has already rejected.

The opposing parties also argue that in its prior order, this Court specifically ruled that Freeman had only 11 days to respond to the opposing parties' motions for summary judgment. That was not precisely the case either.  Freeman's time to respond to a summary judgment motion was not even in issue, briefed or argued at the July status conference.  Because no summary judgment motions were on file (and Freeman certainly did not know it would need to respond to 400 pages of briefs and exhibits), no one, including the Court, addressed how much time Freeman would actually need to answer.  The opposing parties initially told the Court that they would file motions for summary judgment on August 20th and that Freeman would have six weeks to answer them.  *See* Ex. D (1974 Pension Trust Proposed Scheduling Order).  That is exactly the schedule Freeman now proposes (albeit shifted somewhat because the opposing parties filed their motions for summary judgment on September 7 and 10, rather than August 20).

The alternative proposed by the opposing parties will waste scarce judicial resources. This Court has repeatedly held that "where the party making the Rule 56(f) motion has not yet conducted any discovery, that party's Rule 56(f) motion should normally be granted."  *Bolger v. District of Columbia*, --- F.Supp.2d ----, 2007 WL 2601416, at *3 (D.D.C. Sept. 11, 2007). Indeed, "Rule 56(f) motions should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'"  *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) (quoting *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n. 4 (5th Cir.1992)); *see also Loughlin v. United States*, 230 F. Supp. 2d 26, 51 (D.D.C. 2002) ("This Circuit has noted that courts should follow a generous approach toward granting Rule 56(f) motions.").

Therefore, forcing Freeman to go through the meaningless act of filing a Rule 56(f) motion in an 11-day period, before a single piece of paper is produced in discovery, will not

assist either the Court or the parties in achieving an expeditious resolution of this matter. And, to date, Freeman has only been stymied in its attempts to obtain discovery here. On August 6, 2007, Freeman served all of the opposing parties with requests for production of documents seeking discovery that is critical to Freeman's ability to present by affidavit the facts essential to its opposition to the motions for summary judgment. On September 10 and 11, 2007, the opposing parties responded to Freeman's discovery requests by objecting to the vast majority of requests and not producing any documents. *See* Exhibits E, F, G (Opposing Parties' Responses to Freeman's Requests for Production).[1] Because Freeman has not yet received *any* discovery that would allow it to determine what *further* discovery is necessary, Freeman cannot submit a meaningful Rule 56(f) motion in which it identifies exactly why the discovery it has already requested is necessary for it to be able to "present by affidavit facts essential to justify [its] opposition" to the motions for summary judgment. Fed. R. Civ. P. 56(f).

Finally, plaintiff's position that Freeman not be allowed full discovery but be limited only to discovery on Rule 56(f) issues is inherently unworkable. At this early stage, it is already readily apparent that the parties have a completely different view of what discovery is necessary for Freeman to respond to their voluminous summary judgment motions.[2] The opposing parties' position will likely lead only to unnecessary disputes and motion practice over whether certain

---

[1] The opposing parties did agree to produce some materials pursuant to a protective order. It was not until yesterday that the opposing parties proposed a draft of such an order.

[2] In footnote 2 of their brief, the opposing parties list some of the discovery sought by Freeman that they have determined is not relevant to the pending motions for summary judgment. But discovery of much of this material is critical to Freeman's entire theory of the case. Taking just the first in their list as an example, discovery of the identity of members of various BCOA committees responsible for negotiation of the various NBCWAs is essential to proving Freeman's theory that the BCOA once was, but is no longer a multi-employer organization with the capacity to bind employers via the Evergreen Clause.

discovery falls under "general" discovery pursuant to Rule 26 or is specifically necessary under Rule 56(f). In light of the voluminous summary judgment motions that are now pending, the parties – and the Court – have much better uses for their time.

## **CONCLUSION**

For all the foregoing reasons, Freeman respectfully requests that this Court allow it more than 11 days to respond to the more than 400 pages of complex factual and legal issues raised in the opposing parties' motions for summary judgment. The date that Freeman proposed for it to file its responses and oppositions to the motions for summary judgment (including any motions under Rule 56(f)) is October 22, 2007, which is now less than five weeks away.

Respectfully submitted,


   /s/ Paul M. Smith                 

Paul M. Smith
DC Bar No. 358870
Jessica Ring Amunson
DC Bar No. 497223
JENNER & BLOCK LLP
601 13th street, NW
Washington, DC 20005
Tel:   (202) 639-6000
Fax:   (202) 661-4993
psmith@jenner.com
jamunson@jenner.com

Susan C. Levy (*pro hac vice*)
JENNER & BLOCK LLP
333 North Wabash Avenue
Chicago, IL 60611
Tel:   (312) 923-2772
Fax:   (312) 840-7772
slevy@jenner.com

Michael W. Robinson
DC Bar No. 437979

Gregory J. Ossi
DC Bar No. 460243
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Tel:     (703) 760-1600
Fax:     (703) 812-8949
mwrobinson@jenner.com
gjossi@jenner.com

***Counsel for Freeman United
Coal Mining Company***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of September, 2007, I served the foregoing Freeman's Reply Brief Regarding Extension of the Summary Judgment Briefing Schedule by this court's ECF system, which caused copies to be sent to counsel of record in this consolidated litigation.


                                    /s/Paul M. Smith
                                    Paul M. Smith

# EXHIBIT A

**Proposed Discovery Plan of 1974 Pension Trust, BCOA, and UMWA**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Michael H. Holland, Micheal W. Buckner, B.V. Hyler and Steven F. Schaab as Trustees of the United Mine Workers of America 1974 Pension Trust, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. 07-cv-490 |
| Freeman United Coal Mining Company, et al., | ) ) ) ) | Judge Paul L. Friedman |
| Defendants. | ) ) | |
| Freeman United Coal Mining Company, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07-cv-1050 |
| v. | ) ) ) | Judge Paul L. Friedman |
| United Mine Workers of America, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## PROPOSED DISCOVERY PLAN OF 1974 PENSION TRUST, BCOA, AND UMWA

Now come the 1974 Pension Trust and its Trustees, BCOA and UMWA, by and through their respective counsel, and hereby jointly submit to the Court their Proposed Discovery Plan, pursuant to Federal Rule of Civil Procedure 26(f). The parties conducted their discovery conference on July 6, 2007. Freeman and Monterey will separately submit their proposed Discovery Plan to the Court.

1.   **Rule 26(A) Disclosures**

The initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) are unnecessary, in light of the early summary judgment motions.

2.   **Discovery Issues and Dates**:

A.    Discovery initially will occur only as appropriate and permitted pursuant to Federal Rule of Civil Procedure 56(f).  The schedule for that discovery will depend upon the scope of what the parties agree, or the Court finds, to be appropriate under Rule 56(f).

B.    Except as permitted by Fed. R. Civ. P. 56(f), no discovery will begin until and unless the Court rules that there are genuine disputes of material fact that preclude summary judgment on one or more claims. In that event, the parties will confer to attempt agreement on the appropriate length of the discovery period in light of the scope of the remaining issues.  They will either submit a joint proposal to the Court at that time or will submit separate statements of the period they believe appropriate, with explanations. This period of discovery is referred to below as "general discovery."

B.    This proceeding should be bifurcated so that no discovery or trial will proceed on any issue of damages unless and until there is a judgment on the merits in favor of a plaintiff.

C.    If any party files an expert opinion in support of a motion for summary judgment or an opposition to a motion for summary judgment, that party will provide the expert witness disclosure that is required by Fed. R. Civ. P. Rule 26(a)(2) on the same date as it files the expert opinion.  If an opposing party requires a deposition of the expert witness in order to respond to the summary judgment motion or the opposition to the

summary judgment motion, that deposition may be conducted within 30 days after receipt of the Rule 26(a)(2) disclosure.

D.    Disclosure and report of other expert opinions, if any, will be made by all parties 30 days after the close of general discovery, in accordance with Rule 26(a)(2).

E.    Disclosure and report of responsive expert(s), if any, will be made by all parties within 45 days after receiving the disclosure described in paragraph D, in accordance with Rule 26(a)(2).

F.    Depositions of experts identified as described in paragraphs D and E will take place within 45 days after the disclosure described in paragraph E.

3.    **Changes To The Limitations on Discovery Imposed By the Federal Rules of Civil Procedure and Additional Limitations on Discovery**

The limits on discovery specified in the Federal Rules of Civil Procedure should apply in the aggregate to each side, treating Pension Trust, BCOA and UMWA as one side and Freeman and Monterey as the other side.

4.    **Other Court Orders Under Rule 26(c) or Rule 16(b) and (c)**

If a protective order becomes necessary in light of the scope of any party's discovery requests, the party requiring such an order will be responsible for attempting to reach agreement among all parties to terms and submitting the proposed order to the Court.

Respectfully submitted,

_____/s/_____

JULIA PENNY CLARK
D.C. Bar No. 269609
ANDREW D. ROTH
D.C. Bar No. 414038
CHARLOTTE GARDEN
D.C. Bar No. 489040

Bredhoff & Kaiser P.L.L.C.
805 Fifteenth Street N.W.
Suite 1000
Washington, DC 20005
Telephone:  202-842-2600
DAVID W. ALLEN
General Counsel
D.C. Bar No. 81638
LARRY D. NEWSOME
Associate General Counsel
D.C. Bar No. 254763
CHRISTOPHER F. CLARKE
Senior Assistant General Counsel
D.C. Bar No. 441708

UMWA HEALTH & RETIREMENT
FUNDS
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C.  20037
Telephone:  202-521-2238

*Counsel for Michael H. Holland, Micheal
W. Buckner, B.V. Hyler and Steven F.
Schaab and the United Mine Workers of
America 1974 Pension Trust*


  /s/_____
Grant Crandall
Deborah Stern, DC Bar No.362764
United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031
(703) 208-7200


_____
John R. Mooney, DC Bar No. 375886
Mark J. Murphy, DC Bar No. 453060
Mooney, Green, Baker
  & Saindon, P.C.
1920 L Street, N.W.
Suite 400
Washington, D.C. 20036
(202) 783-0010

*Counsel for Defendant United Mine*
*Workers of America*

_____/s/_____

PETER BUSCEMI
D.C. Bar No. 269092
STANLEY F. LECHNER
D.C Bar No. 370986
CHARLES P. GROPPE
D.C. Bar No. 464035

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel:    (202) 739-3000
Fax:    (202) 739-3001
E-mail: pbuscemi@morganlewis.com
        slechner@morganlewis.com
        cgroppe@morganlewis.com

# EXHIBIT B

**Transcript of July 19, 2007 Status Conference**

1

1　　　　　　　　IN THE UNITED STATES DISTRICT COURT
2　　　　　　　　　FOR THE DISTRICT OF COLUMBIA

MICHAEL H. HOLLAND, et al,　　　. Docket No. CV-07-490 (PLF)
3　　　　　　　　　　　　　　　　　.
　　　Plaintiff,　　　　　　　　　.
4　　　　　　　　　　　　　　　　　. Washington, D.C.
　　　v.　　　　　　　　　　　　　. July 19, 2007
5　　　　　　　　　　　　　　　　　. 10:00 a.m.
FREEMAN UNITED COAL MINING　　　　.
6　COMPANY, et al,　　　　　　　　　.
　　　　　　　　　　　　　　　　　.
7　　　Defendant.　　　　　　　　　.
　. . . . . . . . . . . . . . . .
8　　　　　　　　　　　TRANSCRIPT OF HEARING
　　　　　　BEFORE THE HONORABLE PAUL L. FRIEDMAN
9　　　　　　　　UNITED STATES DISTRICT JUDGE

10　APPEARANCES:

11　For the Plaintiffs:　　　　Bredhoff & Kaiser, PLLC
　　　　　　　　　　　　　　　　By: Julia Penny Clark, Esquire
12
　　　　　　　　　　　　　　　　UMWA Health & Retirement Funds
13　　　　　　　　　　　　　　　　By Christopher F. Clarke, Esquire

14　　　　　　　　　　　　　　　　Morgan, Lewis
　　　　　　　　　　　　　　　　By: Peter Buscemi, Esquire
15
For the Defendants:　　　　Jenner & Block
16　　　　　　　　　　　　　　　　By: Jessica Ring Amunsom, Esquire
　　　　　　　　　　　　　　　　　Susan C. Levy, Esquire
17
　　　　　　　　　　　　　　　　Venable, LLP
18　　　　　　　　　　　　　　　　By: Michael W. Robinson, Esquire
　　　　　　　　　　　　　　　　　Gregory J. Ossi, Esquire
19
　　　　　　　　　　　　　　　　Ogletree, Deakins, Nash,
20　　　　　　　　　　　　　　　　Smoak & Stewart, P.C.
　　　　　　　　　　　　　　　　By: John R. Woodrum, Esquire
21
　　　　　　　　　　　　　　　　Mark Murphy, Esquire
22
Court Reporter:　　　　　　Linda L. Russo, RPR
23　　　　　　　　　　　　　　　　Official Court Reporter
　　　　　　　　　　　　　　　　Room 6403, U.S. Courthouse
24　　　　　　　　　　　　　　　　Washington, D.C. 20001
　　　　　　　　　　　　　　　　202.354.3244
25　Proceedings reported by machine shorthand, transcript produced
　by computer-aided transcription

1                        P R O C E E D I N G S

2          THE CLERK:  Civil action 07-490, Michael H. Holland

3  et al, versus Freeman United Coal Mining Company, et al.  For

4  the plaintiff, Ms. Clark, Mr. Clarke and Mr. Buscemi.  For the

5  defendants, Ms. Amunson, Mr. Robinson, Ms. Levy, Mr. Woodrum,

6  Mr. Murphy and Mr. Ossi.

7          THE COURT:  Good morning.  You need all these people

8  for a status conference?  Well, I was thinking that since you

9  can't agree on anything, that what we ought to do is go ahead

10  with fact discovery on liability but not damages, forget about

11  expert discovery for the time being.  The party that thinks

12  it's all a matter of law and we don't need any discovery can,

13  in addition to participating in discovery, move for summary

14  judgment any time they want to.  If the other side, any other

15  side will respond in accordance with the days set forth in the

16  rules, and if they think it's premature they can tell me it's

17  premature and that I shouldn't decide it until after fact

18  discovery is over.  And just because you file a motion, there's

19  no obligation to decide it.

20          With this many people here, it seems to me I should

21  refer all discovery disputes to a Magistrate Judge, and I'll

22  see you when the summary judgment motions are filed.

23          So all we need to do is set dates, since there are no

24  dates in your Rule 16.3 because you couldn't agree on a

25  procedure.  But I think we should set dates for fact discovery

3

1    and, as I said, if you want to file a motion for summary

2    judgment, the other side has to respond.  But I'm not sure

3    whether that makes sense.

4           I don't know how I can decide at this point whether

5    it's a pure question of law on one count or both counts.  If

6    it's a pure question of law, I guess you can move to dismiss.

7    But if you need some things outside the four corners of the

8    pleadings and the other side thinks you need discovery, I don't

9    know how to decide that other than to go ahead and have

10   discovery.

11          So who wants to suggest something in view of my

12   comments?

13          MR. ROBINSON:  I guess I'll take a shot at that.

14   Michael Robinson on behalf of the defendant Freeman.

15          Your Honor, during the conference we had suggested a

16   six month time period for fact discovery that I think would

17   take us to the end of January.  There was no magic to six

18   months.  I'm not suggesting that it necessarily has to be six

19   months, but that's at least the time frame that was discussed

20   in the context of the Rule 16, that if we were to proceed with

21   fact discovery that a period of six months would be more than

22   sufficient to complete that.

23          THE COURT:  And that's on liability.

24          MR. ROBINSON:  That's on the issue of liability.

25          THE COURT:  Do you think if at the end of that time

4

1    your client's going to file a motion for summary judgment, one

2    thing I wasn't clear on from what I read is whether or not

3    anybody believes that expert discovery has to take place before

4    a viable summary judgment motion can be filed.

5            I think the party that would like to go forward with

6    briefing without discovery, part of it is that discovery takes

7    time and it costs money for everybody, and nothing costs more

8    than expert discovery.

9            MR. ROBINSON:  At this point in trying to predict the

10   future, I can't tell the Court that I think expert discovery

11   will be necessary to address whatever issues they wish to

12   raise.  I don't know the exact issues that they will raise, so

13   I think in that context, if we got to that point and there was

14   a summary judgment motion in which I needed an expert, I think

15   it would be incumbent on me at that point to come forward

16   pursuant to Rule 56 and tell the Court at that time.

17           As we stand here today I can't tell the Court that I

18   think expert discovery will be necessary to resolve the issues

19   that they may want to raise.

20           THE COURT:  Okay.  So you're suggesting six months

21   liability only, not experts yet.

22           MR. ROBINSON:  In that time frame like I -- you know,

23   again, the six months wasn't magic.  We were talking the four

24   to six month time period, and the four and five month period

25   put us right into the middle of the holidays, so we just pushed

5

1   it to January.

2           THE COURT:  Who else wants to weigh in?

3           MS. CLARK:  Your Honor, Julia Penny Clark for the

4   Pension Trust.  I think that we're going to need very little

5   discovery for our part.  I think that six months is probably an

6   adequate amount of time for fact discovery.  The main

7   complication on our side is that we have a very large volume of

8   materials from the prior litigation over the meaning of this

9   Evergreen clause, as well as the meaning of the Guarantee

10  clause, which they have listed as one of the topics they wish

11  to have discovery on.  And it's complicated with

12  confidentiality agreements that we signed in order to get those

13  documents.  And so the main thing that's going to take time on

14  our side is simply mustering those materials to respond to any

15  discovery requests that we receive.

16          THE COURT:  So you have confidentiality agreements

17  with people who are not parties to this litigation?

18          MS. CLARK:  That's correct.  Each of the coal

19  companies that produce negotiating materials to us has insisted

20  on confidentiality agreements, so we will need to get back to

21  them and try to negotiate with them an amendment to the

22  agreement that permits us to put it here under a similar

23  confidentiality agreement, which we hope to bring to the Court

24  fairly shortly.  But that will take some time.  And in light of

25  that, I think from our standpoint the six month period sounds

6

1    appropriate, but not because we're going to need a lot of fact
2    discovery on our side.
3         THE COURT:  And the other side is going to have to be
4    sympathetic and sensitive to the notion that you have to work
5    things out with other people before they get some of the
6    documents, so don't run in and try to take depositions before
7    you have the documents you need.
8         MS. CLARK:  Right.  And that, of course, depends on
9    what the scope of their actual requests are.  But they did list
10   negotiating documents in what they thought were the appropriate
11   subjects for discovery, and those are virtually all covered by
12   confidentiality agreements.  The ones that were actually filed
13   in court in the earlier litigation, many of them, the
14   confidentiality ended up being waived so that we wouldn't have
15   to file them under seal.  Those, once we sort them out, we'll
16   be able to provide free of those agreements, but there are,
17   many of the underlying documents are still confidential.
18        THE COURT:  The case you're referring to, was that
19   before Judge Hogan?
20        MS. CLARK:  Yes, primarily.  That was the
21   multidistrict litigation and the Pittston case, and a couple of
22   others.  That litigation went on for about ten years.
23        THE COURT:  Is that what's in store?
24        MS. CLARK:  We hope not, but that was one of the
25   reasons we were proposing a summary judgment motion up front to

7

1    try to narrow the issues, was in order to avoid any repeat of
2    that lengthy litigation.
3            There were other cases, the Island Creek case, in
4    which there was also extensive discovery following a Court of
5    Appeals ruling in I believe it was 1992, that reversed a
6    dismissal order that Judge Harris had entered.  And then the
7    Guarantee clause litigation, which went on for several years
8    itself.  So there's a lot of litigation, a lot of files, and I
9    asked my paralegals to give me an estimate of how many boxes,
10   and we're talking in the hundreds.
11           THE COURT:  Since you seem to be knowledgeable about
12   all this history, did Judge Hogan or Judge Harris use a
13   Magistrate Judge to assist in managing the discovery?
14           MS. CLARK:  Judge Hogan referred some discovery
15   disputes to Judge Kay, and that was, I think that was the
16   limit.  Deborah Robinson also saw something, but I think it was
17   extremely limited.  Judge Kay was the one who had more contact
18   with this.
19           THE COURT:  Obviously in a case this big with this
20   many documents, and confidentiality and protective orders, the
21   more you can try to work things out with each other in a
22   professional way will be helpful to everybody.
23           MS. CLARK:  Certainly.  It's also we find in the
24   interest of our clients not to spend a lot of money litigating
25   over issues that can be worked out.

8

```
 1          THE COURT:  I agree with that absolutely.  All right,
 2   any other thoughts, or anything else we should talk about?
 3          MR. ROBINSON:  Michael Robinson again.  In light of
 4   the comments regarding the confidentiality, I think our report
 5   indicated that if a protective order became necessary, that the
 6   parties would work that out.  I think that's probably something
 7   we need to start on right away.  There will need to be a
 8   protective order, and that is not an issue.  We should be able
 9   to work that out.
10          THE COURT:  I think Ms. Clark was suggesting just
11   that, that you need to work out a protective order.  She needs
12   to work things out with other people, and then you can start
13   the discovery process.
14          Maybe what we ought to do, and again, if the
15   plaintiffs want to file motion for summary judgment they can,
16   but I think what we ought to do is to go forward down this road
17   for six months.  And then maybe should we have another status
18   conference before anybody -- I'm not precluding anybody from
19   filing motions, but does it make sense to come back at that
20   point and say, okay, here's where we are, and we have now
21   decided this is what we want to do on motions, or we have now
22   decided we need experts before we do motions, or we need a
23   limited number of experts.  Is there something to be gained by
24   coming back in six months rather than just, say, the middle of
25   January, or the end of January discovery closes and here's the
```

9

1   dates for motions.  I'll do it however you all want.

2            You don't have to bring everybody next time.

3   Mr. Buscemi probably flew in from San Francisco, for all I

4   know.

5            MR. BUSCEMI:  Your Honor, I don't want to anticipate

6   disputes that may never arise, but I do think it's important to

7   inform the Court at the outset because we have an indication of

8   what we are likely to receive.  We haven't received any

9   discovery requests yet, of course, but we do have in paragraph

10  2-A of the proposed discovery plans submitted by opposing

11  counsel a laundry list of 11 different subject areas that they

12  say they wish to explore in discovery.  And I'll call Your

13  Honor's attention to just a couple of them.  If you look, for

14  example, at number --

15           THE COURT:  I don't know if I've seen that.  Have I

16  seen that?

17           MR. BUSCEMI:  Well, it's their proposed discovery

18  plan that was submitted with the local Rule 16.3 report.

19           THE COURT:  Okay, I have it.  Go ahead.

20           MR. BUSCEMI:  So if you look at paragraph 2-A, you

21  can see that they have already announced that they are going to

22  seek, for example look at number six, all negotiations and all

23  communications among or between the 1974 Pension Trust, BCOA,

24  and the UMWA regarding the Evergreen clause.  Number seven, all

25  negotiations regarding the Guarantee clause.  Well, those

10

1    clauses were initially adopted back in 1978.

2            This is essentially an effort to redo the extended

3    litigation to which Ms. Clark referred before Judge Hogan.  And

4    if in fact those are the discovery requests that we receive, at

5    least our clients intention would be to object to those

6    requests because there is no reason to start all over again

7    from the beginning, which is what they are suggesting they want

8    to do.

9            So I just wanted the Court to be aware, and I agree

10    with Ms. Clark that I know that Magistrate Judges can be very

11    helpful on discovery things, but on some of these big picture

12    items that have to do with the entire scope and context of the

13    litigation and what tasks we're going to try to perform in the

14    litigation, the Court's involvement might be very helpful

15    because I think there are going to be some threshold questions,

16    at least if the discovery requests that we get track what's

17    here in paragraph 2-A.

18            THE COURT:  Mr. Robinson.

19            MR. ROBINSON:  Briefly, Your Honor, in response to

20    the Court's question about whether an additional conference

21    would be helpful, we believe that it would be helpful.  And

22    whether you set that in January or at the end of the six

23    months, we think that would be helpful.  It may be very short

24    if the parties have made progress and we have an agreed plan at

25    that point as to how to go forward, but we think that would be

11

1    helpful.

2            In response to the anticipated objections to

3    discovery, we're not relitigating the Pittston case.  There are

4    facts and evidence that are relevant to today's issues that

5    were also relevant to that case, but that doesn't make us

6    attempting, or it shouldn't be suggested that we're simply

7    trying to relitigate that case.  Facts and evidence can be

8    relevant to many different issues.  And so when we submitted

9    our discovery plan where we gave the Court some suggested dates

10   and gave a preview of some of the types of issues, that was in

11   the spirit of showing the Court the types of issues that might

12   come up.

13           If they have objections to the actual discovery

14   requests when they are served, I'm assuming that will be

15   referred to the Magistrate Judge as the Court suggested

16   earlier.

17           THE COURT:  I've got two competing discover plans

18   here, or are they the same?

19           MR. ROBINSON:  I believe you do have two competing

20   discovery plans.  One was submitted as our proposed plan if

21   discovery was to proceed as has now been decided, and the

22   funds -- and the Union had submitted their own plan based on I

23   believe some period of time where there would be no discovery

24   until after summary judgment motions were decided.  So each

25   side had put their competing ideas into a plan.

12

1        THE COURT: Mr. Buscemi.

2        MR. BUSCEMI: Your Honor, just so the record is clear

3    about what our discovery plan was, our discovery plan was not

4    that there would be no discovery until summary judgment motions

5    had been decided.  Our discovery plan was that we would file

6    our motion for summary judgment, and then our opponents would

7    indicate what, if any, discovery they needed to respond to that

8    motion under Rule 56(f).  If the court decided that discovery

9    was warranted once they explained why they needed it to respond

10   to the points made in our motion, then that discovery would

11   occur before summary judgment was decided.  But not just

12   open-ended discovery when we think we can substantially narrow,

13   if not eliminate the issues through an early motion.  That was

14   our plan.

15       THE COURT: How do you respond to their argument that

16   even if you were right, it would only deal with one but not

17   both counts of the --

18       MR. BUSCEMI: We don't think that's true at all, Your

19   Honor, for a couple of reasons.  Number one, the second count,

20   the count that's plead only against our client BCOA, is a state

21   law count.  It's here only under Section 1367, supplemental

22   jurisdiction.  It wouldn't be here at all were it not for their

23   Count One.  So that's point number one.

24       Point number two, we think that's also subject to

25   being dealt with on summary judgment.  They're claiming, for

13

1    example, that the contribution rate that was negotiated in the

2    National Bituminous Coal Wage Agreement of 2007 is arbitrary,

3    capricious and unreasonable.  Well, every coal company in the

4    country except the two that are here in this courtroom is

5    paying it.  So we don't think it's arbitrary, capricious and

6    unreasonable, and we don't think there's going to be a genuine

7    issue of material fact about that.  Thank you.

8            THE COURT:  Well, if we go forward as I was

9    suggesting with more general discovery, maybe you can't answer

10   this question today, would it still be your intention to file a

11   motion for summary judgment early?

12           MR. BUSCEMI:  Yes, Your Honor.

13           THE COURT:  So that's going to happen regardless.

14           MR. BUSCEMI:  Yes, it is.

15           THE COURT:  Well, I guess that's going to happen

16   regardless, and you're going to have to respond to it.

17           MR. ROBINSON:  Your Honor, that would be the standard

18   procedure in any case, that if a motion for summary judgment is

19   filed I'll need to respond to it.  It may include Rule 56(f)

20   issues, but until we see the motion, until we see what the

21   issues are, we don't have to anticipate that other than knowing

22   what our obligations are under the rules when and if that

23   comes.

24           THE COURT:  Mr. Buscemi raises the breadth of 2-A,

25   and I suppose that if the actual discovery requests are as

14

```
 1    broad as this paragraph suggests that they are, there are going
 2    to be a lot of objections that are going to be filed by the
 3    other side, overbreadth going back too many years, and things
 4    like that, that a Magistrate Judge is going to have to decide.
 5    So you don't want to create more problems for yourself than you
 6    need to.
 7            MR. ROBINSON:  I understand, and I appreciate the
 8    Court's guidance on that.  I think the fact that much of this
 9    discovery, as they have said, or at least of the older
10    discovery, much of it may already be in boxes that are waiting
11    to be reviewed, and then for us to review may certainly lessen
12    the burden, not on those of us reviewing them, but the burden
13    of gathering these documents or saying you're going back too
14    many years.  If the material was developed in the litigation 15
15    years ago, it may very well simply be waiting for us to see.
16            THE COURT:  The question always is do you really need
17    it all?
18            MR. ROBINSON:  I understand.
19            THE COURT:  Just because it's sitting there in boxes,
20    if they don't think it's material or relevant to this lawsuit,
21    they're going to have objections.
22            MR. ROBINSON:  I understand.  And if those objections
23    are unopposed, counsel will have to confer and try to work
24    those out, and then either narrow the issues or present more
25    narrowed issues to the Court if that becomes necessary.  I
```

15

1   think we weren't trying to set forth specific discovery

2   requests in that plan.  We were really giving the Court an idea

3   of the topics, and not simply setting out the specific requests

4   that might be coming.

5            THE COURT:  Well, I think what we should do is, I'll

6   issue some sort of a scheduling order which deals with this,

7   but I think for now we should deal with fact -- I'm not going

8   to set any dates for expert discovery, and nobody is going to

9   do anything about expert discovery.  It's going to be fact

10  discovery relating to liability.  And if in the meantime the

11  plaintiffs file a motion for summary judgment, depending upon

12  when they file it, you may say that we can't respond yet.

13           Now, under Rule 56(f), as I understand Rule 56(f),

14  even though general discovery is going on, what you're supposed

15  to do under Rule 56(f) is not to say we need to complete

16  discovery to respond.  You're supposed to say this is the

17  nature of the discovery that we need in order to respond to the

18  motion that we now have.

19           So we may find ourselves on two different tracks,

20  that you're trying to do all discovery within six months, and

21  at the same time be asking for 30 or 45 days to finish more

22  targeted limited discovery in order to respond.  But we'll just

23  have to see.

24           What I'm going to do is, I'm going to issue an order,

25  after thinking a little further about this, and I may talk with

16

1    Judge Kay since his name has been invoked here, he'll be
2    delighted, and see what his schedule looks like, and let him
3    deal with these problems.
4           Now, I don't know whether Mr. Buscemi was suggesting
5    that there should be another status conference before me
6    somewhere in the middle of this six months period.  He was
7    suggesting that there might be broader issues that I ought to
8    deal with rather than the narrower issues that a Magistrate
9    Judge ought to deal with.  Or do you want to leave it open, and
10   if you need me you'll call and we'll set something up?
11          MR. BUSCEMI:  That's fine, Your Honor.  What I was
12   suggesting was that if we get the kind of discovery request
13   that we feared we would after seeing the proposed discovery
14   plan, I think you're looking at the overall metes and bounds of
15   the litigation and not whether this particular request or that
16   one should be tweaked a little bit.  And in the event that
17   that's the nature of the debate that we've having, I would
18   suggest that we'll wind up before you, in any event, even if
19   only after Magistrate Judge key gets involved.  So just in the
20   interest of efficiency, I was thinking that kind of dispute
21   ought to come to you.
22          THE COURT:  That may be, if it's a global kind of
23   issue.  All right, in the meantime, assuming six months for
24   discovery, do you want to set a status conference sometime in
25   January?

17

```
 1              MR. ROBINSON:  That's fine with us, Your Honor.
 2              THE COURT:  Well, the week of January 21st begins
 3    with Martin Luther King Day, which is a holiday, so is any time
 4    later that week or the following week good for everybody?
 5              MS. CLARK:  Yes, Your Honor.
 6              MR. ROBINSON:  That's fine, Your Honor, yes.
 7              THE COURT:  All right, just pick a day.  Any
 8    particular days of the week you like better?
 9              MR. ROBINSON:  Saturday.
10              Your Honor, that Tuesday after the holiday would be
11    fine.
12              THE COURT:  Mr. Buscemi doesn't want to do that.  Mr.
13    Buscemi lives in two cities.
14              MR. BUSCEMI:  How about Thursday?
15              THE COURT:  Mr. Buscemi leaves in two cities now, I
16    happen to know.  How about Thursday at 9:30, Thursday the 24th.
17              All right, anything else that we can fruitfully
18    discuss, assuming that this was fruitful.  All right, I'll see
19    you then.  I will issue some sort of an order.  I will talk
20    with Judge Kay and see where we are in that as well.  Thank
21    you.
22              (Proceedings concluded.)
23
24
25
```

18

1                                 CERTIFICATE

2            I, LINDA L. RUSSO, Official Court Reporter, certify

3     that the foregoing pages are a correct transcript from the

4     record of proceedings in the above-entitled matter.

5

6

7                              _____

8                              Linda L. Russo, RPR
                               Virginia CCR No: 0313102

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

**Scheduling Order (July 20, 2007)**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL H. HOLLAND, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-0490 (PLF) |
| ) | |
| FREEMAN UNITED COAL MINING CO., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| FREEMAN UNITED COAL MINING CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1050 (PLF) |
| ) | |
| UNITED MINE WORKERS OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

SCHEDULING ORDER

The parties appeared for a meet and confer status conference on July 19, 2007.

Based upon the Rule 16.3 Joint Report submitted to the Court and the representations of counsel,

it is hereby ORDERED that

      1.     Any motion to amend the pleadings or join additional parties shall be

made by August 9, 2007.

      2.     Fact discovery with respect to liability (and not damages, or expert

discovery) shall be completed by January 18, 2008. No discovery with respect to damages and

no expert discovery shall take place unless by agreement of the parties or Order of the Court.

Counsel must resolve all discovery disputes or bring them to the Court's attention in a timely manner so as to allow sufficient time for the completion of fact discovery by this date. As discussed at the status conference, management of discovery and resolution of discovery disputes in these matters will be referred to Magistrate Judge Alan Kay.

   3. There will be no limits on discovery other than those specified in the Federal Rules of Civil Procedure and the Local Rules. These limits will apply in the aggregate to each side, treating the 1974 Pension Trust, BCOA and UMWA as one side and Freeman and Monterey as the other side.

   4. Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure are dispensed with.

   5. Counsel are required to confer in good faith in an effort to resolve all discovery disputes before bringing the dispute to the Court. Counsel shall not file a discovery motion without a prior conference with opposing counsel.

   6. Any party may file a motion for summary judgment or partial judgment at any time. The timing for the filing of oppositions and replies will be governed by the Rules unless otherwise agreed to by the parties.

   7. A further status conference is scheduled for January 24, 2008 at 9:30 a.m.

   8. Counsel are expected to evaluate their respective cases for settlement purposes. Submission to alternative dispute resolution, e.g., mediation or neutral evaluation, is encouraged and is available by request of the Court at any time, as is a settlement conference before a magistrate judge. If the case settles in whole or in part, plaintiff's counsel shall advise the Court by promptly filing a stipulation.

9.      Counsel are reminded to comply with Local Civil Rule 7(m), which requires counsel to confer on all nondispositive motions prior to filing them with the Court.  <u>See</u> LCvR 7.  The party filing the motion shall include in its motion a statement that the required discussion occurred and a statement as to whether the motion is opposed.

SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  July 20, 2007

# EXHIBIT D

**1974 Pension Trust Proposed Scheduling Order**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Michael H. Holland, Micheal W. Buckner, B.V. Hyler and Steven F. Schaab as Trustees of the United Mine Workers of America 1974 Pension Trust, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 07-cv-490 |
| Freeman United Coal Mining Company, et al., | ) ) ) | Judge Paul L. Friedman |
| Defendants. | ) ) | |
| Freeman United Coal Mining Company, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07-cv-1050 |
| v. | ) ) | Judge Paul L. Friedman |
| United Mine Workers of America, et al., | ) ) ) | |
| Defendants. | ) ) | |

### SCHEDULING ORDER

It is hereby ORDERED and DECREED on this _____ day of _____,

2007 that the schedule in this matter shall be as follows:

(1) The United Mine Workers of America 1974 Pension Trust and its Trustees

(the "Pension Trust"), the Bituminous Coal Operators' Association, Inc.

("BCOA'), and the United Mine Workers of America ("UMWA") shall file

motions for summary judgment, with supporting affidavits, on or before August 20, 2007.

(2) Freeman United Coal Mining Company ("Freeman") and Monterey Coal Company ("Monterey") shall file their oppositions to the motions for summary judgment, and any affidavits under Fed. R. Civ. P. 56(f), on or before October 1, 2007.

(3) The Pension Trust, BCOA, and the UMWA shall file any reply briefs in support of their motions for summary judgment on or before October 22, 2007.

(4) After the Court reviews the motions for summary judgment, any responses thereto, any affidavits filed under Fed. R. Civ. P. 56(f), and any reply briefs in support of the motions for summary judgment, the Court will enter a further Order on the scope and timing of any discovery that is appropriate at that juncture.

_____
Paul L. Friedman
U.S. District Court Judge

# EXHIBIT E

**1974 Pension Trust's Response to Freeman's First Request for Production**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Michael H. Holland, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 07-cv-490 (PLF) |
| Freeman United Coal Mining Company, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Freeman United Coal Mining Company, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-cv-1050 (PLF) |
| | ) | |
| v. | ) | |
| | ) | |
| United Mine Workers of America, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED MINE WORKERS OF AMERICA 1974 PENSION TRUST'S RESPONSES TO FREEMAN UNITED COAL MINING COMPANY'S FIRST REQUESTS FOR <u>PRODUCTION OF DOCUMENTS</u>

The United Mine Workers of America 1974 Pension Trust (the "1974 Pension Trust" or "Trust") submits these responses to Freeman United Coal Mining Company's ("Freeman") First Request For Production Of Documents.

### GENERAL STATEMENT

The 1974 Pension Trust has not completed its investigation of all the facts relative to this case. All of the responses and objections contained herein are based only on the information and documents that are presently available and known to the 1974 Pension Trust, following a diligent

investigation with the time and resources available. The 1974 Pension Trust continues to search

for and review information and relevant documents and to conduct discovery from other parties

and witnesses, and, therefore, expressly reserves its right to amend or supplement these

responses and objections, if necessary.

## GENERAL OBJECTIONS

1.     The 1974 Pension Trust objects generally to all definitions and instructions to the

extent that they impose or attempt or purport to impose obligations different from or beyond

those imposed by the Federal Rules of Civil Procedure and the Local Rules of the United States

District Court for the District of Columbia.

2.     The 1974 Pension Trust objects generally to Freeman's requests for production of

documents to the extent that they seek information that is beyond the scope of Federal Rules of

Civil Procedure 26 and 34.

3.     The 1974 Pension Trust objects generally to Freeman's requests for production to

the extent that they seek information that is protected by the attorney-client privilege or the

work-product doctrine or that is otherwise immune from discovery.

4.     The 1974 Pension Trust objects generally to Freeman's requests for production to

the extent that they seek information that is outside the 1974 Pension Trust's possession,

custody, or control.

5.     The 1974 Pension Trust objects generally to Freeman's requests for production to

the extent that they seek documents that are subject to a protective order or that were produced to

the 1974 Pension Trust under an agreement with a third party that requires the 1974 Pension

Trust to keep such documents confidential.

2

6.     Requests 1-16 and 21-23 seek documents pertaining to the issue of the reasonableness of the contribution rates imposed by the National Bituminous Coal Wage Agreement of 2007 ("2007 NBCWA"). As shown by the Motions for Summary Judgment filed by the 1974 Pension Trust, the UMWA, and the BCOA, that issue is not material to the resolution of the parties' claims and defenses in this action—or is, at most, of limited materiality. Accordingly, Freeman's various document requests on this subject are outside the proper scope of discovery in this action, and objectionable on that basis. Even assuming *arguendo* that these requests are within the proper scope of discovery in this action, they are so overbroad as to be objectionable on that basis as well. Given the marginal relevance (at best) and the overbreadth of these requests, it would be unduly burdensome for the 1974 Pension Trust to produce all of the requested documents. However, without waiving any of these objections, the 1974 Pension Trust will produce readily available actuarial materials that bear on the reasonableness of the contribution rates set forth in the 2007 NBCWA. It is the 1974 Pension Trust's view that these documents will prove more than sufficient for Freeman to investigate any issue that may be material to the parties' claims and defenses in this litigation action—although the 1974 Pension Trust stands ready to discuss with Freeman the possible further production of documents on this subject matter area after Freeman has had the opportunity to review the Trust's production in this area. The 1974 Pension Trust will describe the production that it intends to make in this area in its specific responses to Requests 1-16 and 21-23.

7.     The 1974 Pension Trust objects to Requests 17-20 because they seek documents that are subject to protective orders or agreements that were made in connection with *In re United Mine Workers of America Employee Benefit Plans Litig.*, D.D.C. MDL-886 ("MDL") or *Connors v. Island Creek Corp.*, D.D.C. No. 87-1210 ("Island Creek"). The 1974 Pension Trust

and its attorneys are in possession of a large quantity of documents that were produced to the 1974 Pension Trust by other parties to the *MDL* or *Island Creek* cases. Many of these documents are subject to the above-described protective orders, and some were included or described in memoranda that were filed in court in the *MDL* or *Island Creek* cases under seal. There is no reliable method for the 1974 Pension Trust to segregate the protected documents, particularly because documents that were filed under seal are not consistently designated as such in the Trust's files.

The 1974 Pension Trust alerted Freeman to this problem via a letter to Michael Robinson dated August 28, 2007. As a result, Freeman's counsel agreed to limit Freeman's request, reserving the right to request additional documents at a later time, as follows:

- Pursuant to this agreement, the 1974 Pension Trust has requested that the UMWA and BCOA waive the relevant confidentiality provisions so that the Trust can produce to Freeman responsive documents that were produced by those parties. Counsel for the UMWA and the BCOA have represented that those parties will each waive the applicable confidentiality requirements with respect to its own respective documents, provided the parties to the above-captioned litigation enter a new protective order.

- The 1974 Pension Trust understands that Freeman will file with the district court for the District of Columbia a motion to modify or release the 1974 Pension Trust from the applicable protective orders governing documents originally produced by Bethlehem Steel Corporation and Beth Energy Mines, Inc., which no longer exist. The 1974 Pension Trust will consent to an appropriate motion for this purpose.

- Once the relevant confidentiality requirements have been waived by the parties or the Court, and appropriate protective orders or agreements are in place for purposes of this case,

4

the 1974 Pension Trust will make available to Freeman for review and copying those negotiating

materials that the 1974 Pension Trust has received from the UMWA, the BCOA, or Bethlehem

Steel Corporation and Beth Energy Mines, Inc. that are responsive to Freeman's requests.

- Additionally, the 1974 Pension Trust will immediately make available to Freeman

the Joint Appendix filed in the Court of Appeals for the District of Columbia Circuit in *United

Mine Workers of America 1974 Pension Fund v. Pittston Co.*, Case No. 92-7141, along with the

brief filed by the 1974 Pension Trust in that case.  However, the 1974 Pension Trust will not at

this time produce materials filed in the District Court, except as described above.


## SPECIFIC RESPONSES TO REQUESTS FOR PRODUCTION

1.      The Davis Reports for the years 2002 through the present.

**Response:**  Without waiving the objections outlined above, plaintiff will produce these

documents for inspection and copying at the offices of the United Mine Workers of America

Health and Retirement Funds.


2.      All documents regarding the actuarial valuations for the 1974 Pension Trust for

the plan years 2000 through the present.

**Response:**  Without waiving the objections outlined above, plaintiff will produce annual

evaluations performed by the 1974 Pension Trust's actuaries that are responsive to this request.

Plaintiff will produce these documents for inspection and copying at the offices of the United

Mine Workers of America Health and Retirement Funds.

In addition to the objections outlined above, the 1974 Pension Trust objects to providing correspondence between the 1974 Pension Trust and its actuaries and other documents "regarding" the annual actuarial valuations, because there is a large volume of such documents and performing an exhaustive search would be extremely burdensome and very unlikely to yield documents that themselves are relevant to any of the issues in this litigation or that are reasonably calculated to lead to the discovery of admissible evidence.  The valuation reports themselves will provide Freeman's counsel all of the information that they reasonably need to assess the reasonableness of the contribution rates in the 2007 NBCWA, in light of the 1974 Pension Fund's financial and actuarial condition.

3.    Financial Statements for the 1974 Pension Trust for the plan years 2000 through the present.

**Response:**  Without waiving the objections outlined above, the 1974 Pension Trust will produce annual audited financial statements for the plan years listed.  Plaintiff will produce these documents for inspection and copying at the offices of the United Mine Workers of America Health and Retirement Funds.

4.    All correspondence and communications between the 1974 Pension Trust and BCOA regarding the financial and/or funding status of the 1974 Pension Trust for the plan years 2000 to the present.

**Response:**  In addition to the objections outlined above, the 1974 Pension Trust objects to the request for correspondence and communications between the 1974 Pension Trust and the BCOA,

6

because performing an exhaustive search for such documents will be extremely burdensome and also very unlikely to yield materials that are relevant to any of the issues in this litigation or that are reasonably calculated to lead to the discovery of admissible evidence.

However, without waiving this objection or the objections outlined above, the 1974 Pension Trust will produce responsive documents that were provided to the BCOA liaison to the 1974 Pension Trust during meetings of the 1974 Pension Trust's trustees. The 1974 Pension Trust will produce these documents for inspection and copying at the offices of the United Mine Workers of America Health and Retirement Funds.

5.      All correspondence and communications between the 1974 Pension Trust and Consol regarding the financial and/or funding status of the 1974 Pension Trust for the plan years 2004 to the present.

**Response:** Without waiving the objections outlined above, the 1974 Pension Trust states that, to the best of its knowledge, it is not in possession of any documents that are responsive to this request.

6.      All correspondence and communications between the 1974 Pension Trust and UMWA regarding the financial and/or funding status of the 1974 Pension Trust for the plan years 2004 to the present.

**Response:** In addition to the objections outlined above, the 1974 Pension Trust objects to providing correspondence and communications between the 1974 Pension Trust and the UMWA, because performing an exhaustive search for such documents will be extremely burdensome and

also very unlikely to yield documents that are relevant to any of the issues in this litigation or that are reasonably calculated to lead to the discovery of admissible evidence.

However, without waiving this objection or the objections outlined above, the 1974 Pension Trust will produce responsive documents that were provided to the UMWA liaison to the 1974 Pension Trust during meetings of the 1974 Pension Trust's trustees. The 1974 Pension Trust will produce these documents for inspection and copying at the offices of the United Mine Workers of America Health and Retirement Funds.

7.      All correspondence and communications between the 1974 Pension Trust and BCOA regarding the contribution rates to be made to the Pension Trust included in the 2007 Agreement.

**Response:** Without waiving the objections outlined above, the 1974 Pension Trust states that, to the best of its knowledge, the only document that is responsive to this request is the 2007 National Bituminous Coal Wage Agreement itself.

8.      All correspondence and communications between the 1974 Pension Trust and Consol regarding the contribution rates to be made to the Pension Trust included in the 2007 Agreement.

**Response:** Without waiving the objections outlined above, the 1974 Pension Trust states that, to the best of its knowledge, it is not in possession of any documents that are responsive to this request.

9.     All correspondence and communications between the 1974 Pension Trust and

UMWA regarding the contribution rates to be made to the Pension Trust included in the 2007

Agreement.

**Response:** Without waiving the objections outlined above, the 1974 Pension Trust states that, to

the best of its knowledge, the only document that is responsive to this request is the 2007

National Bituminous Coal Wage Agreement itself.


10.     All correspondence and communications between the 1974 Pension Trust and its

actuaries regarding the financial and/or funding status of the 1974 Pension Trust for the plan

years 2002 to present.

**Response:** In addition to the objections outlined above, the 1974 Pension Trust objects to

providing correspondence and communications between the 1974 Pension Trust and its actuaries,

because performing an exhaustive search for such documents will be extremely burdensome and

also very unlikely to yield documents that are relevant to any of the issues in this litigation or

that are reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the

1974 Pension Trust states that it does not construe this request as seeking information related to

analysis of withdrawal liability, because such information is utterly unrelated to the subject

matter of this litigation, and it would not be calculated to lead to any admissible evidence.

Without waiving this objection or those outlined above, the 1974 Pension Trust will

provide documents reflecting the outcome of an actuarial study of the effect of increased benefit

levels on the 1974 Pension Trust. The 1974 Pension Trust will produce these documents for

inspection and copying at the offices of the United Mine Workers of America Health and Retirement Funds.

11.     All correspondence and communications between the 1974 Pension Trust and its actuaries regarding contribution rates to be made to the Pension Trust included in the 2002 NBCWA and the 2007 Agreement.

**Response:** In addition to the objections outlined above, the 1974 Pension Trust objects to providing correspondence and communications between the 1974 Pension Trust and its actuaries, because performing an exhaustive search for such documents will be extremely burdensome and also unlikely to yield responsive documents that are relevant to any of the issues in this litigation or that are reasonably calculated to lead to the discovery of admissible evidence.

Without waiving this objection or those outlined above, the 1974 Pension Trust states that, to the best of its knowledge, it is not in possession of any documents that are responsive to this request.

12.     Any analysis performed by, performed for, provided to, or relied upon by 1974 Pension Trust from 1995 to the present regarding the financial condition of 1974 Pension Trust, including any analysis of future benefit expenses, funding, and any needed increase in contributions to the Trust.

**Response:**     In addition to the objections outlined above, the 1974 Pension Trust objects to producing periodic asset allocation reports, and other investment reports because these documents are not themselves relevant to any issue in this litigation, nor are they reasonably

calculated to lead to the discovery of relevant information, and because production would be an undue burden on the 1974 Pension Trust. Additionally, the 1974 Pension Trust objects to producing any draft reports, or documents created between 1995 and 2000, because performing an exhaustive search for such documents will be extremely burdensome and also very unlikely to yield documents that themselves are relevant to any of the issues in this litigation or that are reasonably calculated to lead to the discovery of admissible evidence.

Without waiving these objections or those outlined above, the 1974 Pension Trust will produce quarterly and monthly investment reports and certain actuarial projections that are responsive to this request. The 1974 Pension Trust will produce these documents for inspection and copying at the offices of the United Mine Workers of America Health and Retirement Funds.

13.     All correspondence and communications between the 1974 Pension Trust and BCOA regarding (1) the transfers of funds from the 1974 Pension Trust to the 1993 Benefit Trust, including any amounts transferred at the request of the plan participant, and (2) payments of additional pension benefits to plan participants in recognition of the anticipated hardship due to increased medical costs under the 1993 Benefit Trust during the plan years 2002 through 2006.

**Response:** In addition to the objections outlined above, the 1974 Pension Trust objects to providing the requested correspondence and communications between the 1974 Pension Trust and the BCOA, because performing an exhaustive search for such documents will be extremely burdensome and also unlikely to yield responsive documents that are relevant to any of the issues in this litigation or that are reasonably calculated to lead to the discovery of admissible evidence.

11

Without waiving the objections outlined above, the 1974 Pension Trust states that it will produce responsive documents that were provided to the BCOA liaison to the 1974 Pension Trust during meetings of the trustees of the 1974 Pension Trust. The 1974 Pension Trust will produce these documents for inspection and copying at the offices of the United Mine Workers of America Health and Retirement Funds.

14.    All correspondence and communications between the 1974 Pension Trust and Consol regarding (1) the transfer of funds from the 1974 Pension Trust to the 1993 Benefit Trust, including any amounts transferred at the request of the plan participant, and (2) payments of additional pension benefits to plan participants in recognition of the anticipated hardship due to increased medical costs under the 1993 Benefit Trust during the plan years 2002 through 2006.

**Response:** Without waiving the objections outlined above, the 1974 Pension Trust states that, to the best of its knowledge, it is not in possession of any documents that are responsive to this request.

15.    All correspondence and communications between the 1974 Pension Trust and UMWA regarding (1) the transfers of funds from the 1974 Pension Trust to the 1993 Benefit Trust, including any amounts transferred at the request of the plan participant, and (2) payments of additional pension benefits to plan participants in recognition of the anticipated hardship due to increased medical costs under the 1993 Benefit Trust during the plan years 2002 through 2006.

**Response:** In addition to the objections outlined above, the 1974 Pension Trust objects to providing the requested correspondence and communications between the 1974 Pension Trust and the UMWA, because performing an exhaustive search for such documents will be extremely burdensome and also unlikely to yield responsive documents that are relevant to any of the issues in this litigation or that are reasonably calculated to lead to the discovery of admissible evidence.

Without waiving the objections outlined above, the 1974 Pension Trust states that it will produce responsive documents that were provided to the UMWA liaison to the 1974 Pension Trust during meetings of the trustees of the 1974 Pension Trust. The 1974 Pension Trust will produce these documents for inspection and copying at the offices of the United Mine Workers of America Health and Retirement Funds.

16.    All communications with the Internal Revenue Service relating to any transfers of funds from the 1974 Pension Trust to the 1993 Benefit Trust, including any amounts transferred at the request of the plan participant, and payments of additional pension benefits to plan participants in recognition of the anticipated hardship due to increased medical costs under the 1993 Benefit Trust.

**Response:** The 1974 Pension Trust will produce non-privileged documents that are responsive to this request.

17.    Any submissions made to any court regarding the meaning, interpretation or intent of the parties regarding the Evergreen Clause or Guarantee Clause, including any

supporting materials such as exhibits, testimony, affidavits, or declarations, whether submitted to the court by the 1974 Pension Trust or some other party.

**Response:** The 1974 Pension Trust responds to this request as outlined above. In addition, the 1974 Pension Trust objects to all requests for documents concerning the Guarantee Clause, except as the Guarantee Clause is addressed in the materials that are produced concerning the Evergreen Clause. The Guarantee Clause was the subject of separate, extensive litigation between the UMWA 1950 Benefit Trust and the BCOA. That litigation generated huge volumes of documents, which would be exceedingly burdensome to search for materials responsive to this request, and the meaning, interpretation, or intent of the Guarantee Clause is wholly irrelevant to any issue in this litigation, as shown by the Motions for Summary Judgment filed on September 7, 2007. Nor is this request reasonably calculated to lead to the discovery of admissible evidence.

Without waiving the objections outlined above, the 1974 Pension Trust will produce all responsive, non-confidential, declarations and affidavits that were filed in the *Island Creek* or *MDL* cases. These documents will be made available for inspection and copying at the offices of Bredhoff & Kaiser P.L.L.C., 805 Fifteenth Street NW, Suite 1000, Washington DC 20005.

18.    To the extent not provided in response to document request number 17, all documents regarding the meaning or interpretation of the phrase "and any successor agreement thereto" contained in the Evergreen Clause, or regarding the intent of the parties in the use of the phrase.

**Response:** The 1974 Pension Trust responds to this request as outlined above. In addition, the 1974 Pension Trust objects to this request to the extent that it encompasses information protected by the attorney-client privilege and/or the attorney work-product doctrine. The 1974 Pension Trust will produce all non-privileged, non-confidential documents that are responsive and that are not produced in response to document request number 17. These documents will be made available for inspection and copying at the offices of Bredhoff & Kaiser P.L.L.C., 805 Fifteenth Street NW, Suite 1000, Washington DC 20005.

19.    To the extent not provided in response to document request number 17, all statements, including affidavits and all drafts of affidavits, of any individual participating in the negotiation of the Evergreen Clause in possession of the 1974 Pension Trust regarding the meaning, interpretation or intent of the parties with respect to the Evergreen Clause.

**Response:** The 1974 Pension Trust responds as outlined above. Additionally, the 1974 Pension Trust objects to this request to the extent that it encompasses information protected by the attorney-client privilege and/or the attorney work-product doctrine. The 1974 Pension Trust will produce all non-privileged, non-confidential documents that are responsive and that are not produced in response to document request numbers 17 and 18. These documents will be made available for inspection and copying at the offices of Bredhoff & Kaiser P.L.L.C., 805 Fifteenth Street NW, Suite 1000, Washington DC 20005.

20.    To the extent not provided in response to document request number 17, all documents regarding the meaning or interpretation of the phrase "[i]n order to fully fund these

guaranteed benefits" contained in the Guarantee Clause, or regarding the intent of the parties in the use of the phrase.

**Response:** The 1974 Pension Trust objects to all requests for documents concerning the Guarantee Clause, except as the Guarantee Clause is addressed in the materials that are produced concerning the Evergreen Clause. The Guarantee Clause was the subject of separate, extensive litigation between the UMWA 1950 Benefit Trust and the BCOA. That litigation generated huge volumes of documents, which would be exceedingly burdensome to search for materials responsive to this request, and the meaning, interpretation, or intent of the Guarantee Clause is wholly irrelevant to any issue in this litigation, as shown by the Motions for Summary Judgment filed on September 7, 2007. Nor is this request reasonably calculated to lead to the discovery of admissible evidence.

21.    All communications from 2002 to present with members of the United States Congress and/or their staff regarding multiemployer pension funding and related legislation and/or legislative activity.

**Response**: Without waiving the objections outlined above, the 1974 Pension Trust states that it is not in possession of any documents that are responsive to this request.

22.    All documents provided to or received from BCOA or UMWA regarding federal legislation and/or legislative activity related to multiemployer pension funding.

**Response**: Without waiving the objections outlined above, the 1974 Pension Trust states that it is not in possession of any documents that are responsive to this request.

23.    All documents regarding any assessment, evaluation, and/or analysis of the level of 1974 Pension Trust contributions necessary to comply with the Pension Protection Act of 2006.

**Response:**  The 1974 Pension Trust states that it will produce actuarial valuation reports that are responsive to this request.  The 1974 Pension Trust will produce these documents for inspection and copying at the offices of the United Mine Workers of America Health and Retirement Funds.

Respectfully submitted,

*Julia Penny Clark*

| | |
|---|---|
| DAVID W. ALLEN<br>General Counsel<br>D.C. Bar No. 81638<br>LARRY D. NEWSOME<br>Associate General Counsel<br>D.C. Bar No. 254763<br>CHRISTOPHER F. CLARKE<br>Senior Assistant General<br>Counsel<br>D.C. Bar No. 441708<br>UMWA HEALTH &<br>RETIREMENT FUNDS<br>Office of the General Counsel<br>2121 K Street, N.W.<br>Washington, D.C.  20037<br>Telephone:  202-521-2238 | JULIA PENNY CLARK<br>D.C. Bar No. 269609<br>ANDREW D. ROTH<br>D.C. Bar No. 414038<br>CHARLOTTE GARDEN<br>D.C. Bar No. 489040<br>Bredhoff & Kaiser P.L.L.C.<br>805 Fifteenth Street N.W.<br>Suite 1000<br>Washington, DC 20005<br>Telephone:  202-842-2600<br><br>*Counsel for Michael H. Holland,*<br>*Micheal W. Buckner, B.V. Hyler*<br>*and Steven F. Schaab and the*<br>*United Mine Workers of America*<br>*1974 Pension Trust* |

Dated: September 10, 2007

17

## CERTIFICATE OF SERVICE

I hereby certify that, on September 10, 2007, I served copies of the foregoing United Mine Workers of America 1974 Pension Trust's Responses to Freeman United Coal Mining Company's First Request for Production of Documents via Federal Express on the following counsel:

Grant Crandall
Deborah Stern
United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031
(703) 208-7200

John R. Mooney
Mark J. Murphy
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W.
Suite 400
Washington, D.C. 20036

***Counsel for Defendant United Mine Workers of America***

PETER BUSCEMI
STANLEY F. LECHNER
CHARLES P. GROPPE
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004

***Counsel for Defendant
Bituminous Coal Operators' Association, Inc.***

Paul M. Smith
Jessica Ring Amunson
JENNER & BLOCK, LLP
601 13th Street, NW, Suite 1200
Washington, DC 20005

Susan C. Levy (*pro hac vice*)
JENNER & BLOCK, LLP
330 N. Wabash Avenue
Chicago, IL 60611

Michael W. Robinson
Gregory J. Ossi
VENABLE, LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182

**Counsel for Freeman United Coal Mining Company**

John R. Woodrum
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
2400 N Street, Fifth Floor
Washington, DC 20037

**Counsel for Monterey Coal Company**

Julia Penny Clark

September 10, 2007

# EXHIBIT F

**BCOA's Response to Freeman's First Request for Production**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Holland, et al.,        )<br>      )<br>     Plaintiff,   )<br>      )<br>     v.       )<br>      )<br>Freeman United Coal Mining Company,   )<br>et al.,       )<br>      )<br>     Defendants.   )<br>      ) | Case No. 07-cv-490 (PLF) |
| Freeman United Coal Mining Company,   )<br>      )<br>     Plaintiff,   )<br>      )<br>     v.       )<br>      )<br>United Mine Workers of   )<br>America, et al.,       )<br>      )<br>     Defendants.   )<br>      ) | Case No. 07-cv-1050 (PLF) |

## DEFENDANT BCOA'S RESPONSES AND OBJECTIONS TO
## FREEMAN UNITED COAL MINING COMPANY'S
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Local Rule 26.2(d) and Rule 34 of the Federal Rules of Civil Procedure, Defendant Bituminous Coal Operators' Association, Inc. ("BCOA") hereby serves its responses and objections to Plaintiff Freeman United Coal Company's ("Freeman") First Request for Production of Documents ("Document Requests").

## GENERAL OBJECTIONS

1.  BCOA objects to the Document Requests to the extent that they seek information and documents beyond the scope of the issues raised by BCOA in its pending motion for summary judgment. In light of BCOA's motion, as well as the

pending motions for summary judgment filed in these consolidated cases by the United

Mine Workers of America ("UMWA") and the UMWA 1974 Pension Trust, there are

few, if any, genuine issues of material fact in dispute between the parties, negating the

need for extensive and irrelevant discovery in these cases. To the extent that Freeman,

after reviewing BCOA's pending motion, believes that it needs certain discovery to

oppose BCOA's motion, BCOA will consider any such requests that are presented

through an affidavit under Fed. R. Civ. P. 56(f) and that state with specificity what

discovery Freeman believes is necessary to address BCOA's motion, how such discovery

potentially may show a genuine issue of material fact, and why Freeman assertedly

cannot, absent such discovery, present facts essential to justify its opposition to BCOA's

motion. *See* 3D James Wm. Moore et al., Moore's Federal Practice ¶ 16.36[3][g] at 16-

101 (3d ed. 2006) (discussing Rule 56(f), and noting that, with summary judgment

motion on file, "counsel for opposing party can identify with particularity the discovery

that counsel must complete to fairly defend his or her client's position.")

      2.    BCOA objects to the Document Requests on the grounds that the

nature of BCOA and its role in negotiating the National Bituminous Coal Wage

Agreements ("NBCWAs") with the UMWA since approximately 1950 is well known and

not disputed. Such information should be particularly well known to Freeman because

Freeman was a member of BCOA for approximately 31 years before Freeman itself

severed the relationship and terminated BCOA's authority to represent Freeman in

collective bargaining with the UMWA. Recreating BCOA's history, as well as engaging

in an extensive and time-consuming search for responsive documents stretching back to

the very beginning of BCOA in 1950, is overly broad, unduly burdensome, and irrelevant to the issues raised in this case.

   3. BCOA objects to the Document Requests to the extent they seek information related to claims or defenses that already have been decided in prior litigation, including the *Pittston* litigation. *See In re United Mine Workers of America Benefit Plans Litig.*, 782 F. Supp. 658 (D.D.C. 1992), *aff'd, United Mine Workers of America 1974 Pension Plan, et al. v. Pittston Co.*, 984 F.2d 469 (D.C. Cir.), *cert. denied*, 509 U.S. 924 (1993)("*Pittston*"). Freeman's attempt to pursue discovery on issues previously resolved in *Pittston* is improper and a gross waste of the parties' time and resources.

   4. BCOA objects to the Document Requests to the extent that they seek information related to any matter other than the contribution obligation contained in the 2007 NBCWA and the UMWA 1974 Pension Plan's attempt to enforce that obligation.

   5. BCOA objects to the Document Requests to the extent that they seek information regarding BCOA's negotiation of any provision contained in any NBCWA other than BCOA's negotiation of the current contribution rate for the UMWA 1974 Pension Trust contained in the NBCWA of 2007.

   6. BCOA objects to the Document Requests to the extent that they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure.

   7. BCOA objects to the Document Requests to the extent they seek the disclosure of documents or information that are subject to one or more privileges or

protections from disclosure, including, but not limited to: the attorney-client privilege, the attorney work product doctrine, or any other privilege or protection available under applicable law. In preparing its responses to these Document Requests, BCOA has assumed that the Requests are limited in time such that they do not seek attorney-client or attorney work product material generated after the commencement of litigation.

8.    BCOA objects to the Document Requests to the extent they seek information or documents that are confidential, proprietary, or sensitive in nature with respect to BCOA or any of its current or former members.

9.    BCOA objects to the Document Requests to the extent they seek the production of documents covered by pre-existing protective orders or confidentiality agreements in unrelated litigation. BCOA further objects to the production of any material subject to such protective orders or confidentiality agreements unless and until Freeman obtains the necessary waivers from the parties covered by such protective orders or agreements allowing disclosure of relevant materials to Freeman.

10.    BCOA objects to the Document Requests to the extent they seek the production of documents not in BCOA's possession, custody, or control.

11.    BCOA objects to the Document Requests to the extent they are unlimited in time, scope, and subject matter and as such are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

12.    BCOA objects to the production of any documents responsive to these Documents Requests without the entry of a mutually acceptable protective order governing access to the material so produced.

13.    BCOA objects to the Definitions to the extent that they include oral exchanges of information of any nature on the basis that such definitions are unduly burdensome, overly broad, and ambiguous within the context of a request for the production of documents.  BCOA further objects to the Definitions to the extent they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure.

14.    BCOA objects to the Definition "2007 Agreement" on the grounds that it is ambiguous, and that the only agreement negotiated by BCOA and the UMWA that became effective in 2007 is the NBCWA of 2007.  In responding to these Document Requests, BCOA has assumed that any such reference to the "2007 Agreement" relates to the NBCWA of 2007.

15.    BCOA objects to Freeman's Instructions to the extent that they seek to impose obligations beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure.  In addition, BCOA intends to make available responsive documents for inspection and copying at the offices of Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Ave, NW, Washington, DC 20004.  Such documents will be produced to the extent practical as they are kept in the normal course of business by BCOA.

16.    BCOA has conducted a reasonable search for materials responsive to these Document Requests.  BCOA objects to conducting any more exhaustive search on the grounds that such an effort would be unduly burdensome and would be unlikely to lead to the discovery of materials relevant to the issues raised in this litigation.  BCOA

expressly reserves the right to amend or supplement these response and objections, if necessary.

       17.   BCOA's responses to Plaintiff's Document Requests should not be deemed admissions. BCOA reserves the right to raise objections at trial regarding the admissibility of any of the information that it provides or agrees to provide in response to these Document Requests.

       18.   BCOA submits its responses without conceding the relevance or materiality of the subject matter of any Document Request, and without prejudice to its right to object to further discovery, to object to the admissibility at trial of any document requested, or to object to any other proceeding in this action.

       19.   BCOA incorporates by reference in its Specific Objections and Responses the foregoing General Objections as if expressly restated in response to each specific Document Request.

## SPECIFIC OBJECTIONS
### (In Addition To The Objections Above)

**Document Request 1:**   BCOA's Articles of Incorporation.

**Responses and Objections:**  BCOA objects to this Document Request in that it seeks information and documents that are not relevant to the claims or defenses of the parties. BCOA further objects to this Document Request to the extent that it seeks information and documents outside the time period relevant to Freeman's claims in this case and the issues asserted in BCOA's pending motion for summary judgment. Subject to and without waiving any objections, BCOA will

produce its Articles of Incorporation, which were in effect during the negotiation

of the 2007 NBCWA.


**Document Request 2:**     BCOA's current Constitution and Bylaws and those in effect at the time the 1978, 1981, 1984, 1988, 1993, 1998, and 2002 NBCWAs and the 2007 Agreement were negotiated.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad and seeks information and

documents that are not relevant to the claims or defenses of the parties in this

case.  BCOA further objects to this Document Request to the extent that it seeks

information and documents outside the time period relevant to Freeman's claims

and the issues asserted in BCOA's pending motion for summary judgment.

BCOA also objects to this Document Request to the extent that the term "2007

Agreement" refers to anything other than the NBCWA of 2007.  Subject to and

without waiving any objections, BCOA will produce its Constitution and By-

Laws that were in effect during the negotiation of the 2007 NBCWA.


**Document Request 3:**     A roster, list, or compilation of BCOA members for each year from 1977 to the present.

**Responses and Objections:**   In addition to its General Objections, BCOA

objects to this Document Request on the grounds that, in its pending motion for

summary judgment, BCOA has disclosed the maximum and minimum number of

companies that have been members of BCOA during the period referenced in this

Document Request.  BCOA also objects to this Document Request on the grounds

that it is overly broad, unduly burdensome, and seeks information and documents

that are not relevant to the claims or defenses of the parties. BCOA further

objects to this Document Request to the extent that it seeks information and

documents outside the time period relevant to Freeman's claims and the issues

asserted in BCOA's pending motion for summary judgment. Subject to and

without waiving any objections, BCOA will produce documents responsive to this

Document Request regarding its membership during the negotiations concerning

the 2007 NBCWA.


**Document Request 4:**    Documents identifying members of BCOA's Negotiating
Committee at the time the 1978, 1981, 1984, 1988, 1993, 1998, and 2002 NBCWAs and
the 2007 Agreement were negotiated.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties. BCOA further objects to this Document Request to the extent that it

seeks information and documents outside the time period relevant to Freeman's

claims and the issues asserted in BCOA's pending motion for summary judgment.

BCOA also objects to this Document Request to the extent that the term "2007

Agreement" refers to anything other than the NBCWA of 2007. Subject to and

without waiving any objections, BCOA will produce documents in response to

this Document Request pertaining to the negotiation of the 2007 NBCWA.

**Document Request 5:**    If different from the individuals identified in response to request number 4, documents identifying the individuals responsible for negotiating the 1978, 1981, 1984, 1988, 1993, 1998, and 2002 NBCWAs and the 2007 Agreement on behalf of BCOA.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA further objects to this Document Request to the extent that it

seeks information and documents outside the time period relevant to Freeman's

claims and the issues asserted in BCOA's pending motion for summary judgment.

BCOA also objects to this Document Request to the extent that the term "2007

Agreement" refers to anything other than the NBCWA of 2007.  Subject to and

without waiving any objections, BCOA will produce documents in response to

this Document Request pertaining to the negotiation of the 2007 NBCWA.


**Document Request 6:**    Documents identifying members of BCOA's Chief Executive Officer Committee at the time the 1978, 1981, 1984, 1988, 1993, 1998, and 2002 NBCWAs and the 2007 Agreement were negotiated.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA further objects to this Document Request to the extent that it

seeks information and documents outside the time period relevant to Freeman's

claims and the issues asserted in BCOA's pending motion for summary judgment.

BCOA also objects to this Document Request to the extent that the term "2007

Agreement" refers to anything other than the NBCWA of 2007.  Notwithstanding

the foregoing objections, BCOA states that it has no documents responsive to this

Document Request related to the negotiation of the 2007 NBCWA.

**Document Request 7:**    Documents identifying members of BCOA's Support Committee at the time the 1978, 1981, 1984, 1988, 1993, 1998, and 2002 NBCWAs and the 2007 Agreement were negotiated.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA further objects to this Document Request to the extent that it

seeks information and documents outside the time period relevant to Freeman's

claims and the issues asserted in BCOA's pending motion for summary judgment.

BCOA also objects to this Document Request to the extent that the term "2007

Agreement" refers to anything other than the NBCWA of 2007.  Notwithstanding

the foregoing objections, BCOA states that it has no documents responsive to this

Document Request related to the negotiation of the 2007 NBCWA.

**Document Request 8:**    Documents identifying members of BCOA's Benefits Committee and/or Subcommittee at the time the 1978, 1981, 1984, 1988, 1993, 1998, and 2002 NBCWAs and the 2007 Agreement were negotiated.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA further objects to this Document Request to the extent that it

seeks information and documents outside the time period relevant to Freeman's

claims and the issues asserted in BCOA's pending motion for summary judgment.

BCOA also objects to this Document Request to the extent that the term "2007

Agreement" refers to anything other than the NBCWA of 2007. Notwithstanding

the foregoing objections, BCOA states that no Benefits Committee or

Subcommittee was appointed in connection with the negotiation of the 2007

NBCWA.


**Document Request 9:**     All documents regarding BCOA's membership voting to
approve the 2007 Agreement.

**Responses and Objections:** In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad and seeks information and

documents that are not relevant to the claims or defenses of the parties. BCOA

further objects to this Document Request to the extent that the term "2007

Agreement" refers to anything other than the NBCWA of 2007. Subject to and

without waiving any objections, BCOA will produce documents responsive to this

request to the extent any such documents exist.


**Document Request 10:**   All files maintained by BCOA regarding the 2007 agreement
and/or the negotiation of the 2007 Agreement.

**Responses and Objections:** In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties. BCOA further objects to this Document Request to the extent that the

term "2007 Agreement" refers to anything other than the NBCWA of 2007.

Finally, BCOA objects to this Document Request to the extent that it seeks documents that are confidential or proprietary to BCOA or its members, the disclosure of which would require BCOA to reveal confidential business and collective bargaining strategy that would harm BCOA's ability to collectively bargain on behalf of its membership in future negotiations over the NBCWA. Subject to and without waiving any objections, BCOA will produce responsive documents related to the negotiation of the contribution rate for the UMWA 1974 Pension Trust that is contained in the NBCWA of 2007.

**Document Request 11:**   All correspondence and communications between BCOA and UMWA regarding the 2007 Agreement.

**Responses and Objections:**  In addition to its General Objections, BCOA objects to this Document Request in that it is overly broad, unduly burdensome, and seeks information and documents that are not relevant to the claims or defenses of the parties.  BCOA also objects to this Document Request to the extent that the term "2007 Agreement" refers to anything other than the NBCWA of 2007.  Finally, BCOA objects to this Document Request to the extent that it seeks documents that are confidential or proprietary to BCOA or its members, the disclosure of which would require BCOA to reveal confidential business and collective bargaining strategy that would harm BCOA's ability to collectively bargain on behalf of its membership in future negotiations over the NBCWA.  Subject to and without waiving any objections, BCOA will produce responsive documents related to the negotiation of the contribution rate for the UMWA 1974 Pension Trust that is contained in the NBCWA of 2007.

**Document Request 12:**   All correspondence and communications between BCOA and Consol regarding the 2007 Agreement.

**Responses and Objections:** In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA also objects to this Document Request to the extent that the term

"2007 Agreement" refers to anything other than the NBCWA of 2007.  Finally,

BCOA objects to this Document Request to the extent that it seeks documents that

are confidential or proprietary to BCOA or its members, the disclosure of which

would require BCOA to reveal confidential business and collective bargaining

strategy that would harm BCOA's ability to collectively bargain on behalf of its

membership in future negotiations over the NBCWA.  Subject to and without

waiving any objections, BCOA will produce responsive documents related to the

negotiation of the contribution rate for the UMWA 1974 Pension Trust that is

contained in the NBCWA of 2007.


**Document Request 13:**   All proposals and counter-proposals exchanged between BCOA and UMWA regarding the 2007 Agreement.

**Responses and Objections:** In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA also objects to this Document Request to the extent that the term

"2007 Agreement" refers to anything other than the NBCWA of 2007.  Finally,

BCOA objects to this Document Request to the extent that it seeks documents that are confidential or proprietary to BCOA or its members, the disclosure of which would require BCOA to reveal confidential business and collective bargaining strategy that would harm BCOA's ability to collectively bargain on behalf of its membership in future negotiations over the NBCWA.  Subject to and without waiving any objections, BCOA will produce responsive documents related to the negotiation of the contribution rate for the UMWA 1974 Pension Trust that is contained in the NBCWA of 2007.

**Document Request 14:**   All documents provided to or received from UMWA regarding the 2007 Agreement.

**Responses and Objections:**  See Response to Document Request No. 13.

**Document Request 15:**   All documents regarding the negotiation of the increase in contribution rates to the 1974 Pension Trust contained in the 2007 Agreement.

**Responses and Objections:**  In addition to its General Objections, BCOA objects to this Document Request in that it is overly broad, unduly burdensome, and seeks information and documents that are not relevant to the claims or defenses of the parties.  BCOA also objects to this Document Request to the extent that the term "2007 Agreement" refers to anything other than the NBCWA of 2007.  Finally, BCOA objects to this Document Request to the extent that it seeks documents that are confidential or proprietary to BCOA or its members, the disclosure of which would require BCOA to reveal confidential business and collective bargaining strategy that would harm BCOA's ability to collectively bargain on behalf of its

membership in future negotiations over the NBCWA.  Subject to and without

waiving any objections, BCOA will produce responsive documents related to the

negotiation of the contribution rate for the UMWA 1974 Pension Trust that is

contained in the NBCWA of 2007.

**Document Request 16:**   All correspondence or communications between BCOA and
BCOA-appointed trustees of the 1974 Pension Trust regarding the 2007 Agreement
and/or the increase in contribution rates to the 1974 Pension Trust contained in the 2007
Agreement.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA also objects to this Document Request to the extent that the term

"2007 Agreement" refers to anything other than the NBCWA of 2007.

Notwithstanding the foregoing objections, BCOA states that it has no documents

responsive to this request.

**Document Request 17:**   Any analysis performed by, performed for, provided to, or
relied upon by BCOA from 1995 to the present regarding the financial condition of 1974
Pension Trust, including any analysis of future benefit expenses, funding, and any needed
increase in contributions to the Trust.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  Subject to and without waiving any objections, BCOA will produce

responsive documents that relate to the negotiation of the contribution rate for the

UMWA 1974 Pension Trust contained in the NBCWA of 2007.

**Document Request 18:**   Any analysis performed by, performed for, provided to, or
relied upon by BCOA regarding the economic impact of the increase in contribution rates
to the 1974 Pension Trust contained in the 2007 Agreement on any current or former
BCOA member company.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA further objects to this Document Request to the extent that the

term "2007 Agreement" refers to anything other than the NBCWA of 2007.

Subject to and without waiving any objections, BCOA will produce documents

regarding the economic impact of the $2.00 contribution rate negotiated in the

2007 NBCWA to the extent any such documents exist.

**Document Request 19:**   All communications between BCOA and any current or former
BCOA member company regarding the negotiation of the 2007 Agreement.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA also objects to this Document Request to the extent that the term

"2007 Agreement" refers to anything other than the NBCWA of 2007.  Finally,

BCOA objects to this Document Request to the extent that it seeks documents that

are confidential or proprietary to BCOA or its members, the disclosure of which

would require BCOA to reveal confidential business and collective bargaining

strategy that would harm BCOA's ability to collectively bargain on behalf of its

membership in future negotiations over the NBCWA.  Subject to and without

waiving any objections, <u>see</u> Response to Document Request No. 12.


**Document Request 20:**    All communications between BCOA and any current or former
BCOA member company regarding the increase in contribution rates to the 1974 Pension
Trust contained in the 2007 Agreement.

**Responses and Objections:**  <u>See</u> Response to Document Request No. 19.


**Document Request 21:**    All documents regarding any effort by the BCOA to ascertain
the financial impact of the increase in contribution rates to the 1974 Pension Trust
contained in the 2007 Agreement on current and/or former BCOA member companies.

**Responses and Objections:**  <u>See</u> Response to Document Request No. 18.


**Document Request 22:**    All documents provided to BCOA members regarding the 2007
Agreement.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  In addition, BCOA objects to this Document Request to the extent that

the term "2007 Agreement" refers to anything other than the NBCWA of 2007.

Subject to and without waiving any objections, BCOA will produce responsive

documents related to the negotiation of the contribution rate for the UMWA 1974

Pension Trust that is contained in the NBCWA of 2007.

**Document Request 23:**   All documents provided to BCOA members regarding the increase in contribution rates to the 1974 Pension Trust contained in the 2007 Agreement.

**Responses and Objections:**  See Response to Document Request No. 22.


**Document Request 24:**   All documents regarding the negotiation of the 2007 Agreement, including: memoranda regarding the negotiation sessions for the 2007 Agreement; notes taken by any person participating in the negotiations for the 2007 Agreement; communications between or among individuals; and any official and unofficial correspondence, notes, records, minutes, transcripts, and proposals that document the negotiation of the 2007 Agreement.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA also objects to this Document Request to the extent that the term

"2007 Agreement" refers to anything other than the NBCWA of 2007.  Finally,

BCOA objects to this Document Request to the extent that it seeks documents that

are confidential or proprietary to BCOA or its members, the disclosure of which

would require BCOA to reveal confidential business and collective bargaining

strategy that would harm BCOA's ability to collectively bargain on behalf of its

membership in future negotiations over the NBCWA.  Subject to and without

waiving any objections, BCOA will produce responsive documents related to the

negotiation of the contribution rate for the UMWA 1974 Pension Trust that is

contained in the NBCWA of 2007.

**Document Request 25:**  All documents regarding the negotiation of 1974 Pension Trust contribution rates for the 2002 NBCWA.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  In addition, BCOA objects to this Document Request on the grounds that

the contribution rate was zero cents an hour immediately prior to, during the

negotiation of, and under the 2002 NBCWA.  In light of these objections, BCOA

objects to expending the time and resources to respond to this Document Request.

**Document Request 26:**  All documents relating to any decision, action, or exercise of authority by BCOA, from 1995 to present, to change the contribution rates to the 1950 Pension Trust and 1974 Pension Trust.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  Subject to and without waiving any objections, BCOA will produce

responsive documents related to the negotiation of the contribution rate for the

UMWA 1974 Pension Trust that is contained in the NBCWA of 2007.

**Document Request 27:**  Any submissions made to any court regarding the meaning, interpretation, or intent of the parties regarding the Evergreen Clause, including any supporting materials such as exhibits, testimony, affidavits, or declarations, whether submitted to the court by BCOA or some other party.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  Subject to and without waiving any objections, BCOA has consented to

the production by the UMWA 1974 Pension Trust of documents produced in the

Evergreen Clause litigation, provided that an appropriate protective order is

entered into governing such production.

**Document Request 28:**   To the extent not provided in response to document request number 27, all documents regarding the meaning, interpretation, or intent of the parties with respect to the phrase in the Evergreen Clause "and any successor agreement thereto."

**Responses and Objections:** <u>See</u> Response to Document Request No. 27.

**Document Request 29:**   Any submissions made to any court regarding the meaning, interpretation, or intent of the parties regarding the Guarantee Clause, including any supporting materials such as exhibits, testimony, affidavits, or declarations, whether submitted to the court by BCOA or some other party.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  Subject to and without waiving any objections, BCOA has consented to

the production by the UMWA 1974 Pension Trust of any responsive documents

regarding the Guarantee Clause to the extent such documents were produced by

BCOA to the 1974 Pension Trust in the Evergreen Clause litigation, provided that

an appropriate protective order is entered into governing such production.

**Document Request 30:**   To the extent not provided in response to document request number 29, all documents regarding the meaning, interpretation, or intent of the parties with respect to the phrase in the Guarantee Clause, "[i]n order to fully fund these guaranteed benefits."

**Responses and Objections:** <u>See</u> Response to Document Request No. 29.

**Document Request 31:**   Any submissions made to any court regarding BCOA's duties or potential liability to any former BCOA member company related to that member's obligation to make contributions to the 1974 Pension Trust as a result of the Evergreen or Guarantee Clauses, including any supporting materials such as exhibits, testimony, affidavits, or declarations and all pleadings from any such action, whether submitted to the court by BCOA or some other party.

**Responses and Objections:** <u>See</u> Response to Document Request Nos. 27 to 30.

**Document Request 32:**   To the extent not provided in response to document request number 31, all documents regarding BCOA's duties or potential liability to any former BCOA member company related to that member's obligation to make contributions to the 1974 Pension Trust as a result of the Evergreen or Guarantee Clauses.

**Responses and Objections:** <u>See</u> Response to Document Request Nos. 27 to 30.

**Document Request 33:**   All documents regarding the meetings and/or activities of the BCOA's Chief Executive Officer Committee, Negotiating Committee, Support Committee, and Benefits Committee and/or Subcommittee during the years 2001 to the present, including all official and unofficial correspondence, memoranda, notes, records, minutes, and/or transcripts that document the meetings and/or activities of such committees.

**Responses and Objections:** In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties. In addition, BCOA objects to this Document Request to the extent that it

seeks information related to negotiations other than the negotiations over the

contribution rate for the UMWA 1974 Pension Trust contained in the 2007

NBCWA.  Finally, BCOA objects to this Document Request to the extent that it

seeks documents that are confidential or proprietary to BCOA or its members, the

disclosure of which would require BCOA to reveal confidential business and

collective bargaining strategy that would harm BCOA's ability to collectively

bargain on behalf of its membership in future negotiations over the NBCWA.

Subject to and without waiving any objections, BCOA will produce responsive

documents related to the negotiation of the contribution rate for the UMWA 1974

Pension Trust that is contained in the NBCWA of 2007.


**Document Request 34:**   Documents identifying the source of BCOA operating income, including membership fees, for the years 1977-78, and the years 2001 to the present.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request on the grounds that it is not relevant to any claim

asserted in this litigation.


**Document Request 35:**   All documents regarding any applications and/or requests, whether formal or informal, made by any person to become a member of BCOA from 2001 to present and all documents regarding the determination to either grant or deny such applications and/or requests.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request on the grounds that it is not relevant to any claim

asserted in this litigation.

**Document Request 36:**   Documents that reflect the number of UMWA-represented employees of each BCOA member at the time the 1978, 1981, 1984, 1988, 1993, 1998, and 2002 NBCWAs and the 2007 Agreement were negotiated.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.  BCOA further objects to this Document Request to the extent that the

term "2007 Agreement" refers to anything other than the NBCWA of 2007.


**Document Request 37:**   Documents that reflect the percentage of UMWA-represented employees of each BCOA member or by BCOA at the time the 1978, 1981, 1984, 1988, 1993, 1998, and 2002 NBCWAs and the 2007 Agreement were negotiated.

**Responses and Objections:**  <u>See</u> Response to Document Request No. 36.


**Document Request 38:**   All documents regarding (1) the transfers of funds from the 1974 Pension Trust to the 1993 Benefit Trust, including any amounts transferred at the request of the plan participant, and (2) payments of additional pension benefits to plan participants in recognition of the anticipated hardship due to increased medical costs under the 1993 Benefit Trust during the plan years 2002 through 2006.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.

**Document Request 39:**   To the extent not already provided in response to request number 38, any analysis performed by, performed for, provided to, or relied upon by BCOA regarding the effect of the transfers of funds from the 1974 Pension Trust to the 1993 Benefit Trust and/or the payment of additional benefits to 1993 Benefit Trust beneficiaries on the financial condition of the 1974 Pension Trust, including any analysis of future benefit expenses, funding, and any needed increase in contributions to the Trust as a result of the fund transfers and/or payment of additional benefits.

**Responses and Objections:**  See Response to Document Request No. 38.

**Document Request 40:**   All communications from 2002 to present with members of the United States Congress and/or their staff regarding multiemployer pension funding and related legislation and/or legislative activity.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.

**Document Request 41:**   All documents provided to or received from UMWA or the 1974 Pension Trust regarding federal legislation and/or legislative activity related to multiemployer pension funding.

**Responses and Objections:**  In addition to its General Objections, BCOA objects

to this Document Request in that it is overly broad, unduly burdensome, and seeks

information and documents that are not relevant to the claims or defenses of the

parties.

**Document Request 42:**   All documents regarding any assessment, evaluation, and/or analysis of the level of 1974 Pension Trust contributions necessary to comply with the Pension Protection Act of 2006.

**Responses and Objections:** In addition to its General Objections, BCOA objects to this Document Request in that it is overly broad, unduly burdensome, and seeks information and documents that are not relevant to the claims or defenses of the parties. Subject to and without waiving any objections, BCOA will produce responsive documents in response to this Document Request pertaining to the negotiation of the 2007 NBCWA.

Respectfully submitted,

Peter Buscemi
D.C. Bar No. 269092
Stanley F. Lechner
D.C Bar No. 370986
Charles P. Groppe
D.C. Bar No. 464035

DATED: September 11, 2007

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel:    (202) 739-3000
Fax:    (202) 739-3001
E-mail: pbuscemi@morganlewis.com
        slechner@morganlewis.com
        cgroppe@morganlewis.com

*Counsel for Defendant*
Bituminous Coal Operators' Association, Inc.

## CERTIFICATE OF SERVICE

I, Charles P. Groppe, certify that, on behalf of Defendant BCOA, I served

BCOA's Responses and Objections to Freeman United Coal Company's First Request for

the Production of Documents via email and First Class Mail, postage prepaid upon:

Paul M. Smith
Jessica R. Amunson
Jenner & Block LLP
601 13th Street, NW
Suite 12 South
Washington, DC 20005
psmith@jenner.com
jamunson@jenner.com

Susan C. Levy, Esq.
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
slevy@jenner.com

Gregory J. Ossi, Esq.
Michael W. Robinson, Esq.
Venable LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
gjossi@venable.com
mwrobinson@venable.com

*Counsel for Plaintiff*

John R. Woodrum
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, NW
Fifth Floor
Washington, DC 20037
john.woodrum@ogletreedeakins.com

*Counsel for Monterey Coal Company*

Julia Penny Clark
Andrew D. Roth
Charlotte Garden
Bredhoff & Kaiser P.L.L.C.
805 Fifteenth Street N.W.

Washington, DC 20005
JPClark@Bredhoff.com
aroth@bredhoff.com
CGarden@Bredhoff.com

**Counsel for Defendant UMWA 1974 Pension Plan
and its Trustees**

Grant Crandall
Deborah Stern
United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031

John R. Mooney
Mark J. Murphy
Richard C. Welch
Mooney, Green, Baker
  & Saindon, P.C.
1920 L Street, N.W.
Washington, DC 20036
jmooney@mooneygreen.com
mmurphy@mooneygreen.com
rwelch@mooneygreen.com

**Counsel for Defendant United Mine Workers
of America**

on this 11th day of September, 2007.

Charles P. Groppe
*Counsel for Defendant
Bituminous Coal Operators'
Association, Inc.*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave, NW
Washington, DC 20004
Telephone: (202) 739-3000
Fax: (202) 739-3001
E-mail: cgroppe@morganlewis.com

# EXHIBIT G

**UMWA's Response to Freeman's First Request for Production**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Michael H. Holland, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  07-cv-490 (PLF) |
| | ) | |
| Freeman United Coal Mining Co., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| Freeman United Coal Mining Co., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  07-cv-1050 (PLF) |
| | ) | |
| United Mine Workers of | ) | |
| America, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OBJECTIONS AND ANSWERS OF DEFENDANT
UNITED MINE WORKERS OF AMERICA
TO PLAINTIFF FREEMAN UNITED COAL MINING COMPANY'S
FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS**

United Mine Workers of America ("UMWA" or "Union"), by its undersigned counsel, and

pursuant to Rule 34 of the Federal Rules of Civil Procedure submits these objections and responses

to Plaintiff Freeman United Coal Mining Company's First Request for Production of Documents.

**GENERAL OBJECTIONS**

1.     The UMWA objects to Plaintiff's First Request for Production of Documents to

the extent that these requests call for information protected by the attorney-client privilege, the

attorney work product privilege or any other privilege or immunity.  If any such information is

inadvertently revealed, no waiver is intended or will occur. The identification of any privileged document or communication herein does not constitute a waiver of such privilege nor an agreement to produce such privileged document or communication.

2. The UMWA objects to Plaintiff's First Request for Production of Documents to the extent that these requests call for information that is not relevant to the subject matter or issues in this case, and is not reasonably calculated to lead to the discovery of admissible evidence.

3. The UMWA objects to Plaintiff's First Request for Production of Documents as being vague, overbroad, ambiguous and unduly burdensome.

4. The UMWA objects to Plaintiff's First Request for Production of Documents to the extent that these requests purport to require the UMWA to attempt to produce or reconstruct documents or information not in its possession, custody, or control.

5. The UMWA objects to Plaintiff's First Request for Production of Documents on the basis that these requests attempt to impose a greater obligation on the UMWA than required by the Federal Rules of Civil Procedure.

## SPECIFIC OBJECTIONS AND ANSWERS

In addition to the general objections set forth above, the UMWA states the following objections with respect to Plaintiff's First Request for Production of Documents.

1. All files maintained by UWMA regarding 2007 Agreement and/or the negotiation of the 2007 Agrement.

**OBJECTION:** The Union objects to this request on the grounds that this request is overbroad and unduly burdensome. In addition, the Union objects to the relevance of this request

2

to the extent that this request seeks documents concerning matters other than the increase in

contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA. The Union further

objects to this request on the basis that it seeks information that is protected by the attorney-client

privilege and the attorney work product privilege/doctrine. Finally, the Union objects to this

request on the basis that it seeks production of documents that are proprietary to the Union, the

disclosure of which would require the Union to reveal its bargaining strategy and negotiating

positions which could adversely affect its ability to effectively conduct future negotiations and

bargaining with coal industry employers. Notwithstanding the above objections, the Union

intends to produce relevant, responsive, non-privileged documents subject to the parties entering

into an acceptable protective order.

> 2.      All correspondence or communications between UMWA and BCOA or between
>         UMWA and Consol regarding the 2007 Agreement.

**OBJECTION:** The Union objects to this request on the grounds that this request is

overbroad and unduly burdensome. In addition, the Union objects to the relevance of this request

to the extent that this request seeks documents concerning matters other than the increase in

contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA. Finally, the Union

objects to this request on the basis that it seeks production of documents that are proprietary to

the Union, the disclosure of which would require the Union to reveal its bargaining strategy and

negotiating positions which could adversely affect its ability to effectively conduct future

negotiations and bargaining with coal industry employers. Notwithstanding the above

objections, the Union intends to produce relevant, responsive, non-privileged documents subject

to the parties entering into an acceptable protective order.

3

3.    All proposals and counter-proposals exchanged between UMWA and BCOA or between UMWA and Consol for the 2007 Agreement.

**OBJECTION:** The Union objects to this request on the grounds that this request is overbroad and unduly burdensome. In addition, the Union objects to the relevance of this request to the extent that this request seeks documents concerning matters other than the increase in contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA. Finally, the Union objects to this request on the basis that it seeks production of documents that are proprietary to the Union, the disclosure of which would require the Union to reveal its bargaining strategy and negotiating positions which could adversely affect its ability to effectively conduct future negotiations and bargaining with coal industry employers. Notwithstanding the above objections, the Union intends to produce relevant, responsive, non-privileged documents subject to the parties entering into an acceptable protective order.

4.    All documents provided to or received from BCOA regarding the 2007 Agreement.

**OBJECTION:** The Union objects to this request on the grounds that this request is overbroad and unduly burdensome. In addition, the Union objects to the relevance of this request to the extent that this request seeks documents concerning matters other than the increase in contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA. Finally, the Union objects to this request on the basis that it seeks production of documents that are proprietary to the Union, the disclosure of which would require the Union to reveal its bargaining strategy and negotiating positions which could adversely affect its ability to effectively conduct future negotiations and bargaining with coal industry employers. Notwithstanding the above

4

objections, the Union intends to produce relevant, responsive, non-privileged documents subject to the parties entering into an acceptable protective order.

     5.      All documents provided to or received from Consol regarding the 2007 Agreement.

**OBJECTION:** The Union objects to this request on the grounds that this request is overbroad and unduly burdensome. In addition, the Union objects to the relevance of this request to the extent that this request seeks documents concerning matters other than the increase in contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA. Finally, the Union objects to this request on the basis that it seeks production of documents that are proprietary to the Union, the disclosure of which would require the Union to reveal its bargaining strategy and negotiating positions which could adversely affect its ability to effectively conduct future negotiations and bargaining with coal industry employers. Notwithstanding the above objections and to the extent they exist, the Union intends to produce relevant, responsive, non-privileged documents subject to the parties entering into an acceptable protective order.

     6.      All documents regarding the negotiation of the increase in contribution rates to the 1974 Pension Trust contained in the 2007 Agreement.

**OBJECTION:** The Union objects to this request on the grounds that this request is overbroad, unduly burdensome and duplicative. The Union further objects to this request on the basis that it seeks information that is protected by the attorney-client privilege and the attorney work product privilege/doctrine. Finally, the Union objects to this request on the basis that it seeks production of documents that are proprietary to the Union, the disclosure of which would require the Union to reveal its bargaining strategy and negotiating positions which could

adversely affect its ability to effectively conduct future negotiations and bargaining with coal

industry employers. Notwithstanding the above objections, the Union intends to produce

relevant, responsive, non-privileged documents subject to the parties entering into an acceptable

protective order.

> 7.    All correspondence or communications between or among UMWA and Patricia
>
> Lang, J. Brett Harvey, Peter B. Lilly, Daniel L Fassio, or B.V. Hyler regarding the
>
> 2007 Agreement.

**OBJECTION:**    The Union objects to this request on the grounds that this request is

overbroad, unduly burdensome and duplicative. In addition, the Union objects to the relevance

of this request to the extent that this request seeks documents concerning matters other than the

increase in contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA. Finally,

the Union objects to this request on the basis that it seeks production of documents that are

proprietary to the Union, the disclosure of which would require the Union to reveal its bargaining

strategy and negotiating positions which could adversely affect its ability to effectively conduct

future negotiations and bargaining with coal industry employers. Notwithstanding the above

objections and to the extent they exist, the Union intends to produce relevant, responsive, non-

privileged documents subject to the parties entering into an acceptable protective order.

> 8.    All documents regarding the negotiation of the 1974 Pension Trust contribution
>
> rates contained in the 2002 NBCWA.

**OBJECTION:**    The Union objects to this request on the grounds that this request is

overbroad and unduly burdensome. Moreover, the Union objects to this request on the basis that

it does not seek documents relevant to resolve the pending summary judgment motions. The

6

Union further objects to this request on the basis that it seeks information that is protected by the attorney-client privilege and the attorney work product privilege/doctrine. The Union also objects to this request because it seeks documents not in the Union's custody or control. Finally, the Union objects to this request on the basis that it seeks production of documents that are proprietary to the Union, the disclosure of which would require the Union to reveal its bargaining strategy and negotiating positions which could adversely affect its ability to effectively conduct future negotiations and bargaining with coal industry employers.

9.   All documents regarding the negotiation of the 2007 Agreement, including: memoranda regarding the negotiation sessions for the 2007 Agreement; all notes taken by any person participating in the negotiations for the 2007 Agreement; communications between or among individuals; and any official and unofficial correspondence, notes, records, minutes, transcripts, and proposals that document the negotiation of the 2007 Agreement.

**OBJECTION:** The Union objects to this request on the grounds that this request is overbroad, unduly burdensome and duplicative. In addition, the Union objects to the relevance of this request to the extent that this request seeks documents concerning matters other than the increase in contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA. The Union further objects to this request on the basis that it seeks information that is protected by the attorney-client privilege and the attorney work product privilege/doctrine. Finally, the Union objects to this request on the basis that it seeks production of documents that are proprietary to the Union, the disclosure of which would require the Union to reveal its bargaining strategy and negotiating positions with could adversely affect its ability to effectively conduct future

negotiations and bargaining with coal industry employers. Notwithstanding the above objections, the Union intends to produce relevant, responsive, non-privileged documents subject to the parties entering into an acceptable protective order.

10.     All correspondence or communications between UMWA and UMWA-appointed trustees of the 1974 Pension Trust regarding the 2007 Agreement and/or the increase in contribution rates to the 1974 Pension Trust contained in the 2007 Agreement.

**OBJECTION:** The Union objects to this request on the grounds that this request is overbroad, unduly burdensome and duplicative. In addition, the Union objects to the relevance of this request to the extent that this request seeks documents concerning matters other than the increase in contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA. Finally, the Union objects to this request on the basis that it seeks production of documents that are proprietary to the Union, the disclosure of which would require the Union to reveal its bargaining strategy and negotiating positions which could adversely affect its ability to effectively conduct future negotiations and bargaining with coal industry employers. Notwithstanding the above objections, the Union intends to produce relevant, responsive, non-privileged documents subject to the parties entering into an acceptable protective order.

11.     Documents that identify the individuals responsible for negotiating the 1998 and 2002 NBCWAs on behalf of UMWA.

**OBJECTION:** The Union objects to this request on the basis that it does not seek documents relevant to resolve the pending summary judgment motions. Notwithstanding the above objection, the Union refers Freeman to the Declaration of Cecil E. Roberts submitted in

support of the Union's motion for summary judgment.

    12.     Documents that identify the individuals responsible for negotiating the 2007

             Agreement on behalf of UMWA.

**OBJECTION:**  See Objection to Document Request No. 11.

    13.     Any analysis performed by, performed for, provided to, or relied upon by UMWA

             from 1995 to the present regarding the financial condition of 1974 Pension Trust,

             including any analysis of future benefit expenses, funding, and any needed

             increase in contributions to the Trust.

**OBJECTION:**  The Union objects to this request on the grounds that this request is overbroad and unduly burdensome. In addition, the Union objects to the relevance of this request to the extent that this request seeks documents concerning matters other than the increase in contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA. Moreover, the Union objects to this request on the basis that it does not seek documents relevant to resolve the pending summary judgment motions. The Union further objects to this request on the basis that it seeks information that is protected by the attorney-client privilege and the attorney work product privilege/doctrine. The Union also objects to this request because it seeks documents not in the Union's custody or control. Finally, the Union objects to this request on the basis that it seeks production of documents that are proprietary to the Union, the disclosure of which would require the Union to reveal its bargaining strategy and negotiating positions which could adversely affect its ability to effectively conduct future negotiations and bargaining with coal industry employers. Notwithstanding the above objections, the Union intends to produce

9

relevant, responsive, non-privileged documents subject to the parties entering into an acceptable protective order.

14.    Any submissions made to any court regarding the meaning, interpretation, or intent of the parties with respect to the Evergreen Clause, including any supporting materials such as exhibits, testimony, affidavits, or declarations, whether submitted to the court by UMWA or some other party.

**OBJECTION:** The Union objects to this request on the grounds that this request is overbroad and unduly burdensome. The Union also objects to this request because it seeks documents not in the Union's custody or control. Notwithstanding these objections, it is the Union's understanding that the 1974 Pension Trust is in possession of certain documents that may be responsive to this request but are subject to an existing protective order from previous litigation. The Union has indicated, to the extent it has the authority to do so, it is willing to waive the restrictions contained in previous protective orders to allow the 1974 Pension Trust to produce documents relevant to this request, subject to the parties in the pending consolidated cases reaching an acceptable protective order.

15.    To the extent not provided in response to document request number 14, all documents regarding the meaning or interpretation of the phrase "and any successor agreement thereto" contained in the Evergreen Clause, or regarding the intent of the parties in the use of the phrase.

**OBJECTION:** See Objection to Document Request No. 14.

16.    Any submissions made to any court regarding the meaning, interpretation, or

intent of the parties with respect to the Guarantee Clause, including any

supporting materials such as exhibits, testimony, affidavits, or declarations,

whether submitted to the court by UMWA or some other party.

**OBJECTION:** <u>See</u> Objection to Document Request No. 14.

17.    To the extent not provided in response to document request number 16, all

documents regarding the meaning or interpretation of the phrase "[i]n order to

fully fund these guaranteed benefits" contained in the Guarantee Clause, or

regarding the intent of the parties in the use of the phrase.

**OBJECTION:** <u>See</u> Objection to Document Request No. 14.

18.    Documents that identify the number of UMWA-represented employees employed

by each BCOA member at the 1978, 1981, 1984, 1988, 1993, 1998, and 2002

NBCWAs and the 2007 Agreement were negotiated.

**OBJECTION:**    The Union objects to this request on the grounds that this request is

unduly burdensome.  Moreover, the Union objects to this request on the basis that it does not

seek documents relevant to resolve the pending summary judgment motions.

19.    Documents that identify the percentage of UMWA-represented employees

employed by each BCOA member or by BCOA members at the time the 1978,

1981, 1984, 1988, 1993, 1998, and 2002 NBCWAs and the 2007 Agreement were

negotiated.

**OBJECTION:** <u>See</u> Objection to Document Request No. 18.

20.    All documents regarding the negotiation of the contribution rates to the 1974

Pension Plan to be included in the 2003 Freeman Agreement.

11

**OBJECTION:**  The Union objects to this request on the basis that it does not seek documents relevant to resolve the pending summary judgment motions.  Notwithstanding the above objection and to the extent they exist, the Union intends to produce relevant, responsive, non-privileged documents subject to the parties entering into an acceptable protective order.

21.    All documents regarding (1) the transfers of funds from the 1974 Pension Trust to the 1993 Benefit Trust, including any amounts transferred at the request of the plan participant, and (2) payments of additional pension benefits to plan participants in recognition of the anticipated hardship due to increased medical costs under the 1993 Benefit Trust during the plan years 2002 through 2006.

**OBJECTION:**  The Union objects to this request on the grounds that this request is overbroad, vague and unduly burdensome.  Moreover, the Union is unaware of any such transfer. Finally, the Union objects to this request on the basis that it does not seek documents relevant to resolve the pending summary judgment motions.

22.    To the extent not already provided in response to request number 21, any analysis performed by, performed for, provided to, or relied upon by UMWA regarding the effect of the transfers of funds from the 1974 Pension Trust to the 1993 Benefit Trust and/or the payment of additional benefits to 1993 Benefit Trust beneficiaries on the financial condition of 1974 Pension Trust, including any analysis of future benefit expenses, funding, and any needed increase in contributions to the Trust as a result of the fund transfers and/or payment of additional benefits.

**OBJECTION:**  See Objection to Document Request No. 21.

23.    All communications from 2002 to present with members of the United States

12

Congress and/or their staff regarding multiemployer pension funding and related legislation and/or legislative activity.

**OBJECTION:**   The Union objects to this request on the grounds that this request is overbroad and unduly burdensome.  Moreover, the Union objects to this request on the basis that it does not seek documents relevant to resolve the pending summary judgment motions.

24.    All documents provided to or received from BCOA or the 1974 Pension Trust regarding federal legislation and/or legislative activity related to multiemployer pension funding.

**OBJECTION:**   <u>See</u> Objection to Document Request No. 23.

25.    All documents regarding any assessment, evaluation, and/or analysis of the level of 1974 Pension Trust contributions necessary to comply with the Pension Protection Act of 2006.

**OBJECTION:** The Union objects to this request on the basis that it does not seek documents relevant to resolve the pending summary judgment motions.  Notwithstanding the above objection and to the extent they exist, the Union intends to produce relevant, responsive, non-privileged documents subject to the parties entering into an acceptable protective order.

26.    All documents regarding any agreement with Consol in 2006 or 2007 that is not identified in an NBCWA.

**OBJECTION:**   The Union objects to this request on the basis that it does not seek documents relevant to resolve the pending summary judgment motions.

13

Respectfully submitted,

John R. Mooney, Bar No. 375886
Mark J. Murphy, Bar No. 453060
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W.
Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile

Counsel for Defendant
United Mine Workers of America

September 10, 2007

14

## CERTIFICATE OF SERVICE

I certify that on this the 10th day of September, 2007 a true and correct copy of the Objections and Answers of Defendant United Mine Workers of America to Plaintiff Freeman United Coal Mining Company's First Request for the Production of Documents was sent by electronic mail and first class mail, postage prepaid to the following:

Gregory J. Ossi, Esq.
Venable, LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
gossi@venable.com

Jessica Ring Amunson, Esq.
Jenner & Block, LLP
601 13th Street, N.W.
Suite 1200 South
Washington, D.C. 20005
jamunson@jenner.com

Michael W. Robinson, Esq.
Venable, LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
mwrobinson@venable.com

Counsel for Plaintiff
Freeman United Coal Mining Company

John R. Woodrum, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street
Fifth Floor
Washington, D.C. 20037
john.woodrum@ogletreedeakins.com

Counsel for Defendant
Monterey Coal Company

Peter Buscemi, Esq.
Morgan, Lewis & Bockius, L.L.P.
1111 Pennsylvania Ave, N.W.
Seventh Floor
Washington, D.C. 20004
pbuscemi@morganlewis.com

Stanley F. Lechner, Esq.
Morgan, Lewis & Bockius, L.L.P.
1111 Pennsylvania Ave, N.W.
Seventh Floor
Washington, D.C. 20004
slechner@morganlewis.com

Counsel for Defendant
Bituminous Coal Operators' Association, Inc.

Andrew D. Roth, Esq.
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Suite 1000
Washington, D.C. 20005
aroth@bredhoff.com

Julia Penny Clark
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Suite 1000
Washington, D.C. 20005
jpclark@bredhoff.com

Counsel for United Mine Workers of America
1974 Pension Fund and its Trustees

Mark J. Murphy