UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Michael H. Holland, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>Freeman United Coal Mining Co., et al., )<br>)<br>Defendants. )<br>) | Case No. 07-cv-490 (PLF) |
| Freeman United Coal Mining Co., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>United Mine Workers of )<br>America, et al., )<br>)<br>Defendants. )<br>) | Case No. 07-cv-1050 (PLF) |

**MEMORANDUM OF UNITED MINE WORKERS
OF AMERICA IN OPPOSITION TO MOTIONS TO STAY
OR DENY SUMMARY JUDGMENT PENDING DISCOVERY**

Defendant United Mine Workers of America ("UMWA" or "Union"), by its undersigned counsel, hereby opposes the motions filed by Freeman United Coal Mining Company and Monterey Coal Company requesting that, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, this Court deny or, in the alternative, stay the pending motions for summary judgment filed by the Union, the 1974 UMWA Pension Plan ("1974 Plan") and the Bituminous Coal Operators' Association, Inc. ("BCOA"). For the reasons set forth below the Union respectfully submits that the relief sought by these Rule 56(f) motions should be denied.

The two consolidated cases before the Court involve a question of whether Monterey and Freeman are obligated to contribute to the 1974 Plan under a contractual provision known as the "evergreen" or "continuing contributions" clause. Freeman and Monterey do not and cannot deny that they are signatory to numerous collective bargaining agreements that incorporate the evergreen clause, including National Bituminous Coal Wage Agreements.

The meaning and application of the evergreen clause was vigorously contested by numerous coal companies in various federal courts from 1988 through 1993. In 1991, after a ruling by the Judicial Panel on Multidistrict Litigation, all of the evergreen cases were consolidated in this Court before Judge Thomas F. Hogan. In a thorough opinion by Judge Hogan dated February 3, 1992, this Court granted summary judgment to the 1974 Plan and against the coal companies, ruling that the evergreen clause "was an important provision negotiated to make sure that any coal operator that voluntarily agreed to participate in the [UMWA] Funds in 1978 could not simply walk away from the Funds and leave its retirees behind, or negotiate cut-rate contributions with the UMWA, at the expense of the remaining employers." In re United Mine Workers of America Employee Benefit Plans Litigation, 782 F. Supp. 658, 665 (D.D.C. 1992).

The D.C. Circuit affirmed in February 1993, holding that the coal companies "agreed to be bound by the evergreen clause to make continuing contributions to the trusts; and the obligation included an agreement to make contributions at the rates specified in subsequent NBCWAs, without regard to whether the employer was still a party to the subsequent agreements." United Mine Workers of America 1974 Pension Trust v. Pittston Company, 984 F.2d 469, 474 (D.C. Cir. 1993). The coal companies sought review in the Supreme Court but

2

their petitions were denied. See Rawl Sales and Processing Co. v. UMWA 1974 Pension Trust, 509 U.S. 924 (1993), and Pittston Company v. UMWA 1974 Pension Trust, 509 U.S. 924 (1993).

Despite this binding authority, Freeman and Monterey, through their respective Rule 56(f) motions ask this Court to allow far reaching and extensive discovery that would effectively allow these two coal operators to re-litigate the Pittston cases. As the Union demonstrates in its legal memoranda in support of its request for summary judgement, the only question required to be resolved by this Court is whether the contribution rate for the 1974 Plan as set forth in the 2007 NBCWA is valid? If the answer to this question is yes, both Freeman and Monterey are bound by their undisputed previous contractual obligations to contribute at this rate.

The bulk of the Rule 56(f) motions filed by Freeman and Monterey seek to demonstrate why this present case is unlike Pittston and why the discovery sought by the coal companies would not lead to the parties being enmeshed in the same discovery conducted in these previous cases - as the Union has previously contended. These motions, however, are unavailing. The Union submits that the collective briefs and supporting documentation submitted by the 1974 Plan, BCOA and the UMWA provide a thorough and complete basis for resolving the coal companies' obligation under the evergreen clause.

In response to the discovery served upon the Union it has already produced approximately 1100 pages of documents concerning the negotiations between the UMWA and BCOA that led to the 2007 NBCWA. See Declaration of Mark J. Murphy ("Murphy Declaration") at ¶ 4, attached hereto as Exhibit 1. Consistent with its previously stated position, the Union produced documents and portions of documents relevant to bargaining over the 1974 Plan contribution

3

rate. Id. at ¶ 5. As part of its document production, the Union provided the analysis it relied on in seeking pension increases for its members, and how the newly passed Pension Protection Act of 2006 would impact its ability to achieve the increases it sought. See Murphy Declaration, at ¶ 7.

The Union also produced documents demonstrating the Union's view that the 2007 NBCWA was intended to be a national agreement rather than a single employer agreement as Freeman and Monterey claim. Id. at ¶ 8. For example, the Union produced documents establishing that when the parties considered how to pay for the contemplated pension increases sought by the UMWA, they considered the projected hours to be worked in the organized sector of the bituminous coal industry over the life of the agreement rather than the hours to be worked only by employees of BCOA member companies. Id. at ¶ 9.

The Union submits that the scope of documents it has already produced is entirely consistent with the only question legitimately before this Court - whether the contribution rate for the 1974 Plan, as found in the 2007 NBCWA, is valid. Accordingly, the relief requested through the Rule 56(f) motions filed by Freeman and Monterey should be denied.

4

Respectfully submitted,

*[signature]*

John R. Mooney, Bar No. 375886
Mark J. Murphy, Bar No. 453060
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W.
Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile

Counsel for Defendant
United Mine Workers of America

November 13, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Michael H. Holland, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v.   ) <br> ) <br> Freeman United Coal Mining Co., et al., ) <br> ) <br> ) <br> Defendants. ) <br> ) | Case No. 07-cv-490 (PLF) |
| Freeman United Coal Mining Co., ) <br> ) <br> Plaintiff, ) <br> ) <br> v.   ) <br> ) <br> United Mine Workers of ) <br> America, et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 07-cv-1050 (PLF) |

## DECLARATION OF MARK J. MURPHY

1. I am an adult resident of the Commonwealth of Virginia.

2. I am a member of the law firm of Mooney, Green, Baker & Saindon, P.C. in Washington, D.C. and our firm represents the United Mine Workers of America ("Union") in the above captioned case.

3. After an initial review by in-house counsel, I was the attorney primarily responsible for providing responses to the requests for production of documents served on the Union by Freeman United Coal Mining Company ("Freeman"). I also reviewed the documents that were subsequently produced by the Union to

Freeman in response to its request for production of documents.

4. On or about September 10, 2007, the Union produced 1124 pages of documents in response to Freeman's document requests.

5. As part of its response to Freeman's document requests, the Union objected to the scope of these requests, as well as the relevancy of much of the documents sought by Freeman. Specifically, in its response to Freeman the Union objected to a number of the document requests on the grounds that the requests were overbroad and unduly burdensome. In addition, the Union also objected to Freeman's document requests because these requests sought documents concerning matters other than the increase in contribution rate to the 1974 Pension Trust contained in the 2007 NBCWA. The Union had previously articulated its position that this was the only issue legitimately before the Court.

6. Consistent with its position concerning the scope of this case, the documents and portions of documents provided to Freeman were limited to this issue.

7. As part of its document production, the Union provided the analysis it relied on in seeking pension increases for its members, and how the newly passed Pension Protection Act of 2006 would impact its ability to achieve the increases it sought.

8. The Union also produced documents demonstrating the Union's view that the 2007 NBCWA was intended to be a national agreement rather than a single employer agreement as Freeman and Monterey claim in this case.

9. For example, the Union produced documents establishing that when the parties considered how to pay for the contemplated pension increases sought by the

UMWA, they considered the projected hours to be worked in the organized sector of the bituminous coal industry over the life of the agreement rather than the hours to be worked only by employees of BCOA member companies. One particular document relevant to this issue was a four page email from the Union's actuaries to the Union providing calculations concerning the Union's contemplated pension increases. This document was produced to Freeman in the course of the Union's response to Freeman's request for production of documents. (See UMWA Document Production at Bates Nos. 0615-18.) Because this document has been marked "confidential" by the Union, the Union intends to file this document under seal pursuant to the procedure set forth in Local Rule 5(j) and this Court's October 2, 2007 Confidentiality Order.

I declare under penalty of perjury, that the above is true and correct.

_____
Mark J. Murphy

Date: November 13, 2007