**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                     )
Michael H. Holland, Micheal W. Buckner,  )
B.V. Hyler and Steven F. Schaab as Trustees )
of the United Mine Workers of America 1974 )
Pension Trust,                                      )
　　　　　Plaintiffs,                          )
                                                     )
　　v.                                              )
                                                     )   Case No. 07-cv-00490 (PLF/AK)
Freeman United Coal Mining Company, et al., )
                                                     )
　　　　　Defendants.                      )
_____)
                                                     )
Freeman United Coal Mining Company,   )
                                                     )
　　　　　Plaintiff,                           )   Case No. 07-cv-01050 (PLF/AK)
                                                     )
　　v.                                              )
                                                     )
United Mine Workers of America, et al.,    )
                                                     )
　　　　　Defendants.                       )
_____)

**FREEMAN UNITED COAL MINING COMPANY'S MOTION TO SUBSTITUTE AN
AMENDED MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL
DISCOVERY FROM THE BITUMINOUS COAL OPERATORS' ASSOCIATION AND
UNITED MINE WORKERS OF AMERICA**

   Freeman filed a motion to compel on November 27, 2007, which was supported by a memorandum, and is set to be heard by Judge Kay on December 18, 2007. Opposing parties have not yet responded. Freeman hereby moves this Court for permission to submit an amended memorandum to correct an error relating to what emails were reviewed and produced by BCOA. On further review, Freeman now believes BCOA did review Charles Perkins' email and so has narrowed the two paragraphs in its memorandum with respect to this issue. The amended paragraphs appear on pages 3 and 10. Otherwise, Freeman's memorandum remains unchanged.

WHEREFORE Freeman requests that its motion be granted and that the following memorandum be substituted for the memorandum previously submitted on November 27, 2007. Freeman has alerted the other parties to the filing of this amended memorandum.

December 5, 2007                                      Respectfully submitted,

                                                                            /s/ Paul M. Smith

Paul M. Smith
DC Bar No. 358870
Jessica Ring Amunson
DC Bar No. 497223
JENNER & BLOCK LLP
601 13th Street, NW
Washington, DC 20005
Tel:   (202) 639-6000
Fax:   (202) 661-4993
psmith@jenner.com
jamunson@jenner.com

Susan C. Levy (*pro hac vice*)
Aaron M. Forester (*pro hac vice*)
JENNER & BLOCK LLP
333 North Wabash Avenue
Chicago, IL 60611
Tel:   (312) 923-2772
Fax:   (312) 840-7772
slevy@jenner.com
aforester@jenner.com

Michael W. Robinson
DC Bar No. 437979
Gregory J. Ossi
DC Bar No. 460243
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Tel:   (703) 760-1600
Fax:   (703) 812-8949
mwrobinson@venable.com
gjossi@venable.com

*Counsel for Freeman United Coal Mining Company*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                         )
Michael H. Holland, Micheal W. Buckner,    )
B.V. Hyler and Steven F. Schaab as Trustees )
of the United Mine Workers of America 1974 )
Pension Trust,                                              )
                                                         )
        Plaintiffs,                                  )
                                                         )
      v.                                                    )
                                                         )    Case No. 07-cv-00490 (PLF/AK)
Freeman United Coal Mining Company, et al., )
                                                         )
        Defendants.                                )
_____)
                                                         )
Freeman United Coal Mining Company,      )
                                                         )
        Plaintiff,                                    )    Case No. 07-cv-01050 (PLF/AK)
                                                         )
      v.                                                    )
                                                         )
United Mine Workers of America, et al.,         )
                                                         )
        Defendants.                                )
_____)

**FREEMAN UNITED COAL MINING COMPANY'S AMENDED MEMORANDUM IN
SUPPORT OF ITS MOTION TO COMPEL DISCOVERY FROM THE BITUMINOUS
COAL OPERATORS' ASSOCIATION AND  UNITED MINE WORKERS OF AMERICA**

**INTRODUCTION**

      Freeman filed a motion to compel on November 27, which was supported by a memorandum and is set to be heard by Judge Kay on December 18, 2007.  Opposing parties have not yet responded.  Freeman submits this amended memorandum to correct an error relating to what emails were reviewed and produced by BCOA.  On further review, Freeman now believes BCOA did review Charles Perkins' email and so has narrowed two paragraphs in this memorandum with respect to this issue.  The amended paragraphs appear on pages 3 and 10. Otherwise, Freeman's memorandum remains unchanged.

This motion to compel arises in two consolidated cases. In one, Freeman United Coal Mining Company ("Freeman") has sought: (1) a declaratory judgment that it is not obligated to contribute to the 1974 Pension Plan and Trust ("Trust") at the exorbitant rates set by the United Mine Workers of America ("UMWA") and the Bituminous Coal Operators' Association ("BCOA") in the so-called 2007 National Bituminous Coal Wage Agreements ("2007 Agreement") or, if Freeman is found to owe contributions to the 1974 Pension Trust at rates set in the 2007 Agreement, (2) a judgment against BCOA for damages stemming from breach of duties owed to Freeman. In the other case, the 1974 Pension Plan and Trust Trustees ("Trustees") have sued Freeman for breach of contract for failure to contribute to the Trust at the rates set by the 2007 Agreement. Freeman contends that it is not obligated to contribute at rates set in the 2007 Agreement because the 2007 Agreement, unlike previous National Bituminous Coal Wage Agreements ("NBCWAs"), is not a "successor agreement," which is a fundamental prerequisite to consideration of the potential applicability of the "evergreen clause" of the Trust and the imposition of a continuing contribution obligation. At the time the UMWA and BCOA negotiated the 2007 Agreement, Consolidation Coal Company ("Consol") was the sole remaining member of the BCOA. Therefore, unlike previous NBCWAs, the 2007 Agreement was negotiated not by a multi-employer bargaining unit, but by a single employer Consol, and cannot be said to bind Freeman, a non-signatory to the 2007 Agreement.

Freeman files this motion in response to widespread defiance of discovery obligations on the part of two of the parties opposing Freeman – BCOA and UMWA. Freeman has tried to pursue discovery from these parties since the start of the litigation, but BCOA and UMWA stubbornly persist in limiting their discovery productions based on their own interpretations of what is "relevant" to the issues in this case. In so doing, they are blatantly violating the mandate of Rule 26(b) of the Federal Rules of Civil Procedure as well as this Court's orders, which have

repeatedly and expressly rejected the opposing parties' position that discovery either is not necessary or should be limited solely to the issue of the reasonableness of the contribution rate contained in the 2007 Agreement.  In particular, Freeman has not received all of BCOA's and UMWA's documents relating to the 2007 Agreement as plainly demonstrated by (1) BCOA's and UMWA's own admissions about their limited productions; (2) a third party's production of documents which show emails and other documents that were not produced by BCOA and UMWA; and (3) the dearth of emails and other electronically stored information relating to key witnesses.  BCOA's and UMWA's failure to produce relevant documents has delayed depositions in this matter.  For these reasons, Freeman respectfully requests that this Court compel the BCOA and UMWA to produce the documents Freeman has requested.

## BACKGROUND TO DISCOVERY DISPUTE

Since the inception of this litigation, the opposing parties have repeatedly taken the view that this case can be resolved without resort to discovery.  After they lost their motions to dismiss, the opposing parties argued that *United Mine Workers of America 1974 Pension Trust v. Pittston*, 782 F. Supp. 658 (D.D.C. 1992), *aff'd*, 984 F.2d 469 (D.C. Cir. 1993) ("*Pittston*") is *stare decisis* and conclusive of all the issues in this case.  Thus, in the discovery plan they submitted to the Court following the parties' Rule 26(f) conference, the opposing parties proposed that the Court stay discovery, permit them to file early summary judgment motions, and thereafter allow discovery only if Freeman could show it was necessary under Rule 56(f). *See* Opposing Parties' Proposed Scheduling Order (July 12, 2007) (Docket 40, Attachment 4).[1] Freeman opposed this proposed course of action, arguing that discovery was necessary because of the numerous issues of disputed fact in this case.  The Court agreed with Freeman and issued a scheduling order on July 20, 2007, stating that discovery should commence immediately and that

---

[1] Unless otherwise indicated, all docket number references are to the docket in Case No. 1:07-cv-00490.

*"[t]here will be no limits on discovery other than those specified in the Federal Rules of Civil Procedure and the Local Rules."* Docket 42 (emphasis added). Freeman thereafter commenced discovery, issuing requests for production to all of the parties on August 6, 2007. *See* Exhibits A and B, attached hereto (Freeman's First Requests for Production to BCOA and UMWA).

Before producing any discovery to Freeman in this case, the Trustees, BCOA, and UMWA filed motions for summary judgment. Thus, rather than responding to Freeman's discovery requests by September 5, 2007, as required by Rule 34(b), UMWA and BCOA instead filed their motions on September 7 and 10, 2007 respectively. The opposing parties then attempted to curtail Freeman's discovery rights during the time their motions for summary judgment were pending, proposing to the Court that "during the briefing of the motions for summary judgment, discovery in these consolidated cases shall be limited to information related to the negotiation of the current contribution rate contained in the National Bituminous Coal Wage Agreement of 2007 ('NBCWA'); information related to pension benefit changes contained in the 2007 NBCWA; and information concerning the meaning of the term 'successor' in the evergreen clause." *See* Proposed Order (Sept. 18, 2007) (Docket 50).

Consistent with their position that they could unilaterally impose limitations on Freeman's discovery requests, and despite the Court's contrary ruling in its July scheduling order, the opposing parties then responded to Freeman's first requests for production as follows:

- The UMWA served its responses to Freeman's first request for production on September 10, 2007. The UMWA "objected to Freeman's documents requests because these requests sought documents concerning matters other than the increase in contribution rate to the 1974 Trust contained in the 2007 NBCWA" and the Union believed that "this was the only issue legitimately before the Court." *See* Declaration of Mark J. Murphy ¶¶ 5-6

-4-

(Docket 29, Exhibit 2).[2]   Thus, the Union stated that "[c]onsistent with its position concerning the scope of this case, the documents and portions of documents provided to Freeman were limited to this issue."  *Id*.; *see also* Exhibit D, attached hereto (UMWA Response to Freeman's First Request for Production.

- BCOA served its responses to Freeman's first request for production on September 11, 2007.  *See* Exhibit C, attached hereto (BCOA Response to Freeman's First Request for Production).  BCOA stated that it:

    > object[ed] to [Freeman's] Document Requests to the extent that they seek information and documents beyond the scope of the issues raised by BCOA in its pending motion for summary judgment. . . .  To the extent that Freeman, after reviewing BCOA's pending motion, believes that it needs certain discovery to oppose BCOA's motion, BCOA will consider any such requests that are presented through an affidavit under Fed. R. Civ. P. 56(f) and that state with specificity what discovery Freeman believes is necessary to address BCOA's motion, how such discovery potentially may show a genuine issue of material fact, and why Freeman assertedly cannot, absent such discovery, present facts essential to justify its opposition to BCOA's motion.

    *Id*.  BCOA further objected to Freeman's requests for production that "related to *any matter other than* the contribution obligation contained in the 2007 NBCWA."  *Id*. (emphasis added).  Thus, BCOA responded to Freeman's discovery requests by espousing exactly the position that this Court rejected regarding limitations on discovery.

- BCOA and UMWA also objected to discovery because the requested discovery was "proprietary" or "confidential," even though, at the opposing parties' request, Freeman agreed to a Confidentiality Order, which this Court entered on October 2, 2007.  *See* Confidentiality Order (October 2, 2007) (Docket 26).

On November 9, 2007, Freeman wrote to counsel for UMWA and BCOA asking them to supplement their productions and identifying specific documents Freeman believed were missing from UMWA's and BCOA's limited productions.  *See* Exhibits E and F, attached hereto

---

[2] This docket reference is to Case No. 1:07-cv-01050.

(November 9, 2007 Letters from Freeman to UMWA and BCOA). UMWA responded on November 15, 2007 by steadfastly maintaining its position that it would not produce any of the documents Freeman had requested beyond those involving the increase in contribution rates to the 2007 Agreement. *See* Exhibit G, attached hereto (November 15, 2007 Letter from UMWA to Freeman).

On November 19, 2007, the Court entered an order granting Freeman's motion to deny or stay ruling on all motions for summary judgment until discovery could be completed. *See* Docket 63. The Court reiterated the holding in its scheduling order of July 20, 2007, that Freeman would have until January 18, 2008 to pursue fact discovery and that during this time period, "*there will be no limits on ongoing fact discovery other than those specified in the Court's scheduling order, the Federal Rules of Civil Procedure and the Local Civil Rules.*" *Id*. (emphasis added); *see also* Docket 42. That same day, Freeman contacted counsel yet again to give the parties another chance to supplement their productions, but to no avail. BCOA responded by stating that it would produce a few additional documents, however, it continued to assert that as to the 2007 negotiations, it would not produce any of the documents Freeman had requested beyond those involving the increase in contribution rates to the 2007 Agreement. *See* Exhibit H, attached hereto (November 21, 2007 Letter from BCOA to Freeman).

## THE DISCOVERY FREEMAN SEEKS

As has become increasingly evident throughout this litigation, the parties have very different ideas of what this case is about. The opposing parties accuse Freeman of attempting to relitigate the *Pittston* litigation of more than a decade ago. They continue to believe this case can be resolved as a matter of law – a position this Court has now *twice* rejected. *See* Docket 42, 63. But as Freeman has repeatedly explained, this case involves factual issues not raised in *Pittston*

and these issues must be explored through discovery. And the Court has repeatedly ruled that Freeman should be allowed that discovery.

Count I of Freeman's complaint raises two inter-related issues: (1) whether the 2007 Agreement between the UMWA and BCOA can still be a "successor" agreement with regard to the consideration of the potential applicability of the evergreen clause of the 1974 Plan if the BCOA is no longer a multi-employer bargaining unit, and (2) whether a single-employer agreement can somehow be transformed into a "successor" national agreement after the fact by the UMWA's coercing other coal companies – through strikes and threats of other economic sanctions – to sign "me too" agreements. As demonstrated in Freeman's successful motion to deny or stay ruling on all motions for summary judgment (*see* Docket 58), these issues raise a host of disputed issues of fact for the following four reasons:

1. In *Pittston,* this Court held that in order to properly interpret the evergreen clause, it was necessary to consider extrinsic evidence. 782 F. Supp. at 664. It also held that the evergreen clause does not impose perpetual obligations to contribute and the obligation to contribute ceases if no true "successor" NBCWA is negotiated. *Id.* at 669-70.

2. In *Pittston*, this Court held that a single employer's "individual collective bargaining agreement[] with the UMWA" cannot be a "successor agreement" within the meaning of the evergreen clause. 782 F. Supp. at 663. Rather, the Court held that only another NBCWA could be a "successor" agreement.

3. The opposing parties concede that no governing document and no legal authority defines what constitutes a "successor" agreement within the meaning of the evergreen clause.

4. The opposing parties have submitted several lengthy affidavits and additional documents to try to convince this Court that the 2007 Agreement is a successor agreement on the grounds that (1) BCOA and the UMWA supposedly intended it to be a national agreement and

(2) other companies have supposedly responded "overwhelmingly positively" to the 2007 Agreement and signed onto "me too" agreements.

Through the discovery it has propounded to UMWA and BCOA, Freeman seeks to prove that the 2007 Agreement was not a "successor" agreement to prior NBCWAs because it was negotiated not by a multi-employer collective bargaining unit representing the bituminous coal industry – as prior NBCWAs have been – but rather by a single employer, Consol.[3]  And, Freeman also intends to prove that other coal companies only reluctantly signed on to the terms of the 2007 Agreement after they were coerced to do so through strikes or other economic sanctions, which cannot be what the drafters of the evergreen clause had in mind by "successor" agreements.  As this Court has already found, the determination of whether an agreement is a "successor" involves an inquiry into the facts surrounding its negotiation, including the parties who are involved in negotiating and signing the agreement, the scope of the work and workers covered by the agreement, and other issues.  *See Flynn v. Dick Corporation*, 384 F. Supp. 2d 189, 195 (D.D.C.), *rev'd on other grounds*, 481 F.3d 824, 827 n.2 (D.C. Cir. March 20, 2007).  Therefore, to prove its case, Freeman has sought the following categories of discovery:

1. **All Documents Regarding the 2007 Negotiations**:  Freeman has sought copies of *all* documents regarding the negotiations for the 2007 Agreement, including files maintained by BCOA and UMWA, communications between or among them, and all proposals and counterproposals exchanged during the negotiations.  *See, e.g.,* Exhibit A at ¶¶ 10, 11, 12, 13, 14, 15, 16; Exhibit B at ¶¶ 1, 2, 3, 4, 5, 7, 9, 10, 12.  BCOA and UMWA responded by producing very limited or heavily redacted documents that referenced only negotiation of the contribution

---

[3] In addition, in Count II of its complaint, Freeman asserts that, if this Court determines that Freeman must make contributions at rates set in the 2007 Agreement, then the Court will have also found that BCOA owed to Freeman the duties of an agent to its principal.  Freeman asserts that, if this is the case, BCOA has breached its duties to Freeman by negotiating unfair and unreasonable rates and negotiating such rates in bad faith.  The discovery that Freeman seeks is also necessary to prove Count II of its complaint.

-8-

rates in the 2007 Agreement. *See, e.g.*, Exhibit I (UMWA Bates numbered 1082-85, marked as confidential and therefore filed under seal). They refused to produce anything else, contending that the additional documents regarding the 2007 negotiations were not relevant and/or that production would force UMWA and BCOA to reveal confidential or proprietary information and compromise their future bargaining positions. *See, e.g.,* Exhibit C at ¶¶ 10, 11, 12, 13, 14, 15, 16; Exhibit D at ¶¶ 1, 2, 3, 4, 5, 7, 9, 10, 12; Exhibit G at ¶ 1; Exhibit H at ¶ 1. These objections lack any merit. All documents regarding the 2007 negotiations are relevant because they demonstrate, *inter alia*, the manner in which these negotiations have differed from those for the prior NBCWAs, the extent to which Consol controlled the negotiations, the trade-offs involved in reaching agreement on specific provisions, and the prioritization between and within each party of their interests. For example, the BCOA and the UMWA have asserted that the Pension Protection Act of 2006 is the reason for the unprecedented rate increases, but Freeman is entitled to challenge this assertion and the total bargaining history may reveal a very different reason.

Based on its review of document productions from negotiations of prior NBCWAs, Freeman believes that at least the following documents regarding the 2007 Agreement have not been produced by the UMWA and BCOA:

- side-by-side comparisons of the then current provisions and proposed revisions to same;
- summaries of the parties' bargaining positions and/or issue lists;
- transcripts and/or notes documenting joint negotiating sessions;
- proposals between the UMWA and BCOA;
- reports, memoranda, and/or similar documents generated by UMWA, BCOA and/or Consol;
- transcripts of internal UMWA, Consol and/or BCOA meetings;
- documents regarding UMWA membership voting to approve the 2007 Agreement;

-9-

- communications between BCOA and its members regarding the negotiation of the 2007 Agreement;
- communications between BCOA and former BCOA companies regarding negotiation of the 2007 Agreement; and
- communications between UMWA and its members regarding the negotiations of the 2007 Agreement.

*See* Exhibits E and F.

Importantly, Freeman has received few, if any, emails and other correspondence sent to or received by Cecil Roberts (President of the UMWA). Based upon the few emails that the UMWA has produced thus far, Freeman believes that his email accounts may not have even been searched for emails, electronic discovery and other correspondence – they were certainly not produced in discovery. Because UMWA submitted a lengthy declaration from Cecil Roberts in support of its motion for summary judgment, email and correspondence sent to or received from Mr. Roberts is critical. UMWA and Mr. Roberts publicly issued press releases threatening other companies to sign on to the terms of 2007 Agreement or the UMWA would strike. *See, e.g.*, Docket 57, Exhibit B. Yet no documents relating to these coercive UMWA efforts have been produced by the UMWA.

In addition, Freeman has received documents from a third-party, Consol, which have proven what Freeman strongly suspects: UMWA and BCOA have deliberately failed to produce relevant and responsive documents. Exhibit J consists of documents produced by Consol (Bates numbered CCC00571, CCC01149-50, CCC01156, CCC01672, CCC01819-21, marked as confidential and therefore filed under seal). These documents show that Consol has provided Freeman with correspondence between BCOA and Consol and between UMWA and Consol regarding the 2007 Agreement. BCOA and UMWA have not produced these same documents to

Freeman. Freeman can only wonder what other relevant and responsive documents BCOA and UMWA have not produced based on their own interpretations of what is "relevant" to Freeman's requests for production.

2. **Documents Regarding Transfers from the Trust**: Freeman has contended that any alleged need for increased contribution rates to the 1974 Pension Trust is due at least in part to the improper transfer of funds from the 1974 Pension Trust to the 1993 Benefit Trust and has therefore sought documents from BCOA and UMWA, who are settlors of the Trust, regarding this transfer. *See* Exhibit A at ¶¶ 38, 39; Exhibit B at ¶¶ 21, 22; *see also* Exhibits E and F. These documents are clearly relevant because the improper or unlawful siphoning of funds from the 1974 Pension Trust would seriously undermine the opposing parties' argument that the increase in contribution rates contained in the 2007 Agreement was proper and necessary. BCOA and UMWA have produced nothing in response to these requests. *See* Exhibit C at ¶¶ 38, 39; Exhibit D at ¶¶ 21, 22; *see also* Exhibits G and H.

3. **Documents Regarding The Financial Condition of the Trust**: Freeman has sought documents showing that there was no need for BCOA and UMWA to raise contribution rates in the 2007 Agreement and has therefore sought documents regarding any analyses historically performed by, provided to, or relied upon by BCOA or UMWA regarding the financial condition of the 1974 Pension Trust. *See* Exhibit A at ¶ 17; Exhibit B at ¶ 22; *see also* Exhibits E and F. Freeman seeks these documents at least as they relate to any analysis performed by, provided to, or relied upon by BCOA or UMWA in 2001 and 2002 regarding the financial condition of the Trust and any need for an increase in contributions. These documents are relevant because 2002 was the last NBCWA negotiated, the 2002 NBCWA contained very similar benefit increases to the 1974 Pension Plan, and yet the parties to the 2002 NBCWA agreed that no contributions to the 1974 Plan would be required of any existing UMWA

employer.  Both BCOA and UMWA contend that this historical information is not relevant.  *See* Exhibit C at ¶ 17; Exhibit D at ¶ 22; *see also* Exhibits G and H.

        4.      **<u>Miscellaneous</u>**:  Freeman sought numerous documents regarding the membership and structure of BCOA to demonstrate that it is no longer a multi-employer bargaining unit, but rather a single employer, and therefore incapable of negotiating a "successor" agreement binding the industry.  *See, e.g.,* Exhibit A ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 34, 35.  Freeman believes that at least the following documents have not been produced by BCOA:

- current BCOA by-laws and those in effect at the time the 2002 NBCWA were negotiated;
- documents identifying the source of BCOA operating income, including membership fees, for the years 1977 and 1978 and the years 2001 to the present;
- documents identifying members of BCOA's chief executive officer committee at the time of the negotiation of the 1978 NBCWA, at the time of the negotiation of the 2002 NBCWA, and at the time of the negotiation of the 2007 Agreement;
- documents identifying members of BCOA's NBCWA negotiating committees and subcommittees at the time of the negotiation of the 1978 NBCWA, at the time of the negotiation of the 2002 NBCWA, and at the time of the negotiation of the 2007 Agreement.

In its letter of November 21, 2007, BCOA stated for the first time it will produce responsive documents, but has given no timeline for their production.  *See* Exhibit H.

        Finally, Freeman is concerned that documents have been wrongfully withheld on "confidential" or "proprietary" grounds or on improper assertions of privilege.  Freeman respectfully requests that the Court order that documents may not be withheld on "confidential" or "proprietary" grounds in light of the Confidentiality Order in this case and that UMWA

produce privilege logs immediately. BCOA informed Freeman on November 27, 2007 that it will be producing a privilege log, however, Freeman has not yet received it.

## CONCLUSION

For the reasons set forth herein, Freeman respectfully requests that this Court compel the parties to produce Freeman's requested discovery. Freeman further requests that it be awarded attorneys' fees and costs incurred in connection with this motion.

December 5, 2007                                    Respectfully submitted,

                                                    __/s/ Paul M. Smith_____

                                                    Paul M. Smith
                                                    DC Bar No. 358870
                                                    Jessica Ring Amunson
                                                    DC Bar No. 497223
                                                    JENNER & BLOCK LLP
                                                    601 13th Street, NW
                                                    Washington, DC 20005
                                                    Tel:   (202) 639-6000
                                                    Fax:   (202) 661-4993
                                                    psmith@jenner.com
                                                    jamunson@jenner.com

                                                    Susan C. Levy (*pro hac vice*)
                                                    Aaron M. Forester (*pro hac vice*)
                                                    JENNER & BLOCK LLP
                                                    333 North Wabash Avenue
                                                    Chicago, IL 60611
                                                    Tel:   (312) 923-2772
                                                    Fax:   (312) 840-7772
                                                    slevy@jenner.com
                                                    aforester@jenner.com

        Michael W. Robinson
        DC Bar No. 437979
        Gregory J. Ossi
        DC Bar No. 460243
        VENABLE LLP
        8010 Towers Crescent Drive, Suite 300
        Vienna, VA 22182
        Tel:    (703) 760-1600
        Fax:   (703) 812-8949
        mwrobinson@venable.com
        gjossi@venable.com

        ***Counsel for Freeman United***
        ***Coal Mining Company***

-14-

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2007, I served the foregoing via the Court's ECF system, which will provide notification to all counsel of record in these consolidated cases.

Respectfully submitted,

 /s/ Paul M. Smith

Paul M. Smith
DC Bar No. 358870
JENNER & BLOCK LLP
601 13th Street, NW
Washington, DC 20005
Tel:   (202) 639-6000
Fax:   (202) 661-4993
psmith@jenner.com

*Counsel for Freeman United Coal Mining Company*