**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                                  )
Michael H. Holland, Micheal W. Buckner,       )
B.V. Hyler and Steven F. Schaab as Trustees  )
of the United Mine Workers of America 1974   )
Pension Trust,                                                  )
                        Plaintiffs,                                 )
                                                                  )
            v.                                                      )
                                                                  )   Case No. 07-cv-00490 (PLF/AK)
Freeman United Coal Mining Company, et al., )
                                                                  )
                        Defendants.                               )
_____)
                                                                  )
Freeman United Coal Mining Company,          )
                                                                  )
                        Plaintiff,                                  )   Case No. 07-cv-01050 (PLF/AK)
                                                                  )
            v.                                                      )
                                                                  )
United Mine Workers of America, et al.,           )
                                                                  )
                        Defendants.                               )
_____)

**FREEMAN UNITED COAL MINING COMPANY'S OPPOSITION TO BITUMINOUS COAL OPERATORS' ASSOCIATION AND UNITED MINE WORKERS OF AMERICA MOTIONS FOR PROTECTIVE ORDERS**

Freeman United Coal Mining Company ("Freeman") hereby submits its opposition to the motions for protective orders filed by the United Mine Workers of America ("UMWA") and Bituminous Coal Operators' Association ("BCOA") which seek to limit Freeman's right to ask deposition questions of witnesses in this case and to limit the issues on which discovery may be taken – before the first deposition has even been taken. These motions, besides being procedurally improper, violate the Court's rulings in this case that "*there will be no limits on ongoing fact discovery other than those specified in the Courts scheduling order, the Federal*

***Rules of Civil Procedure and the Local Civil Rules.***" Docket 63;[1] *see also* Docket 42. The proposed protective order would also be difficult (if not impossible), time-consuming, and expensive for this Court and the parties to administer. And there is no basis for the concerns suggested in the motions. The only apparent basis for the motions appears to be that the Court ***granted*** Freeman's request that discovery not be delayed pending summary judgment motions and ***granted again*** Freeman's Rule 56(f) motion, ***soundly rejecting*** BCOA's and UMWA's claims, repeated herein, that Freeman failed to make a sufficient showing establishing the need for discovery. Accordingly, BCOA's and UMWA's arguments that these two wins by Freeman should lead the Court to impose unprecedented, preemptive restrictions on Freeman's deposition questions defies logic. For the reasons set forth more fully below, the Court should deny UMWA's and BCOA's motions for protective orders.

## BACKGROUND

Because the opposing parties' motions completely misstate the procedural posture of this case, a short summary is appropriate here.

At the July 19, 2007 initial status conference, Freeman argued that fact discovery should begin immediately. UMWA, BCOA and the 1974 Pension Trust argued that the Court should stay *all* discovery in this case until *after* they had filed their summary judgment briefs (which they claimed would be filed on August 20), and thereafter the Court should allow discovery only if Freeman made a sufficient Rule 56(f) showing. *See* Docket 40, Exhibits 2 and 4. Contrary to what BCOA and the UMWA imply, the Court ruled in Freeman's favor and issued an order the following day stating that discovery could commence immediately and that there would be "no

---

[1] Unless otherwise indicated, all docket references are to filings in Case No. 1:07cv00490.

limits on discovery other than those specified in the Federal Rules of Civil Procedure and the Local Rules." Docket 42.

BCOA also misrepresents the status of discovery and the related summary judgment briefing. On August 6, 2007, Freeman served its first requests for production on all of the opposing parties. On September 7 and 10, before they responded to any of Freeman's discovery requests, the opposing parties filed motions for summary judgment, with voluminous exhibits, totaling more than 400 pages. In accordance with the briefing schedule the opposing parties had earlier proposed, which gave Freeman six weeks to respond to summary judgment,[2] Freeman contacted opposing counsel and requested six weeks to respond to these voluminous motions. Opposing counsel refused and instead demanded that Freeman respond to the motions of three different parties in 11 days. *See* Docket 50. Alternatively, opposing counsel stated that they would agree to Freeman's requested six weeks only if (1) Freeman voluntarily agreed to limit discovery to the issues the opposing parties considered relevant to summary judgment; and (2) Freeman agreed not to file a motion to compel additional discovery. Freeman would not agree to those inappropriate demands, which were inconsistent with the Federal Rules of Civil Procedure. Instead, Freeman filed a motion with this Court seeking an extension of time to file its response. *See* Docket 48, 51.

Then, contrary to BCOA's baseless suggestion that Freeman "unilaterally grant[ed] itself" an extension to file its summary judgment opposition, BCOA Mot. at 4, Freeman contacted Judge Friedman's Chambers on September 14, immediately upon filing its motion to set the summary judgment briefing schedule, to receive clarification as to when it should file its

---

[2] *See* Docket 40, Exhibit 4. The opposing parties proposed that they would file motions for summary judgment on August 20, Freeman would respond by October 1 (six weeks later), and they would reply by October 22nd (three weeks later).

3

responsive summary judgment papers. Freeman inquired of the Judge's Chambers whether Freeman should file its response to the summary judgment motions within 11 days or wait to hear from the Court. The Judge's Chambers advised Freeman that it need not file anything until it heard from the Court. Freeman then filed its opposition to the summary judgment motions within the six weeks set forth in the opposing parties' original proposal. *See* Docket 57. The opposing parties then filed their reply briefs three weeks later, using the exact timeframe they had proposed in their summary judgment briefing schedule. *See* Docket 59, 61, 29.[3] Accordingly *all* parties – including BCOA and UMWA – followed the summary judgment briefing schedule that had been previously proposed.[4]

Along with its opposition to the opposing parties' motions for summary judgment, Freeman filed a Rule 56(f) motion to deny or stay ruling on all motions for summary judgment until discovery can be had. *See* Docket 58 and Exhibit 1 thereto (Levy Decl.). In this motion, Freeman detailed the discovery that was necessary to respond to the summary judgment motion. *See id*. BCOA and UMWA responded that Freeman failed to make a sufficient Rule 56(f) showing – the exact same arguments they repeat in the instant motions for protective order. *Compare* Docket 62 and 30[5] *with* BCOA Mot. at 9-10; UMWA Mot. at 4-5. The Court disagreed with BCOA and UMWA. On November 19, 2007, without even waiting for Freeman's reply brief, the Court granted Freeman's Rule 56(f) motion, stating:

> it is FURTHER ORDERED that Freeman United Coal Mining Companys Motion to Deny or Stay Ruling on All Motions for Summary Judgment Until Discovery Can Be Had [28] is GRANTED. The above named party will have until January 18,

---

[3] Filed in 1:07cv01050.
[4] In fact, BCOA and UMWA did not even meet their own proposed schedule. They advised the Court that they would file their summary judgment motions on August 20. Instead, those motions were not filed until September 7 and 10.
[5] Filed in 1:07cv01050.

>2008 to pursue additional fact discovery. It shall supplement its opposition to the pending motions for summary judgment by the United Mine Workers of America [17], the United Mine Workers of America 1974 Pension Trust [18], and the Bituminous Coal Operators Association [19] on or before February 1, 2008. Any replies to said opposition will be due by February 20, 2008. In the interim, ***there will be no limits on ongoing fact discovery other than those specified in the Courts scheduling order, the Federal Rules of Civil Procedure and the Local Civil Rules.*** Magistrate Judge Kay shall resolve all discovery disputes, including those related to Rule 56(f) discovery.

*See* Docket 62 (emphasis added). Accordingly, although BCOA and UMWA persist in arguing the Freeman has failed to make a Rule 56(f) showing, Judge Friedman apparently disagrees.

With respect to discovery, on September 10 and 11, UMWA and BCOA submitted their written responses and objections to Freeman's document production requests. On October 2 and 8, they produced limited documents. On October 18, Freeman filed its notices of depositions of UMWA President Cecil Roberts, who submitted a 30-paragraph declaration in support of UMWA's motion for summary judgment, and BCOA Secretary-Treasurer Charles Perkins, who submitted a 43-paragraph declaration in support of BCOA's motions for summary judgment. On November 27, after trying unsuccessfully to resolve the opposing parties' objections to document discovery, Freeman filed its motion to compel. *See* Docket 66. In light of that pending motion, Freeman postponed its depositions of Messrs. Roberts and Perkins because it was lacking critical documents.

Prior to filing the instant motions for protective order, BCOA and UMWA ***never once*** contacted Freeman to advise Freeman that they were considering or intended to file these motions for protective order.

5

## ARGUMENT

I. **BCOA And UMWA's Motions Have No Basis In The Law And Will Only Foster Further Needless Discovery Disputes.**

The motions for protective orders filed by BCOA and UMWA – which seek to prevent irrelevant questions before even the first deposition question has been asked – are absolutely improper and have no basis in the law. First, no "irrelevant" questions have yet been asked and irrelevancy is not even a legitimate ground to refuse to answer a deposition question. Second, Freeman does not intend to ask any irrelevant questions – Freeman intends to ask questions that go to the very issues raised in the parties' pleadings and the pending summary judgment motions. Third, the proposed protective orders are vague, conclusory, and unworkable. They would only cause this Court and the parties to incur needless time and expense as everyone debates the potential relevance or irrelevance of every deposition question. Finally, neither BCOA nor UMWA have even come close to meeting the "good cause" standard for a protective order under Rule 26(c).

It is well established that "a party seeking a protective order prohibiting deposition testimony . . . must establish good cause and a specific need for protection, as opposed to simply making conclusory or speculative statements. The moving party has a heavy burden of showing extraordinary circumstances based on specific facts that would justify such an order." *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005). "[G]ood cause exists under Rule 26(c) when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense." *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998); *see also University of Massachusetts v. Roslin Institute*, 437 F. Supp. 2d 57, 61 (D.D.C. 2006) ("A mere showing that discovery may involve inconvenience and expense will not meet this threshold requirement.").

UMWA and BCOA plainly do not meet the standards for the issuance of a protective order for the following reasons.

**First**, courts will not issue a protective order to prevent so-called irrelevant deposition questions. *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7 (D.D.C. 2004), is directly on point. In that case, the plaintiff served a Rule 30(b)(6) deposition notice listing 35 topics on which testimony was sought. The defendant filed a motion for protective order objecting to some of these topics and claiming that the Court should issue a protective order to prevent counsel from asking irrelevant questions. Judge Facciola denied the motion, holding that there was no basis for a protective order because, among other reasons, a witness must answer even irrelevant questions in a non-30(b)(6) deposition. Judge Facciola explained:

> The premise of defendant's motion is that it is an appropriate exercise of the judicial supervision of discovery to issue a protective order to prevent counsel from asking a question that is irrelevant. . . . The problem with that premise is that . . . ***the federal courts do not permit a witness to refuse to answer a question that is irrelevant. Instead, the witness must answer the question, subject to the objection. . . . [I]nsisting that a federal court act to prevent the possibility that irrelevant questions will be asked at a deposition is completely unprecedented and would require the court to micro-manage the discovery process. That is the exact opposite of what a court is supposed to be doing in enforcing Rule 1.*** In any event, the worst that can happen when a party asks a 30(b)(6) witness questions about an irrelevant topic is that the process will be unnecessarily time-consuming. While there are more pleasant ways to pass the time, ***that kind of "burden" has to be endured in any deposition because, as I have explained, a witness must answer even irrelevant questions in a non-30(b)(6) deposition. To have one rule for the ordinary deposition and a completely different one for 30(b)(6) depositions makes no sense.***

*Id*. at 18 (emphasis added). Accordingly, under *Banks*, asking this Court to issue a protective order for the sole purpose of "rul[ing] in advance as to what topics are relevant" in a deposition is completely inappropriate. *Id*. The motions should be denied for this reason alone.

7

**Second,** these motions should also be denied because Freeman does not intend to ask any irrelevant deposition questions. *See Tri-State Hosp. Supply Corp.*, *v. United States*, 226 F.R.D. 118, 126 (D.D.C. 2005) ("In the ordinary course, there is no need for [a protective order]. Counsel have every motivation to act efficiently; their clients, after all, are paying for their time, and counsel have many professional obligations."); *Kimberlin v. Quinlan*, 145 F.R.D. 1, 2 (D.D.C. 1992) (holding that "at this stage in the proceedings, where the defendants consent to the deposition and it has not yet even been completed, a discussion of the appropriateness of a protective order is premature").

Rule 26 allows discovery of "*any* nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). In this Court, "[t]he term relevance at the discovery stage is a broadly construed term and is given very liberal treatment." *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 6 (D.D.C. 2007). "The treatment of the term is so liberal that relevant information sought need not even be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. (citing Fed. R. Civ. P. 26(b)(1)). As was shown in Freeman's motion to deny or stay ruling on the motions for summary judgment (Docket 58), which was *granted* by this Court (Docket 63), and again in Freeman's motion to compel (Docket 66), which will soon be heard by this Court, the discovery Freeman seeks is unquestionably relevant to its claims and defenses in these consolidated cases. Freeman does not intend to ask questions at the depositions of Messrs. Roberts or Perkins that contravene Rule 26.

The opposing parties claim that discovery should be narrowed because the underlying issue in this case has already been addressed by this Circuit in *United Mine Workers of America 1974 Pension Trust v. Pittston Co.*, 984 F.2d 469 (D.C. Cir. 1993). UMWA Mot. at 2-3; BCOA

Mot. at 2-3. Yet this was the same argument they made in opposing Freeman's Rule 56(f) motion, which the Court soundly rejected when it granted Freeman's motion. *See* Docket 63. As Freeman explained in its motion, this action raises two new issues that were not addressed in *Pittston*: (1) whether an agreement between the UMWA and the BCOA can still be a "successor" agreement under the terms of the evergreen clause when a single employer – Consolidation Coal Company and its affiliates ("Consol") – comprises the BCOA and BCOA is no longer a multi-employer bargaining unit; and (2) whether a single-employer agreement like the 2007 Agreement can somehow be transformed after the fact into a "successor" national agreement, when other unwilling coal companies are coerced, frequently through strikes or threats of strikes to sign "me too" agreements. *See* Docket 58, Exhibit 1 at ¶ 8.

BCOA and UMWA claim that they want to limit discovery to the increases in contribution rate in the 2007 Agreement, including the Perkins/Roberts declarations. Yet all of the discovery Freeman seeks is relevant to whether Freeman is bound by the increase in contribution rate in the 2007 Agreement and/or whether, if it is found to be so bound, the BCOA breached duties owed to Freeman (as is asserted in Count II of Freeman's Complaint). For example, the opposing parties' summary judgment motions directly raise the following disputed issues:

- Is the 2007 Agreement a successor agreement within the meaning of the evergreen clause even though it is just an agreement with a single employer, Consol? This issue includes whether Consol is a single employer because an agreement negotiated by a single employer cannot be a successor agreement (*see* Docket 57 at 3, 10-14). *See* Docket 17[6] at 10-11 and Roberts Decl. attached thereto at ¶ 14; *see also* Exhibit A to Docket 17 (UMWA Press Release (Dec. 21, 2006) ("The agreement will, at the outset, be between the UMWA and Consol …, which is the only company currently in the BCOA."); Docket 19[7] at 9-15.

---

[6] UMWA Motion for Summary Judgment filed in 1:07cv01050.
[7] BCOA Motion for Summary Judgment filed in 1:07cv01050.

- What is the meaning of the evergreen clause and did the drafters in 1978 intend single-employer agreements to be successor agreements? *See* Roberts Decl. ¶ 11; Docket 19 at 9-15; Perkins Decl. at ¶¶ 20-27; *see also* Docket 46, Attachment 11 (Kempken Decl. ¶ 13 (appended as Ex. C to Clark Decl.) ("By requiring employers to continue to contribute according to the terms of successor NBCWAs, however, we did not create, and did not intend to create, an obligation to contribute to the Funds forever. The obligation to contribute continues only so long as successor NBCWAs are negotiated by BCOA.")).

- What is the meaning of "BCOA" in the relevant underlying agreements and did the parties intend it to cover a single employer? *See* Docket 19 at 3, 11-15; Perkins Decl. ¶¶ 3-9.

- Can the 2007 Agreement become a successor agreement and binding on Freeman after the fact by the UMWA's entering into "me too" agreements with other coal companies? *See* Docket 17 at 8-11; Roberts Decl. at ¶¶ 22-25; Perkins Decl. at ¶ 14.

- What are the relevant "me too" agreements that the opposing parties now claim turned the single-company 2007 Agreement into a successor agreement? *See* Docket 17 at 8-11; Roberts Decl. at ¶ 6; Perkins Decl. at ¶¶ 12, 14.

- Some other coal companies signed "me too" agreements only after they were coerced to do so by strikes and threats of strikes. *See* Docket 57 at 14-15. Is this sufficient to turn a single-employer agreement into a national agreement? *See* Docket 17 at 8-11; Roberts Decl. at ¶¶ 20-24; Perkins Decl. at ¶ 14.

- What is the meaning of the guarantee clause and does it bind Freeman? *See* Docket 59 at 4.

- Did BCOA breach its duties to Freeman and what was BCOA's intent in negotiating and entering into the 2007 Agreement? *See* Docket 19 at 12-13; Perkins Decl. at ¶ 42; *see also* Docket 57 at 14 and Exhibit D appended thereto.

By definition, the foregoing disputed issues raised by the UMWA, BCOA and the 1974 Pension Trust in their summary judgment motions are certainly within the scope of Rule 26(c).[8]

**Third,** the requested protective orders are vague and conclusory. Courts will not issue protective orders that will cause the Court to micro-manage discovery and cause expensive and

---

[8] BCOA claims that "Freeman does not dispute any of the material facts that underlie BCOA's motion." BCOA Mot. at 10. If that were true, the Court would have denied Freeman's Rule 56(f) motion and granted BCOA's motion for summary judgment. The opposite occurred. Many of the disputed facts are identified in the bullet points above.

time-consuming review of discovery material subject to the protective order. *See Tri-State Hosp. Supply Corp.*, 226 F.R.D. at 126 (holding that "there is no need" for a "time-consuming intrusion by the court" into reviewing deposition notices on a "topic-by-topic basis" unless is an "extreme situation[] where the right to take such a deposition is being abused"); *Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653, 661-62 (D.D.C. 1986) (finding that an "expensive and time-consuming" review of disputed discovery material subject to a protective order "would be wasteful of the Court's and the parties' resources, in contravention of Rules 1 and 26(c)").

UMWA's and BCOA's requested protective orders would be completely impossible for this Court to administer and would only cause substantially more – not fewer – discovery disputes.  Tellingly, BCOA and UMWA never once articulate the issues they do *not* want Freeman to address at the depositions, presumably out of the very legitimate fear that Freeman would then explain to the Court those issues' relevance.  Instead, BCOA wants a protective order limiting questions to "the contribution rate for the UMWA 1974 Pension Trust contained in the National Bituminous Coal Wage Agreement of 2007 and any other matters addressed by Mr. Perkins in his declaration filed in this case."  BCOA Proposed Order at 1-2.  UMWA wants a protective order limiting questions to "matters concerning the increase to the 1974 contribution rates contained in the 2007 NBCWA, the specific factual circumstances involving the collective bargaining negotiations that led to the rate increase and the coal industry's reaction to the 2007 NBCWA."  UMWA Mot. at 8.[9]  But, as shown in the bullet points above, the issue of whether the 2007 Agreement's increased contribution rate is binding on Freeman raises numerous issues relating to whether that agreement, negotiated by a single employer, is truly a successor agreement within the meaning of the evergreen clause.  All of those issues are fairly within the

---

[9] UMWA did not provide the Court with a proposed protective order.  *Cf*. LcvR 7(c).

11

scope of Rule 26 discovery.  By granting Freeman's Rule 56(f) motion, this Court agreed that Freeman has fairly demonstrated the need for additional discovery.  If the Court issues these vague and conclusory protective orders, the parties would likely engage in ceaseless discovery disputes over the so-called relevancy of each deposition question, many of which may necessitate Court involvement.  That is exactly the opposite of what is called for under Rule 1.

**Finally**, BCOA and UMWA have woefully failed to establish any "good cause" for their proposed protective order.  To obtain a protective order, UMWA and BCOA "must articulate specific facts showing *clearly defined and serious injury* resulting from the discovery sought, and cannot rely on merely conclusory statements." *Federal Election Comm'n v. GOPAC, Inc.*, 897 F. Supp. 615, 617 (D.D.C. 1995) (Friedman, J.) (emphasis in original) (internal quotations and alterations omitted); *see also Roslin Institute*, 437 F. Supp. 2d at 60  (holding that because a motion for a protective order "limits the liberal discovery rules, 'good cause' is only established when the movant demonstrates that disclosure would cause a clearly defined and serious injury"); *Tequila Centinela,* 242 F.R.D. at 4 ("To show good cause, the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements."); *Flanagan v. Wyndham Intern. Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) (party seeking protective order may not "simply allege a broad need for a protective order so as to avoid general harm, but must demonstrate specific facts which would justify such an order").

Neither BCOA nor UMWA has asserted *any* specific facts regarding the so-called "serious harm" that would befall them if Freeman asked questions at depositions that they deem irrelevant – and indeed there would be no harm.  Instead, BCOA alleges that Freeman may turn the deposition of Mr. Perkins into a "contentious fishing expedition into an irrelevant sea of issues," BCOA Mot. at 13, and UMWA makes the conclusory statement that it will be "harmed

because it's [sic] president will be subject to a deposition, the scope of which will be much broader than the scope of the coal companies' claim against the Union," UMWA Mot. at 7. However, as Judge Facciola explained in *Banks*, in denying a request for a protective order, this so-called "harm" is no different from the burden any deposition witness has to endure. *See* 222 F.R.D. at 18. And certainly Mr. Roberts and Mr. Perkins knew they would be deposed when they submitted lengthy declarations in support of the opposing parties' motions for summary judgment. UMWA's and BCOA's speculation concerning Freeman's so-called irrelevant deposition questions is patently insufficient to show "good cause" for a protective order.[10]

In sum, BCOA's and UMWA's motions for protective orders are improper for the reasons set forth above. If UMWA and BCOA truly object on legitimate grounds (such as bad faith, annoyance or oppression – irrelevance is not a legitimate ground) to Freeman's questioning when these depositions take place, then Rule 30(d)(4) is the proper procedural vehicle to afford them relief. This baseless motion is not the appropriate vehicle.

## II. UMWA and BCOA Violated Rule 26(c), Local Rule 7(m), And This Court's Scheduling Order In Filing These Motions.

UMWA and BCOA filed their motions for a protective order with utter disregard for the requirements of Federal Rule of Civil Procedure 26(c), Local Rule 7(m), and this Court's scheduling order because they never once consulted with or advised Freeman that they were considering or intended to file a motion for protective order governing the scope of deposition questions. Freeman learned of these motions for the first time when the Court did – when UMWA and BCOA filed the motions. Neither UMWA nor BCOA provided any justification

---

[10] Defendants rely upon *Cobell v. Norton*, 226 F.R.D. 67, 77 (D.D.C. 2005), for the unexceptionable proposition that discovery rights are only co-extensive with the scope of the claims and defenses in the case. Freeman does not disagree and only seeks the discovery it is entitled to under Rule 26.

whatsoever for their utter disregard of this Court's procedural requirements. UMWA's motion ignores those requirements completely. BCOA's motion provides only its statement that "the scope of discovery in this case has been disputed by the parties since last July and, to date, the parties have not been able to resolve it," BCOA Mot. at 2, but this does not satisfy the plain language requirements of Federal Rule of Civil Procedure 26(c), Local Rule 7(m), or this Court's scheduling order.

Rule 26(c) requires that a motion for protective order be "accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c). These motions were not accompanied by such a certification. Local Rule 7(m) further requires that "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement." LcvR 7(m). Consistent with this Local Rule, this Court's scheduling order explicitly directed that "[c]ounsel are required to confer in good faith in an effort to resolve all discovery disputes before bringing the dispute to the Court. *Counsel shall not file a discovery motion without a prior conference with opposing counsel.*" Docket 42 ¶ 5 (emphasis added). A Rule 7(m) discussion never took place.

In short, UMWA and BCOA violated the Court's rules governing protective orders and discovery disputes. This is still another reason for this Court to deny the motions. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.*, 235 F.R.D. 521, 529-30 (D.D.C. 2006) (holding that the defendants' "motion to compel must be denied because they failed to confer with opposing counsel in an attempt to resolve the dispute before filing a non-

14

dispositive motion" as is "required by both the Federal Rules of Civil Procedure as well as by the Local Rules of this Court"); *Campbell v. U.S. Dept. of Justice*, 231 F. Supp. 2d 1, 13 (D.D.C. 2002) (denying defendant's motion for a protective order after finding that there is "no indication from the motions, however, that the defendant made a good faith effort to resolve the instant discovery dispute before resorting to the court for its assistance in resolving the issue"); *Roslin Institute*, 437 F. Supp. 2d 57, 60 (D.D.C. 2006) ("A motion for a protective order usually follows . . . both parties' good faith efforts to resolve the matter."); *cf. In re ULLICO Inc. Litigation*, 237 F.R.D. 314, 316-17 (D.D.C. 2006) (finding that "counsel did in fact satisfy the meet-and-confer requirement set forth in Rule 7(m)" where "counsel not only discussed the Protective Order issue with [Plaintiff's] counsel on the telephone and in multiple letters, but also attempted to resolve the disagreement and expressly stated their intent to file this Motion").

## CONCLUSION

For the reasons set forth herein, Freeman respectfully requests that this Court deny UMWA's and BCOA's motions for protective orders, and grant Freeman any other relief the Court deems appropriate, including awarding Freeman its costs and attorneys' fees as provided for in Rule 26(c).

December 11, 2007

Respectfully submitted,

  /s/ Paul M. Smith
Paul M. Smith
DC Bar No. 358870
Jessica Ring Amunson
DC Bar No. 497223
JENNER & BLOCK LLP
601 13th Street, NW
Washington, DC 20005
Tel:   (202) 639-6000
Fax:   (202) 661-4993
psmith@jenner.com
jamunson@jenner.com

Susan C. Levy (*pro hac vice*)
Aaron M. Forester (*pro hac vice*)
JENNER & BLOCK LLP
333 North Wabash Avenue
Chicago, IL 60611
Tel:    (312) 923-2772
Fax:   (312) 840-7772
slevy@jenner.com
aforester@jenner.com

Gregory J. Ossi
DC Bar No. 460243
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Tel:    (703) 760-1600
Fax:   (703) 812-8949
gjossi@venable.com

***Counsel for Freeman United
Coal Mining Company***

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 11th day of December, 2007, I served the foregoing by this court's ECF system, which caused copies of this motion to be sent to counsel of record in this consolidated litigation.

                /s/Paul M. Smith
                Paul M. Smith
                DC Bar No. 358870
                JENNER & BLOCK LLP
                601 13th Street, NW
                Washington, DC 20005
                Tel: (202) 639-6000
                Fax: (202) 661-4993
                psmith@jenner.com