IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Holland, et al., <br><br> Plaintiff, <br> v. <br><br> Freeman United Coal Mining Company, et al., <br><br> Defendants. | Case No. 07-cv-490 (PLF/AK) |
| Freeman United Coal Mining Company, <br><br> Plaintiff, <br> v. <br><br> United Mine Workers of America, et al., <br><br> Defendants. | Case No. 07-cv-1050 (PLF/AK) |

## BCOA'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Under Local Rule 7, Defendant Bituminous Coal Operators' Association, Inc. ("BCOA") submits this reply memorandum in support of its motion for a protective order to prescribe the proper scope of the deposition of Charles S. Perkins, BCOA's Secretary-Treasurer.

In its opposition to BCOA's motion, Plaintiff Freeman United Coal Mining Company ("Freeman") urges the following untenable propositions:

1. *The Federal Rules of Civil Procedure leave the federal courts powerless to protect parties against irrelevant discovery.*

    Freeman takes this position even though Fed. R. Civ. P. 26(b)(1), by its very terms, limits discovery to relevant matter, and even though Fed. R. Civ. P. 26(c)

1-WA/2872281.1

grants the federal courts broad power to issue protective orders, including orders limiting the scope of discovery.

2. *The District Court already has ruled on all discovery objections made by BCOA and the United Mine Workers of America ("UMWA")*.

   Freeman takes this position even though Judge Friedman expressly referred all discovery objections to the Magistrate Judge and directed that discovery proceed in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules, both of which authorize objections to overbroad and burdensome discovery requests.

3. *The parties now should relitigate the meaning of the evergreen clause*.

   Freeman takes this position even though it is undisputed that this Court and the D.C. Circuit already have ruled on the meaning of the evergreen clause, and that decision is binding in this action.

4. *The motions for a protective order filed by BCOA and the UMWA are procedurally flawed*.

   Freeman takes this position even though Freeman throughout this litigation has refused all requests to limit its overbroad discovery, even though by the time the protective order motions were filed Freeman already had filed motions to compel against BCOA and the UMWA demonstrating Freeman's intention to insist on its discovery demands, and even though before filing these motions to compel Freeman did not meet and confer with BCOA or the UMWA and did not certify that it had done so in accordance with the Local Rules.

In its motion for a protective order, BCOA simply has recognized the parties' fundamental disagreement over the scope of discovery and has sought the kind of relief

contemplated by Rule 26(c). BCOA has done so in an effort to facilitate the deposition of BCOA's Secretary-Treasurer and to avoid interruptions in the proceedings. Freeman's response only confirms the need for the requested relief. It makes clear that Freeman intends to inquire on a vast array of subjects going back 30 years or more, and to relitigate matters already decided by this Court and the D.C. Circuit at a time when Freeman, as a BCOA member, was urging the very result the courts reached.

      **A.     Freeman's Opposition Rests On The False Premise That The Court Already Has Authorized Boundless Discovery.**

Freeman's opposition relies heavily on the Court's two prior scheduling orders, which Freeman claims have resolved in its favor the parties' disagreement over the proper scope of discovery. This position, however, is undercut by the Court's own orders, as well as the warning the Court gave Freeman at the July 19 status conference that, if Freeman pressed for overbroad discovery untethered to its claims, it would face the very objections BCOA now has asserted.

If the Court already had overruled all discovery objections and given Freeman the right to take limitless discovery, there would have been no need for the Court to refer "all discovery disputes, including those related to Rule 56(f) discovery," to the Magistrate Judge for resolution. Indeed, at the time the Court entered its second scheduling order on November 19, BCOA's objections to the breadth of Freeman's proposed discovery were not even before the Court. By allowing discovery to proceed in its two scheduling orders, the Court decided not what discovery should occur but only that discovery should proceed before the Court addresses the pending motions for summary judgment filed by BCOA, the UMWA, and the UMWA 1974 Pension Trust ("1974 Pension Trust"). The Court decided, in other words, a question of sequence, not scope. The Court expressly left the contours of discovery to the Magistrate Judge to resolve if the parties could not work out proper limits among themselves.

This is consistent with what the Court said at the July 19 status conference. During that hearing, when apprised of the anticipated scope of Freeman's discovery, the Court cautioned Freeman

> that if the actual discovery requests are as broad as this paragraph [describing them in the parties' Rule 16 report] suggest that they are, there are going to be a lot of objections that are going to be filed by the other side, overbreadth going back too many years, and things like that, that a Magistrate Judge is going to have to decide. So you don't want to create more problems for yourself than you need to.

*See* Exhibit 1 to BCOA's Motion (Transcript of July 19, 2007 Status Conference), at 13-14. The Court's prediction has come true, and the Court would not have needed to issue this warning if it already had granted Freeman the unfettered right to the boundless discovery Freeman seeks.

As BCOA has maintained since this case began, Freeman's demand for seemingly limitless discovery amounts to nothing more than an effort to increase the burden and expense of this litigation in the hope that, by doing so, Freeman will obtain greater leverage. Freeman never says what it hopes to find through its fishing expedition. Freeman contends that the National Bituminous Coal Wage Agreement ("NBCWA") of 2007 – which imposes the current contribution obligation to the 1974 Pension Trust – cannot be a "successor" to earlier NBCWAs because BCOA allegedly is no longer a multiemployer bargaining association. But the 11 current members of BCOA and their corporate affiliations are known and not in dispute. More important, Freeman has never provided any legal authority for the proposition that BCOA's ability to negotiate a successor NBCWA depends on the number of members in BCOA. *See Flynn v. Dick Corporation*, 384 F. Supp. 2d 189 (D.D.C. 2005), *rev'd on other grounds*, 481 F.3d 824, 827 n.2 (D.C. Cir. March 20, 2007) (identifying factors for determining whether collective bargaining agreement is a "successor" agreement imposing contribution obligation).

Despite the lack of any such legal basis, Freeman seeks discovery on a slew of issues that wander far from whether it has an obligation *today* to contribute to the 1974 Pension Trust at the rate specified in the 2007 NBCWA. Opposition at 9-10. Among other things, Freeman – despite representing to the Court on July 19 that it had no intention of relitigating the *Pittston* decision – now asserts that it wants discovery not only on the meaning of the evergreen clause that previously was resolved in *Pittston*, but also discovery on the meaning of the guarantee clause, which was the subject of extensive prior litigation in this and other federal courts.

Moreover, Freeman has failed to acknowledge that, in August 2007, it sold its coal operations to another company and thus ceased having an obligation to make current contributions to the 1974 Pension Trust. Instead, Freeman now has an obligation to pay withdrawal liability to the Trust. Given the current unfunded vested benefits of the Trust, the amount of that withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980 will be substantially greater than the amount of contributions Freeman so far has refused to pay into the Trust during the period from January 1, 2007 until the August 2007 sale. Freeman's effort to prolong and expand discovery in this case to better leverage a potential compromise of that withdrawal liability should not be tolerated.

      **B.**      **To Ensure That The Proposed Deposition Of BCOA's Secretary-Treasurer Is Consistent With The Limits Set By BCOA's Objections To Discovery, BCOA Properly Sought A Protective Order Under Rule 26(c).**

To avoid the unnecessary, oppressive, and burdensome discovery propounded by Freeman, and to focus this case on the core issue raised in Count I of the complaint – Freeman's obligation to contribute to the 1974 Pension Trust at the rate specified in the 2007 NBCWA – BCOA already has produced in discovery information related to its negotiation of that rate with the UMWA. BCOA otherwise has objected to discovery that is designed to relitigate the meaning of the evergreen clause or to pry into matters that have no bearing on Freeman's

5

contractual contribution obligation. The UMWA has noted similar objections to Freeman's discovery requests.

BCOA's motion for a protective order and the similar motion filed by the UMWA are designed to determine the proper scope of the depositions of BCOA's Secretary-Treasurer and the UMWA's President. They are filed well in advance of the depositions so that the depositions can proceed in an orderly fashion within the limits set by the Court. Otherwise, as Freeman's opposition confirms, Freeman would seek to insist at the depositions that the witnesses answer any questions, no matter how inappropriate or unrelated to the subject matter of this lawsuit.

There is nothing improper or extraordinary about the relief that BCOA and the UMWA seek. As the D.C. Circuit has recognized, the 2000 amendments to Rule 26(b)(1) governing the scope and limits of discovery were added "to emphasize the need for active judicial use" of the discovery rules "to control excessive discovery." *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004) (citations omitted). One tool available to the Court to fulfill this goal is the entry of protective orders under Rule 26(c), which "vests the trial judge with broad discretion to tailor discovery narrowly." *Id.* (citations omitted). *See also Chagnon v. Bell*, 642 F.2d 1248, 1266 (D.C. Cir. 1980), *cert. denied*, 453 U.S. 911 (1981) (holding that discovery rules vest broad discretion in the district courts with respect to control of the discovery process to promote the just and efficient resolution of the case).

Under these principles, courts routinely grant protective orders upon a proper showing prior to the start of a deposition. *See, e.g., Doe v. District of Columbia*, 230 F.R.D. 47, 50 (D.D.C. 2005) (rejecting argument that party should have waited until the start of deposition to raise objections, and noting that "courts have broad discretion in deciding *when* to issue protective orders and to what degree they should provide protection") (emphasis added).

Moreover, courts routinely limit the scope of depositions when "good cause" is found under Rule 26(c). *See, e.g.*, *In re Ullico Inc. Litig.*, Case No. 03-1556 (RJL/AK), 2006 WL 2398747, at *3 (D.D.C. July 24, 2006) (granting protective order prior to deposition on grounds that proposed subject matters are not relevant to the claims or defenses raised in the case).

Indeed, the very case that Freeman cites as "directly on point" for its contention that BCOA's request for a protective order is "inappropriate" supports BCOA's request here. *See* Opposition at 7. Freeman reports that this Court in *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7 (D.D.C. 2004), denied a motion for a protective order that sought to prevent counsel from asking irrelevant questions during a deposition. 222 F.R.D. at 18. Freeman, however, apparently failed to read the next two paragraphs of the *Banks* decision. In it, Magistrate Judge Facciola ruled that many of the proposed topics for the deposition in question were "absurdly overbroad." *Id.* at 19. Although he refused to engage in "flyspecking" the proposed subject matters to be addressed at the deposition, he instead "wipe[d] the slate clean" by requiring the parties to attempt in good faith to reach agreement over the proper subject matter of the deposition. *Id.* The Court further required the parties to submit a revised list of topics before the deposition took place. *Id.*

BCOA's motion for a protective order seeks just this kind of relief. The parties should know the bounds of the deposition and the proper areas of inquiry without burdening the Court or the proceeding itself with constant interruption and disagreement. Contrary to Freeman's assertion, if the Court provides this guidance, there is no reason whatever to believe that the parties will be unable to follow it.

      **C.**      **Freeman's Claim That BCOA's Motion Is Procedurally Flawed Is Meritless, Given The Parties' Longstanding Discovery Disagreement, The Pendency Of Freeman's Own Motion To Compel Before BCOA's Motion Was Filed, And Freeman's Filing Of Its Own Motion Without Complying With The Very Procedural Requirements That It Now Seeks To Invoke Against BCOA.**

Freeman also opposes BCOA's motion on the ground that BCOA did not "meet and confer" with Freeman before filing as required by Rule 26(c), Local Rule 7(m), and this Court's July 20 scheduling order. In light of the parties' long-standing dispute over the scope of discovery, it would have been an exercise in futility to meet and confer with Freeman over the relief sought in BCOA's motion, especially where Freeman already had filed a motion to compel that clearly put BCOA on notice that Freeman brooked no compromise regarding its quest for boundless discovery. Freeman's argument is especially hollow, given Freeman's own failure to comply with the very obligation it seeks to invoke against BCOA.

In its motion, BCOA certified that "the scope of discovery in this case has been disputed by the parties since last July and, to date, the parties have not been able to resolve it." Indeed, this disagreement is reflected in the divergent case management proposals submitted to the Court prior to the July 19 status conference; in Freeman's Rule 56(f) response to the summary judgment motions filed by BCOA, the UMWA, and the 1974 Pension Trust; in the objections asserted by BCOA and the UMWA to Freeman's first set of document requests; and in Freeman's own motion to compel filed on November 27. The "meet and confer" obligation imposed under the Federal Rules "embod[y] a policy of encouraging voluntary resolution of pre-trial disputes, in the interest of judicial and client economy and efficient processing of cases." *Matsushita Elec. Corp. v. 212 Copiers Corp.*, Case No. 93-civ-3243, 1996 WL 87245, at * 1 (S.D.N.Y. 1996). Nonetheless, courts have excused the "meet and confer" obligation where efforts at informal compromise would have been futile. *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 235-36 (W.D.N.Y. 1998); *see also Bristol-Myers Squibb Co. v. Rhone-*

*Poulenc Rorer, Inc.*, Case No. 95-civ-8833, 1998 WL 2829, at *3 (S.D.N.Y. 1998) (excusing failure to "meet and confer" on grounds effort would be futile); *Matsushita Elec. Corp.*, 1996 WL 87245, at *1 (excusing failure to "meet and confer" where compromise unlikely to be achieved).

The absurdity of imposing a "meet and confer" obligation here is amplified by the fact that Freeman itself already had filed a motion to compel several days before BCOA sought a protective order. In that motion, Freeman, in response to BCOA's objections to the scope of discovery, declared its position and announced what it believed it was entitled to in discovery under the Court's prior scheduling orders. Now, in opposing BCOA's motion for a protective order, Freeman nowhere suggests that it would have been willing to scale back or compromise its demand for unfettered discovery during the course of the anticipated depositions. Moreover, BCOA had no reason to expect that Freeman would be willing to give up its position. As such, it would have been a waste of resources to go through the motions of conferring with Freeman over the need for a protective order when Freeman already had staked out its position in Court.

Finally, Freeman's effort to invoke this procedural requirement is especially hollow where Freeman did not itself comply with the very "meet and confer" obligations it now seeks to invoke against BCOA and the UMWA when it filed its November 27 motion to compel. Specifically, Freeman first took issue with BCOA's objections in a November 9, 2007 letter. BCOA responded to this letter on November 21, 2007, telling Freeman that, notwithstanding its objections, it would produce to Freeman certain additional material that Freeman had requested. Apparently, BCOA's response was not good enough for Freeman, for on November 27, Freeman filed its present motion to compel. Between BCOA's November 21 letter and Freeman's November 27 motion, Freeman did not once discuss with BCOA "either in person or by

telephone" any anticipated motion to compel, or whether there still was room to narrow any areas of disagreement before filing the motion. In addition, during this period, Freeman did not ask BCOA whether BCOA would oppose the motion to compel.

As this Court has recognized, Local Rule 7(m) "necessitates something more than an exchange of letters or a chain of email correspondence; if the moving party does not discuss the anticipated motion with opposing counsel 'in person or by telephone,' then she has not followed the rule and the court may dismiss her motion." *Equal Rights Center v. Post Properties, Inc.*, Civil Action No. 06-1991 (RJL/AK), __ F.R.D. __, 2007 WL 3033866, at *2 (D.D.C. Oct. 18, 2007). Given Freeman's own failure to comply with this requirement, it is hypocritical for Freeman to suggest that the Court dismiss BCOA's motion for a protective order filed several days after Freeman's own non-compliant filing.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in BCOA's motion for a protective order, BCOA requests that the Court grant its motion.

Respectfully submitted,

/s/
Peter Buscemi
D.C. Bar No. 269092
Stanley F. Lechner
D.C Bar No. 370986
Charles P. Groppe
D.C. Bar No. 464035

DATED: December 14, 2007

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel:   (202) 739-3000
Fax:   (202) 739-3001
E-mail: pbuscemi@morganlewis.com
        slechner@morganlewis.com
        cgroppe@morganlewis.com

*Counsel for Defendant*
Bituminous Coal Operators' Association, Inc.