UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL H. HOLLAND, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>FREEMAN UNITED COAL MINING COMPANY, et al.,<br><br>    Defendants. | Civil Action No. 07-490 (PLF)(AK) |
| FREEMAN UNITED COAL MINING COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED MINE WORKERS OF AMERICA, et al.,<br><br>    Defendants. | Civil Action No. 07-1050 (PLF)(AK)[1] |

**MEMORANDUM ORDER**[2]

Pending before the Court is Freeman United Coal Mining Company's Motion to Compel Discovery [42][3], United Mine Workers of America's Opposition [44], Bituminous Coal

---

[1] Because the present Motion to Compel relates to a discovery dispute between Freeman United Coal Mining Company, the United Mine Workers of America, and the Bituminous Coal Operators' Association, all docket numbers in this Memorandum Order refer to Civil Action No. 07-1050.

[2] United States District Judge Paul L. Friedman referred these consolidated cases to the undersigned Magistrate Judge for management of discovery, pursuant to Local Civil Rule 72.2(a). (*See* Order [15] dated 7/23/07.)

[3] Freeman initially filed its Motion to Compel and exhibits thereto on November 27, 2007 at docket entry [38]. It subsequently filed an Amended Memorandum in Support of its Motion to Compel on December 5, 2007 at docket entry [42].

Operators' Association's Opposition [45], and Freeman United Coal Mining Company's Reply [48].  After reviewing the submissions of the parties and the arguments presented at the December 18, 2007 hearing, the Court issues the following Memorandum Order.

I.      **Background**

This litigation involves two consolidated cases.  In *Freeman United Coal Mining Company v. United Mine Workers of America, et al.*, which was filed in the United States District Court for the Central District of Illinois on February 9, 2007, Freeman United Coal Mining Company ("Freeman") sought a declaratory judgment that it was not obligated to contribute to the 1974 Pension Plan and Trust ("Trust") at the rates set in the 2007 National Bituminous Coal Wage Agreement ("2007 Agreement" or "2007 NBCWA").  (Freeman's Mot. [68] at 2.) Freeman plead, in the alternative, that if the court found it was obligated to contribute to the Trust at the rates set forth in the 2007 Agreement then it is entitled to damages against the Bituminous Coal Operators' Association ("BCOA") because BCOA breached its duties as Freeman's agent in negotiating the 2007 Agreement.  (*Id*.)  In *Holland, et al. v. Freeman United Coal Mining Company, et al.*, which was filed in this Court on March 14, 2007, trustees of the Trust brought suit against nine coal companies, including Freeman, under the Employee Retirement Income Security Act and the Labor Management Relations Act to collect contributions that each defendant allegedly owes to the Trust at the rates set forth in the 2007 Agreement.  (*Id*.)

A brief factual background is necessary to put these claims and Freeman's discovery requests in context.  The 1974 Pension Plan and Trust is a benefit plan that was created to

provide benefits to coal miners who retired after December 31, 1975. (UMWA's Opp'n [44] at 3.) The Trust was to be funded by coal companies who were parties to National Bituminous Coal Wage Agreements, which are negotiated by BCOA - a multi-employer bargaining unit - and the United Mine Workers of America ("UMWA") and which contain the rates at which companies must contribute to the trust and the level of benefits that retirees would receive. (*Id*.) The 1978 NCBWA contained an "evergreen clause" provision, which provided that a coal mining company that had employees eligible for benefits under the Trust or any company that was obligated to contribute to the Trust was obligated to make the contributions required under the 1978 NCBWA and any successor agreements thereto. (*Id*. at 4.) Freeman joined BCOA in 1966 and was a member at the time the 1978 NBCWA was executed. (*Id*. at 2-3.)

The most recent NCBWA was negotiated between BCOA and UMWA in 2006 and went into effect on January 1, 2007. (*Id*. at 5.) At the time the 2007 agreement was negotiated, only eleven coal companies were members of BCOA and all eleven of those companies were subsidiaries of a single company, Consolidated Coal Company ("Consol"). Freeman left BCOA in 1997 and therefore was not a member at the time the 2007 Agreement was negotiated. (*Id*. at 2-3.) The 2007 NCBWA sets the contribution rate to the 1974 Trust at $2.00 per hour worked. (*Id*.) Freeman refuses to contribute to the Trust at this rate, arguing that it is not bound by the 2007 NBCWA because an agreement cannot be a "successor agreement" within the meaning of the evergreen clause if BCOA is only negotiating on behalf of a single coal company. (Freeman's Mot. at 2.)

Discovery began in this case on July 20, 2007. (Scheduling Order [13] dated 7/20/07.) On August 6, 2007, Freeman issued its First Requests for Production to BCOA and UMWA.

(Freeman's Mot. at 4.) UMWA and BCOA then filed Motions for Summary Judgment on September 7, 2007 and September 10, 2007, respectively. (*See* [17] and [19].) On October 22, 2007, Freeman moved the trial court pursuant to Rule 59(f) to deny or stay ruling on the pending motions for summary judgment until Freeman had an opportunity to complete additional fact discovery. (Mot. to Deny or Stay [28].) Judge Friedman granted Freeman's request and ordered that Freeman "will have until January 18, 2008 to pursue additional fact discovery" and supplement its opposition to BCOA and UMWA's Motions for Summary Judgment. (Minute Order [34] dated 11/19/07.) After receiving what it believed to be deficient responses to its discovery requests, Freeman filed the present Motion to Compel on December 5, 2007. (*See* [68].) The matter was fully briefed by the parties and the Court heard argument from counsel for Freeman, BCOA and UMWA at a hearing on December 18, 2007.

## II.     Discussion

The Federal Rules of Civil Procedure allow a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Rule 26 further states that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The scope of discovery under Rule 26 is broad; a party's discovery requests need not be limited to issues raised in the pleadings or the merits of the case so long as they bear on "or reasonably lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Moreover, courts have held that "the general policy favoring broad discovery is particularly applicable where . . . the court making the relevance

determination has jurisdiction only over the discovery dispute, and hence has less familiarity with the intricacies of the governing substantive law than does the court overseeing the underlying litigation." *Jewish War Veterans of the United States of America, Inc. v. Gates*, 506 F.Supp.2d 30, 42 (D.D.C. 2007).

Whether the information Freeman seeks through its discovery requests is relevant to the issues in this litigation is at the heart of the present dispute between the parties. BCOA and UMWA argue that the outcome in this case is governed by the D.C. Circuit's decision *United Mine Workers of Am. 1974 Pension Trust v. Pittston Co.*, 984 F.2d 469, 474 (D.C. Cir. 1993) ("*Pittston*"). In *Pittston*, the Court held that an evergreen clause creates a "perpetual obligation" and that by signing a trust agreement that contained an evergreen clause coal companies were bound "to make contributions at rates specified in subsequent NBCWAs, without regard to whether the employer was still a party to the subsequent agreements." *Id*. at 474. BCOA and UMWA argue that in light of this holding, Freeman is only entitled to limited discovery on whether it must contribute to the 1974 Trust at the rates set forth in the 2007 NBCWA. (BCOA's Opp'n [45] at 2-3; UMWA's Opp'n at 5, 9.) Freeman argues that it is entitled to discovery to help it establish, through extrinsic evidence, that Freeman is not bound by the 2007 NBCWA because that agreement is not a "successor agreement" within the meaning of the evergreen clause. (Freeman's Mot. at 8.) Freeman also argues that it is entitled to discovery about the financial condition of the Trust and any transfers made from the Trust to enable Freeman to establish that the rate increase in the 2007 NBCWA was neither proper nor necessary. (Freeman's Mot. at 11.)

The Court is not convinced that *Pittston* is dispositive of the issues in this case or that

5

discovery should be limited in the manner suggested by BCOA and UMWA. *Pittston* provides that the evergreen clause at issue in this case obligates coal companies to contribute to the Trust at the rates established in successor NBCWAs but does not set forth the criteria for determining whether an agreement should be treated as a "successor agreement." *Pittston*, 984 F.2d at 474. Freeman argues that the 2007 NBCWA is not a successor agreement, and therefore that it is not bound by the contribution increase, because at the time BCOA and UMWA negotiated the 2007 NBCWA, BCOA was no longer a multi-employer bargaining unit. (Freeman's Mot. at 8.) Whether a NBCWA negotiated under these circumstances constitutes a successor agreement appears to be one of first impression for the trial court and this Court believes that Freeman is entitled to discovery that is aimed at supporting its novel argument and the other claims set forth in its Complaint. The Court is also of the opinion that Freeman is entitled to discovery on its theory that the 2007 contribution increase was the result of mismanagement of the Trust.

### A. Documents Regarding the 2007 Negotiations

Freeman is seeking "*all* documents regarding the negotiations for the 2007 Agreement, including files maintained by BCOA and UMWA, communications between or among them, and all proposals and counterproposals exchanged during the negotiations." (Freeman's Mot. at 8 (emphasis in original).) In Requests ## 10-16 of its First Request for Production of Documents to Defendant Bituminous Coal Operators' Association, Inc., Freeman sought the following documents relating to the negotiations:

> 10. All files maintained by BCOA regarding the 2007 Agreement and/or the negotiation of the 2007 Agreement.

6

> 11.   All correspondence and communications between BCOA and UMWA regarding the 2007 Agreement.
>
> 12.   All correspondence and communications between BCOA and Consol regarding the 2007 Agreement.
>
> 13.   All proposals and counter-proposals exchanged between BCOA and UMWA regarding the 2007 Agreement.
>
> 14.   All documents provided to or received from UMWA regarding the 2007 Agreement.
>
> 15.   All documents regarding the negotiation of the increase in contribution rates to the 1974 Pension Trust contained in the 2007 Agreement.
>
> 16.   All correspondence or communications between BCOA and BCOA-appointed trustees of the 1974 Pension Trust regarding the 2007 Agreement and/or the increase in contribution rates to the 1974 Pension Trust contained in the 2007 Agreement.

(Freeman's Mot., Ex. A [38-2].)  In Requests ## 1-5, 7, 9, 10, and 12 of its First Request for Production of Documents to Defendant United Mine Workers of America, Freeman sought the following documents relating to the negotiations:

> 1.   All filed maintained by UMWA regarding [the] 2007 Agreement and/or the negotiation of the 2007 Agreement.
>
> 2.   All correspondence or communications between UMWA and BCOA or between UMWA and Consol regarding the 2007 Agreement.
>
> 3.   All proposals and counter-proposals exchanged between UMWA and BCOA or between UMWA and Consol for the 2007 Agreement.
>
> 4.   All documents provided to or received from BCOA regarding the 2007 Agreement.
>
> 5.   All documents provided to or received from Consol regarding the 2007 Agreement.
>
> 7.   All correspondence or communications between or among UMWA and Patricia Lang, J. Brett Harvey, Peter B. Lilly, Daniel L. Fassio, or B. V. Hyler

>regarding the 2007 Agreement.
>
>9. All documents regarding the negotiation of the 2007 Agreement, including: memoranda regarding the negotiation sessions for the 2007 Agreement; all notes taken by any person participating in the negotiations for the 2007 Agreement; communications between or among individuals; and any official and unofficial correspondence, notes, records, minutes, transcripts, and proposals that document the negotiation of the 2007 Agreement.
>
>10. All correspondence between UMWA and UMWA-appointed trustees of the 1974 Pension Trust regarding the 2007 Agreement and/or the increase in contribution rates to the 1974 Pension Trust contained in the 2007 Agreement.
>
>12. Documents that identify the individuals responsible for negotiating the 2007 Agreement on behalf of UMWA.

(Freeman's Mot., Ex. B [38-3].)

Freeman argues that these documents "are relevant because they demonstrate, *inter alia*, the manner in which these negotiations have differed from those for the prior NCBWAs, the extent to which Consol controlled the negotiations, the trade-offs involved in reaching agreement on specific provisions, and the prioritization between and within each party of their interests." (Freeman's Mot. at 9.) BCOA and UMWA both challenge the relevance of the "broad" and "far reaching" discovery that Freeman seeks regarding the negotiation of the 2007 NBCWA. (UMWA's Opp'n at 9; BCOA's Opp'n at 17.) BCOA points out, both through its Opposition and its argument at the hearing, that the 2007 NBCWA agreement is a 374-page document that addresses a wide range of topics, including wages, mining safety, and seniority rights, in addition to the one provision governing the increased contribution rate that is at issue in this case. (BCOA's Opp'n at 17.) Freeman responds that it needs discovery regarding the negotiation of other provision in the 2007 NBCWA to investigate whether there were any "trade-offs" made in exchange for the contribution rate increase.

While the Court believes that Freeman is entitled to discovery of documents relating to the negotiation of the 2007 NBCWA, the Court is concerned that the requests that Freeman has propounded to BCOA and UMWA are overbroad. Accordingly, the Court will order BCOA and UMWA to comply with the document requests enumerated above, subject to the following limitations. BCOA will supplement its responses to Requests ## 10-12 and 14 by producing documents that are both responsive to the requests and relate to (1) the contribution rate increase *and/or* (2) other substantive changes between the 2002 NBCWA and the 2007 NBCWA. BCOA will also provide all responsive documents to Requests ## 13, 15, and 16 that it has in its possession, custody or control. UMWA will supplement its responses to Requests ## 1, 2, 4, 5, 7, 9, and 10 by producing documents that are both responsive to the requests and relate to (1) the contribution rate increase *and/or* (2) other substantive changes between the 2002 NBCWA and the 2007 NBCWA. UMWA will also provide all responsive documents to Requests ## 3 and 12.

B.  Documents Regarding Transfers from the Trust

Freeman seeks documents regarding an allegedly improper transfer of funds from the 1974 Pension Trust to the 1993 Benefit Trust. Specifically, in Request ## 38 and 39 to BCOA and in Request ## 21 and 22 to UMWA it has asked BCOA and UMWA to produce:

> 38. [21.]   All documents regarding (1) the transfer of funds from the 1974 Pension Trust to the 1993 benefit Trust, including any amounts transferred at the request of the plan participant, and (2) payments of additional pension benefits to plan participants in recognition of anticipated hardship due to increased medical costs under the 1993 Benefit Trust during the plan years 2002 through 2006.
>
> 39. [22.]   To the extent not already provided in response to request number 38 [21], any analysis performed by, performed for, provided to, or relied upon by BCOA [or UMWA] regarding the effect of the transfers of funds from the 1974

9

> Pension Trust to the 1993 Benefit Trust and/or the payment of additional benefits to the 1993 Benefit Trust beneficiaries on the financial condition of the 1974 Pension Trust, including any analysis of future benefit expenses, funding, and any needed increase in contributions to the Trust as a result of the fund transfers and/or payment of additional benefits.

(Freeman's Mot. Ex. A and B.)

BCOA objected to these requests as "overly broad, unduly burdensome," and irrelevant. (Freeman's Mot. Ex. C [66-4] at 23.) UMWA similarly objected on grounds of overbreadth, vagueness, burden, and relevance and asserted that UMWA was "unaware of any such transfer." (Freeman's Mot. Ex. D [66-5] at 12.) At the hearing, BCOA also claimed that it had no knowledge of any such transfers and would so indicate under oath. This Court cannot order a party to produce documents that it does not have. Therefore BCOA and UMWA are ordered to either produce documents that are responsive to these requests or to provide Freeman with a sworn declaration stating that they are unaware that any such documents exist.

### C.  Documents Regarding the Financial Condition of the Trust

In support of its claim that the 2007 contribution increase was neither proper nor necessary, Freeman seeks "documents regarding any analyses historically performed by, provided to, or relied upon by BCOA or UMWA regarding the financial condition of the 1974 Pension Trust." (Freeman's Mot. at 11.) Specifically, Freeman is seeking documents relied upon by BCOA and/or UMWA in 2001 and 2002 because the 2002 NBCWA included a similar benefit increase but no contribution increase. (*Id*.) BCOA argued in its Opposition that Freeman should obtain such material from the Trust rather than from BCOA or UMWA and stated at the hearing that the Trust had already produced some documents showing the financial condition in response

to a request from Freeman. (BCOA's Opp'n at 19-20.) The Court finds that the information sought by Freeman regarding the financial condition of the Trust is relevant and will order BCOA and UMWA to produce responsive material that they have in their possession, custody and control to the extent that the information sought has not already been produced by the Trust.

   D. <u>Documents Regarding the Membership and Structure of BCOA</u>

Finally, Freeman seeks "documents regarding the membership and structure of BCOA to demonstrate that it is no longer a multi-employer bargaining unit, but rather a single employer, and therefore incapable of negotiating a 'successor' agreement binding the industry." (Freeman's Mot. at 12.) Of the material sought in Requests ## 1-8, 34 and 35 that Freeman propounded to BCOA, Freeman claims that the following documents have not been produced:

- current BCOA by-laws and those in effect at the time the 2002 NBCWA [was] negotiated [Request # 2];
- documents identifying the source of BCOA operating income, including membership fees, for the years 1977 and 1978 and the years 2001 to the present [Request # 34];
- documents identifying members of BCOA's chief executive officer committee at the time of the negotiation of the 1978 NBCWA, at the time of the negotiation of the 2002 NBCWA, and at the time of the negotiation of the 2007 Agreement [Request # 6];
- documents identifying members of BCOA's NBCWA negotiating committees and subcommittees at the time of the negotiation of the 1978 NBCWA, at the time of the negotiation of the 2002 NBCWA, and at the time of the negotiation of the 2007 Agreement [Request # 4].

(Freeman's Mot. at 12; Freeman's Mot., Ex. A.]

BCOA argues that is should not be required to produce documents relating to its operation or activities in 1977 and 1978. (BCOA's Opp'n at 18-19.) The Court agrees with BCOA on this point but finds that Freeman is entitled to documents that will allow it to compare

the membership and structure of BCOA in 2002 and 2007. Accordingly the Court will order BCOA to produce the following documents: (1) current by-laws and those in effect at the time the 2002 NBCWA was negotiated; (2) documents identifying the source of BCOA operating income, including membership fees, from January 1, 2001 to January 1, 2007; (3) documents identifying members of BCOA's chief executive officer committee at the time of the negotiation of the negotiation of the 2002 NBCWA and at the time of the negotiation of the 2007 Agreement; and (4) documents identifying members of BCOA's NBCWA negotiating committees at the time of the negotiation of the 2002 NBCWA and at the time of the negotiation of the 2007 Agreement.

     E.    <u>Freeman's Request for Attorneys' Fees</u>

Freeman asks this court to award it the attorneys' fees and costs that it incurred in connection with its Motion to Compel. (Freeman Mot. at 13.) Federal Rule of Civil Procedure 37(a)(5)(A) provides that if a motion to compel is granted, the court must require the opposing party to may the expenses that the movant reasonably incurred in making the motion. However, the Rule further states that "the court must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified." FED. R. CIV. P. 37(a)(5)(A)(ii). In this case, the discovery dispute centered on each party's interpretation of the *Pittston* decision and the effect of that decision on the scope of this litigation. Freeman is advancing the novel argument that the 2007 NBCWA cannot constitute a successor agreement as that term is used in the evergreen clause and in the *Pittston* case, while BCOA and UMWA maintain that *Pittston* applies to the facts of this case. Because reasonable minds can differ on this issue, BCOA and

UMWA were justified in objecting to Freeman's discovery requests and should not be required to pay the fees and costs that Freeman incurred in filing their Motion to Compel.

### III.     Conclusion

For the foregoing reasons it is this  28th   day of December, 2007 hereby

**ORDERED** that Freeman United Coal Mining Company's Motion to Compel Discovery [42] is **granted** subject to the limitations set forth in this Memorandum Order; and it is further

**ORDERED** that the Bituminous Coal Operators' Association and the United Mine Workers Association supplement their discovery responses within ten days of this Order; and it is further

**ORDERED** that Freeman United Coal Mining Company's request for attorneys' fees and costs is **denied**.

          ____/s/_____
          ALAN KAY
          UNITED STATES MAGISTRATE JUDGE