# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Holland, et al., | ) |
| Plaintiff, | ) |
| v. | ) |
|  | ) Case No. 07-cv-490 (PLF/AK) |
| Freeman United Coal Mining Company, et al., | ) |
| Defendants. | ) |
|  | ) |
| Freeman United Coal Mining Company, | ) |
| Plaintiff, | ) Case No. 07-cv-1050 (PLF/AK) |
| v. | ) |
| United Mine Workers of America, et al., | ) |
| Defendants. | ) |

## BCOA'S MOTION TO COMPEL DISCOVERY FROM FREEMAN UNITED AND MOTION FOR USE PRECLUSION

Under Federal Rule of Civil Procedure 37 and Local Rule 7(m), Defendant Bituminous Coal Operators' Association, Inc. ("BCOA") moves to compel the production of documents that Plaintiff Freeman United Coal Mining Company ("Freeman") has withheld during discovery in this case. Freeman has not produced a *single* document in response to *any* of BCOA's 25 outstanding document requests, which were served on Freeman on December 18, 2007.

As set forth more fully in the accompanying memorandum of law, Freeman's stonewalling is entirely unjustified. Further efforts to resolve this dispute under Local Rule 7(m)

prior to filing the present motion would be futile and would only provide Freeman with additional opportunity to delay responding to BCOA's discovery requests.

Accordingly, BCOA requests that the Court order Freeman to produce the materials more fully described in the accompanying memorandum and issue an order precluding Freeman from introducing or using any material in Freeman's possession, custody, or control (apart from materials produced in discovery in this case by other parties or non-parties). Under Local Rules 7(f) and 78.1, BCOA also requests an oral hearing on its motion.

WHEREFORE BCOA requests that its motion be granted, and that it be awarded attorneys' fees and costs incurred in connection with this motion.

Respectfully submitted,

_____/s/_____

Peter Buscemi
D.C. Bar No. 269092
Stanley F. Lechner
D.C Bar No. 370986
Charles P. Groppe
D.C Bar No. 464035

DATED: February 16, 2008

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel:    (202) 739-3000
Fax:    (202) 739-3001
E-mail: pbuscemi@morganlewis.com
        slechner@morganlewis.com
        cgroppe@morganlewis.com

*Counsel for Defendant*
Bituminous Coal Operators' Association, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Holland, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 07-cv-490 (PLF/AK) |
| Freeman United Coal Mining Company, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Freeman United Coal Mining Company, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-cv-1050 (PLF/AK) |
| | ) | |
| v. | ) | |
| | ) | |
| United Mine Workers of America, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## BCOA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY AND FOR USE PRECLUSION

Under Federal Rule of Civil Procedure 37 and Local Rule 7(m), Defendant Bituminous Coal Operators' Association, Inc. ("BCOA") moves to compel the production of documents that Plaintiff Freeman United Coal Mining Company ("Freeman") has withheld during discovery in this case.

Freeman has not produced a *single* document in response to *any* of BCOA's 25 outstanding document requests. Freeman apparently believes that discovery should be a one-way street. It has demanded and received many thousands of pages of documents from parties and non-parties. Yet it has refused to produce a single document itself.

In addition, and despite BCOA's request, Freeman has failed to assure BCOA that in fact it has no responsive documents. Freeman's conduct is plainly improper, especially given that fact discovery in this case closes on February 18, 2008 and the material that BCOA first requested from Freeman on December 18, 2007 related directly to Freeman's allegations and the factual support, if any, for its claims.

In light of the imminent close of discovery, BCOA's prior efforts to obtain proper responses from Freeman, and Freeman's on-going stonewalling, BCOA submits that any further efforts to resolve the matter under Local Rule 7(m) would be futile, and would only provide Freeman with additional opportunity to delay and to attempt to hide the fact that it lacks any factual basis for its claims. Accordingly, BCOA has no recourse but to file the present motion to compel and for an order precluding Freeman from using or introducing in the future material that Freeman previously has not produced in response to BCOA's outstanding discovery requests. (BCOA's document requests expressly excluded documents produced in discovery by parties and non-parties other than Freeman, and this motion likewise does not seek the production of such documents.)

## RELEVANT FACTS AND ARGUMENT

This case involves Freeman's refusal to honor its obligation to contribute to the UMWA 1974 Pension Trust ("1974 Pension Trust" or "Trust") under a contractual provision known as the evergreen clause. In the evergreen clause, Freeman undertook to continue to contribute to the 1974 Pension Trust at the rates specified in the National Bituminous Coal Wage Agreements ("NBCWAs") negotiated from time to time by BCOA and the United Mine Workers of America ("UMWA"), even if Freeman itself elected no longer to sign the NBCWAs. Beginning in January 2007, Freeman refused to contribute to the 1974 Pension Trust at the rate specified in the

2007 NBCWA.  Freeman also has refused to honor its own contractual commitment, made directly in its own collective bargaining agreements negotiated with the UMWA, to contribute to the 1974 Pension Trust at the rates contained in the Trust's governing plan and trust documents, as amended from time to time, by BCOA and the UMWA, the settlors of the Trust.

In Count I of its Complaint, Freeman alleges that it has no obligation to contribute to the 1974 Pension Trust because the 2007 NBCWA is a not a true "successor" agreement to prior NBCWAs under the evergreen clause.  *See In re United Mine Workers of America Employee Benefit Plans Litigation*, 782 F. Supp. 658, 665 (D.D.C. 1992) (holding that the evergreen clause "was an important provision negotiated to make sure that any coal operator that voluntarily agreed to participate in the [UMWA] Funds in 1978 could not simply walk away from the Funds and leave its retirees behind, or negotiate cut-rate contributions with the UMWA, at the expense of the remaining employers"), *aff'd*, *United Mine Workers of America 1974 Pension Trust v. Pittston Co.*, 984 F.2d 469, 474 (D.C. Cir. 1993) *("Pittston")*.  In Count II, Freeman contends that, if the Court rejects its argument in Count I and holds that Freeman was indeed obligated to contribute to the 1974 Pension Trust at the 2007 NBCWA rate, then BCOA should be liable to Freeman for allegedly breaching some alleged duty to Freeman in connection with the negotiation of the 2007 NBCWA.

From the outset of this case, Freeman has insisted on broad discovery from the other parties – BCOA, the UMWA, and the 1974 Pension Trust – and from non-parties.  Freeman has pursued wasteful and expensive discovery on a slew of issues that have no bearing on whether, under the evergreen clause, the *Pittston* decision, and the undisputed facts already in the record, Freeman was obliged to contribute to the 1974 Pension Trust at the rate specified in the 2007 NBCWA.  Indeed, in response to Freeman's discovery, BCOA alone has produced over fifteen

thousand pages of material, and the UMWA, the 1974 Pension Trust, and non-parties have produced even more.

On December 18, 2007, BCOA served its own limited discovery on Freeman. *See* Exhibit 1 (BCOA's First Request for Production of Documents). BCOA initially propounded 36 document requests that specifically addressed the alleged factual basis for Freeman's claims. BCOA's discovery also sought relevant information regarding Freeman's participation in the 1974 Pension Trust, its separate negotiations with the UMWA regarding its continued participation in the Trust after it resigned its membership in BCOA, and the alleged agency relationship between BCOA and Freeman.

Freeman responded to BCOA's requests on January 18, 2008. *See* Exhibit 2 (Freeman's Responses to BCOA's First Request for Production of Documents). In its responses, Freeman indicated that it would produce documents in response to only four of BCOA's document requests, and only "to the extent such documents exist." *See* Responses to Request Nos. 4, 13, 23, and 33. Freeman also represented that it had no documents in response to five of BCOA's requests, *see* Responses to Request Nos. 14, 17, 29, 31, and 32, and that it would not produce documents in response to two more in light of the parties' stipulation addressing the scope of this litigation. *See* Responses to Request Nos. 15 and 16.

Freeman otherwise objected to BCOA's remaining 25 document requests, claiming among other things that the production of any responsive material would "needlessly increase the cost of litigation." *See, e.g.*, Responses to Request Nos. 7, 8, 9, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, and 30. In addition, Freeman claimed that many of the documents that it deemed responsive to BCOA's requests were "already in BCOA's possession." *See, e.g.*, Responses to Request Nos. 7, 8, 9, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 30, and 31. Freeman listed some

examples of such "responsive" documents, but it did not claim that these examples were an exhaustive list of the responsive documents in its possession, custody, or control. Finally, Freeman objected on relevance grounds to many of BCOA's requests, including requests that sought information related to Freeman's direct negotiations with the UMWA, as well as information regarding the alleged agency relationship between BCOA and Freeman after Freeman withdrew from membership on BCOA. *See, e.g.*, Responses to Request Nos. 3, 5, 6, and 24.

On January 25, 2008, BCOA wrote Freeman about Freeman's deficient responses. *See* Exhibit 3 (Letter from Charles P. Groppe to Paul M. Smith and Jessica Ring Amunson). In its letter, BCOA demanded that Freeman produce the material it claimed it *might* have in response to four of BCOA's requests. In addition, BCOA questioned the validity of Freeman's objections and demanded that Freeman drop its frivolous assertions and produce documents in response to the remaining 25 requests.

Despite repeated requests to do so, Freeman did not respond to BCOA's January 25 letter until February 6, 2008.[1] *See* Exhibit 6 (Letter from Jessica Ring Amunson to Peter Buscemi, *et al.*). In its response, Freeman:

- asserted that *no* documents actually existed in response to the four requests that it previously indicated it might respond to;
- stated that it now would produce documents in response to eight other document requests, but again only to the extent that such documents were "located" or "exist[ed];"

---

[1]    BCOA inquired about Freeman's anticipated response to BCOA's January 25 letter on two separate occasions when responding to Freeman's own discovery demands in this case. *See* Exhibit 4 (January 29, 2008 Email from Charles P. Groppe to Jessica Ring Amunson) and Exhibit 5, at 3 (February 5, 2008 Letter from Charles P. Groppe to Paul M. Smith and Jessica Ring Amunson).

- maintained its relevance objections to three of BCOA's requests that sought information about BCOA's alleged role as Freeman's agent, as well as Freeman's direct negotiations with the UMWA;

- refused to clarify whether the documents it identified in response to eight more requests were the only documents Freeman maintained were responsive to these requests; and

- acknowledged that it in fact did have one document – what it called "portions" of an Asset Purchase Agreement between Freeman and Springfield Coal Company LLC ("Springfield") related to Freeman's sale of its mining operations – that was responsive to two of BCOA's requests, but continued its objections to any other documents related to the sale.

Despite its representations in its February 6 letter, Freeman has yet to produce even a single document. Moreover, despite the imminent close of discovery, Freeman has yet to provide any further information regarding other potentially responsive material that it already has had two months to "locate" and that it promised to produce to the extent such material "existed." Finally, Freeman's continued relevance objections to discovery requests that bear directly on Freeman's own claims in this lawsuit are untenable, and have been asserted solely to conceal Freeman's lack of any factual justification for its claims.

Accordingly, BCOA requests that the Court order Freeman to supplement its discovery responses as follows and preclude Freeman from using or introducing any material in this case that Freeman withholds from production:

1.    *Document Request Nos. 7, 8, 9, 10, 11, 12 and 20*:  These requests relate to various communications between BCOA and Freeman involving the 1974 Pension Trust (Request Nos. 7, 8, 9); correspondence and communications related to Freeman's participation in the 1974 Pension Trust (Request No. 10); information related to the economic impact the contribution obligation to the UMWA 1974 Pension Trust has had on Freeman and other companies (Request Nos. 11 and 12); and information related to the withdrawal liability Freeman owes the 1974 Pension Trust (Request No. 20).

In its February 6 response, Freeman represented that it would "collect and produce" responsive documents to these requests "to the extent they exist." BCOA requests that the Court order Freeman to produce any and all documents responsive to these requests or, if no such documents exist, to amend its written responses to so state.

2.     ***Document Request Nos. 1 and 2***: These requests relate to Freeman's sale of its mining operations to Springfield in August 2007. In its February 6, 2008 response, Freeman claimed that it would produce "those portions of the Asset Purchase Agreement between Freeman and Springfield that concern Springfield's contractual obligations to the UMWA 1974 Pension Plan as Freeman's successor." Otherwise, Freeman has objected on relevance grounds to these requests and refuses to produce other material sought by BCOA related to this sale. To date, BCOA has not received even the limited material that Freeman has promised. Moreover, Freeman's relevance objection to the production of all material related to the sale is groundless, for BCOA is entitled to such material to explore Freeman's representations made about its obligation to the 1974 Pension Trust during negotiations over the sale and to determine the overall effect Freeman's continued liability to the 1974 Pension Trust had on the transaction. BCOA thus requests that the Court order Freeman to produce *all* materials in Freeman's possession, custody, or control that are responsive to these requests.

3.     ***Document Request No. 3***: This request pertains to Count II of the Complaint and seeks all communications that Freeman has had with other bituminous coal operators after January 1, 1997 regarding BCOA. Such material is relevant in light of Freeman's allegation that BCOA somehow served as Freeman's agent even though Freeman revoked its membership in BCOA during 1997, for the information relates to how Freeman viewed BCOA from 1997 to the

present and whether Freeman considered BCOA its "agent" during this period.  Accordingly,

BCOA requests that the Court order Freeman to produce all responsive materials.

    **4.**    ***Document Request No. 24***:  This request also pertains to Count II and BCOA's

alleged role as Freeman's agent, and seeks all documents concerning BCOA's alleged role as

Freeman's agent during negotiation of the contribute rates to the 1974 Pension Trust and other

UMWA Health & Retirement Funds from January 1, 1997 to the present.

      In its February 6 response, Freeman represented that documents responsive to this request

include (1) material previously produced by BCOA in discovery and (2) certain documents that

Freeman identified in its February 6 letter.  The first part of this response is superfluous because

BCOA expressly stated in its requests that it has not asked for any documents previously

produced in discovery.  As BCOA noted in its January 25 letter, it does not know of the

existence of *any* documents that would establish an agency relationship between Freeman and

BCOA.  Certainly, none of the public documents mentioned in its February 6 letter refer to or

establish any such relationship.  Accordingly, BCOA requests that the Court order Freeman to

produce all documents that are responsive to this request, or, if no additional documents exist,

amend its written responses to state as much.

    **5.**    ***Document Request Nos. 5 and 6:***  These requests seek information related to (1)

Freeman's communications with the UMWA and (2) Freeman's 1998 and 2003 agreements with

the UMWA that incorporated by reference the UMWA 1974 Pension Trust's governing plan and

trust documents.  Freeman has objected on relevance grounds to these requests.  Freeman's direct

negotiations with the UMWA over its participation in the 1974 Pension Trust and the other

UMWA Health & Retirement Funds, however, bear directly on Freeman's agency claims

asserted in this lawsuit, as well as Freeman's contribution obligation to the UMWA 1974

Pension Trust. As such, BCOA requests that the Court order Freeman to produce *all* materials responsive to these requests.

      6.    **Document Request Nos. 18, 19, 21, 22, 25, 26, 27 and 28:**  Each of these requests refer to specific allegations or specific paragraphs in the complaint and seek documents directly related to these specific allegations. *See, e.g.*, Request No. 22 (requesting all documents related to Freeman's allegation in paragraph 45(d) of the complaint that the evergreen clause does not require Freeman to contribute to the 1974 Pension Trust at the rate contained in the 2007 NBCWA); Request No. 27 (requesting all documents related to Freeman's allegation in paragraph 55(c) of the complaint that there was no objective need for increased contributions to the 1974 Pension Trust as required under the 2007 NBCWA.)

      In its January 25 letter, BCOA requested that Freeman clarify whether the documents identified in its initial January 18 response were the only documents not previously produced by BCOA that Freeman claimed were responsive to these requests. Freeman's February 6 letter does not provide the necessary clarification. Accordingly, BCOA requests that the Court order Freeman to produce any other documents not previously identified by Freeman as responsive to these requests, or to state that it has no other documents.

## CONCLUSION

      For all of the foregoing reasons, BCOA requests that the Court grant its motion to compel and enter an order requiring Freeman to produce responsive documents and precluding Freeman from using or introducing any material not produced in response to BCOA's document requests.

BCOA further requests that, in light of Freeman's complete disregard of its discovery

obligations, BCOA be awarded attorneys' fees and costs incurred in connection with this motion.

Respectfully submitted,


_____/s/_____

Peter Buscemi
D.C. Bar No. 269092
Stanley F. Lechner
D.C Bar No. 370986
Charles P. Groppe
D.C. Bar No. 464035

DATED: February 16, 2008

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel:    (202) 739-3000
Fax:    (202) 739-3001
E-mail: pbuscemi@morganlewis.com
        slechner@morganlewis.com
        cgroppe@morganlewis.com

*Counsel for Defendant*
Bituminous Coal Operators' Association, Inc.

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Holland, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 07-cv-490 (PLF/AK) |
| Freeman United Coal Mining Company, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Freeman United Coal Mining Company, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-cv-1050 (PLF/AK) |
| | ) | |
| v. | ) | |
| | ) | |
| United Mine Workers of America, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## [PROPOSED] ORDER

Upon consideration of the motion of the Bituminous Coal Operators' Association, Inc. ("BCOA") to compel and to preclude, including any response thereto and other relevant record materials,

It is, on this _____ day of _____, 2008, hereby

ORDERED that BCOA's motion is GRANTED; and it is further

ORDERED that Freeman produce those materials requested in BCOA's motion to compel and amend its written responses to BCOA's outstanding document requests accordingly; and it is further

ORDERED that Freeman is precluded from using or introducing any material in this proceeding that it has not produced in response to BCOA's discovery requests.


_____

United States Magistrate Judge

cc:     Counsel of Record

# EXHIBIT 1

## BCOA's First Request for Production

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Holland, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 07-cv-490 (PLF/AK) |
| Freeman United Coal Mining Company, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Freeman United Coal Mining Company, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-cv-1050 (PLF/AK) |
| v. | ) | |
| | ) | |
| United Mine Workers of America, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BITUMINOUS COAL OPERATORS' ASSOCIATION'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
<u>TO FREEMAN UNITED COAL MINING COMPANY</u>**

      Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Bituminous Coal Operators' Association, Inc. ("BCOA"), by and through its undersigned counsel, hereby requests that Plaintiff Freeman United Coal Company ("Freeman") produce for inspection and copying the documents and tangible things described below. The documents and physical (including electronic) evidence requested are to be produced at the offices of Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Avenue, NW, Washington, D.C. 20004, within 30 days from service of this request, in accordance with the Instructions and Definitions set forth hereinafter.

## INSTRUCTIONS

1.      If, in responding to this Request for Production, the responding party encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

2.      In responding to these requests for production, you should furnish all documents and items of physical (including electronic) evidence that are within your possession, custody, or control, or are within the possession, custody or control of your agents, representatives or investigators; or within the possession, custody or control of your attorneys or their agents, employees, representatives, or investigators, and identify all documents and other physical (including electronic) evidence known to be responsive to these requests but that are within the possession, custody or control of others.

3.      If a request for production seeks a specific document or item(s) of physical (including electronic) evidence that is not in your possession, control, or custody, provide any documents you have that contain all or part of the information contained in the requested document(s) or item(s) of physical (including electronic) evidence and identify who has control of and the location of the document(s) or item(s).

4.      If you object to the production of any document or part of a document on the basis of a privilege, provide a statement signed by your attorney which sets forth as to each document that is withheld on a claim of privilege the following information:

(a)     The identity of the persons(s) who possess or control, or possessed or controlled, the document and each copy of the document;

(b)     The identity of the persons(s) who prepared or created the document;

(c)     The identity of the sender(s) of the document if different from the person(s) who prepared or created it;

(d)     The identity of the person(s) to whom the document or any copies were sent or otherwise made available;

(e)     The date of the document;

(f)     The nature (e.g., letter, memorandum, etc.) and subject matter of the document; and

(g)     The type of privilege claimed and the factual and legal bases for the privilege claimed.

5.     When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

6.     Documents responsive to these requests do not include any documents that Freeman itself has received in response to its own discovery requests served on any party or non-party in this litigation.

7.     These document requests are continuing in character, so as to require that your answers should be modified or supplemented from time to time as information requested is obtained at a later date by you, your agents or your attorney.

## **DEFINITIONS**

Notwithstanding any definition below, each word, term, or phrase used in this Request for Production of Documents is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.    The term "Document" means the original and all drafts of all written, printed, typed, recorded, photographic, electronically stored, and graphic matter (including audio or video tape recordings), however printed, coded, stored, produced or reproduced, of any kind or description, whether sent or received or not, and all copies thereof which are different in any way from the original (whether by interlineation, date-stamp, notation, indication of copies sent or received, or otherwise), including without limitation: any paper, book, account, agreement, contract, memorandum, press release, correspondence, letter, computer/electronic mail message (including, but not limited to, E-mail), telegram, telex, report, opinion, investigation, record, transcript, study, note or notation, working paper, summary, intra-office communication, diary or calendar, chart, minute, index sheet, computer data or computer software, records or recording or summary of any hearing, meeting, telephone or other conversation, or of any interview or of any conference, or any other written, computerized, recorded, transcribed, punched, taped, filmed or graphic matter of which you have or have had possession, custody or control, or of which you have knowledge.

2.    The term "electronically stored" refers to any information, created, stored or best utilized with computer technology of any type or means. It includes, but is not limited to, data, word processing documents; spreadsheets; presentation documents; graphics; animation; images; emails (including attachments); instant messages; audio, video, or audiovisual recordings; voicemails; networks; computers and computer

systems; servers; archives; backup or disaster recovery systems; CDs, disks, diskettes, drives, tapes, cartridges, thumb drives, and other storage media; printers; the internet; personal digital assistants; handheld wireless devices; cellular phones; pagers; fax machines and voicemail systems.

3.     The term "person" or "persons" means any and all entities whatsoever, including, without limitation, individuals, associations, firms, companies, partnerships, joint ventures, corporations, subsidiaries, trusts, estates, departments, divisions, affiliates, groups, bureaus, public agencies or boards, as well as any and all predecessors or successors to any of the foregoing.

4.     The terms "you," "your," "Freeman," and "Plaintiff" refers to the Plaintiff Freeman United Coal Mining Company, as well as its parent corporation, General Dynamics Corporation; any of Freeman's subsidiaries and affiliated entities; other entities that fall within Freeman's control group; and any agents, representatives, attorneys, employees, officered, directors, and consultants of Freeman or its affiliated companies.

5.     The term "concerning" means relating to, referring to, constituting, containing, embodying, incorporating, describing, evidencing, or in any way pertaining to.

6.     The term "communication" and "communicated" means the transmittal of information by any means.

7.     The term "any" means each and every as well as any one.

8.     The terms "and" or "or" shall be construed conjunctively or disjunctively, as necessary to make the request inclusive rather than exclusive.

10.    The term "relating to" means concerning, describing, referring to, constituting, embodying, reflecting, identifying, stating, evidencing, substantiating and/or being in any way relevant to a given subject.

11.    The present tense includes the past and future tenses. The singular includes the plural and vice versa. Words in the masculine, feminine or neuter form shall include each of the other genders.

12.    The term "BCOA" refers to Defendant Bituminous Coal Operators' Association, Inc., as well as to its employees, agents, representatives, attorneys, consultants, and investigators.

13.    The term "UMWA" refers to Defendant United Mine Workers of America and its affiliated entities, whether incorporated or unincorporated, including local, regional, international, and other affiliated unions. The term also includes officers, directors, employees, agents, representatives, consultants, and attorneys for the UMWA.

14.    The term "Pension Trust" refers to the United Mine Workers of America 1974 Pension Trust, as well as to its Trustees, its staff, employees, representatives, consultants, and attorneys.

15.    The term "Consol" refers to Consol Energy, Inc. and its subsidiary and affiliated corporate entities, as well as their respective officers, directors, employees, agents, consultants, and attorneys.

16.    The term "NBCWA" refers to the National Bituminous Coal Wage Agreement that has been negotiated by BCOA and the UMWA for more than 50 years, including the NBCWA of 2007.

17.    The term "Freeman Agreements" refers to the collective bargaining agreements that Freeman entered into with the UMWA in 1998 and in 2003.

18.    The term "Stanhagen Declaration" refers to the declaration of William D. Stanhagen dated October 3, 2007, submitted in support of Freeman's opposition to motions for summary judgment filed by BCOA, the UMWA, and the 1974 Pension Trust.

19.    The term "Austin Declaration" refers to the declaration of Thomas J. Austin dated October 19, 2007, submitted in support of Freeman's opposition to motions for summary judgment filed by BCOA, the UMWA, and the 1974 Pension Trust.

## DOCUMENT REQUESTS

1.    All documents concerning the sale of Freeman's coal mining operations to the Springfield Coal Company LLC in August 2007.

2.    All documents concerning any communications between Freeman and Springfield Coal Company LLC related to the 1974 Pension Trust.

3.    All documents concerning Freeman's communications after January 1, 1997 with other bituminous coal companies regarding BCOA.

4.    All documents concerning Freeman's communications after January 1, 2007 with other bituminous coal companies regarding the UMWA 1974 Pension Trust, including, but not limited to, a participating employer's obligation to contribute to the Trust.

5.    All correspondence and communications between Freeman and the UMWA concerning Freeman's participation in the 1974 Pension Trust as agreed to in the 1998 and 2003 Freeman Agreements.

6.     All documents concerning Freeman's agreement to incorporate the 1974 Trust documents into its 1998 and 2003 Agreements with the UMWA.

7.     All documents provided to or received from BCOA concerning the 1974 Pension Trust for the period January 1, 1997 to the present.

8.     All correspondence and communications between Freeman and BCOA concerning the financial or funding status of the 1974 Pension Trust for the plan years 1998 to the present.

9.     All correspondence and communications between Freeman and BCOA concerning the UMWA 1974 Pension Trust.

10.    All correspondence and communications concerning Freeman's participation in the 1974 Pension Trust from 1998 to the present.

11.    Any analysis performed by, performed for, provided to, or relied upon by Freeman from 1998 to the present concerning its contribution obligation to the 1974 Pension Trust.

12.    Any analysis performed by, performed for, provided to, or relied upon by Freeman concerning the economic impact on Freeman or other companies of the contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA.

13.    Any communications between Freeman and any current or former BCOA member company concerning the contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA.

14.     Any documents concerning the meaning or interpretation of the evergreen clause contained in the 1974 Pension Trust's plan and trust documents (or the trust documents for any other UMWA Health & Retirement Fund).

15.     Any documents concerning the meaning or interpretation of the guarantee clause contained in the NBCWA and Freeman Agreements of 1998 and 2003.

16.     Any documents concerning Freeman's obligation to the 1974 Pension Trust (or any other UMWA Health & Retirement Fund) under the guarantee clause.

17.     All documents referred to in Paragraph 35 of Freeman's Complaint filed against BCOA, the UMWA, and the 1974 Pension Trust on or about February 14, 2007.

18.     All documents concerning Freeman's allegation that BCOA is a mere "instrumentality" of Consol as alleged in Freeman's Complaint.

19.     All documents concerning the allegation that the contribution rate specified in the 2007 NBCWA imposes greater financial burdens on Freeman than on Consol as alleged in Paragraph 40 of Freeman's Complaint.

20.     All documents concerning any withdrawal liability owed or potentially owed by Freeman to the 1974 Pension Trust from January 1, 1997 to the present.

21.     All documents concerning the allegation that Freeman agreed to contribute to the 1974 Pension Trusts only if the rates were set by a "true multiemployer bargaining unit" as alleged in Paragraph 45(c) of the Complaint.

22.     All documents concerning the allegation in Paragraph 45(d) of the Complaint that the evergreen clause does not require Freeman to contribute to the 1974 Pension Trust at the rates contained in the 2007 NBCWA.

23.    All documents concerning any directions, instructions, or suggestions that Freeman provided to BCOA when BCOA negotiated contribution rates for the 1974 Pension Trust during the period from 1997 to the present.

24.    Any documents concerning BCOA's alleged role as Freeman's agent during negotiation of contribution rates to the 1974 Pension Trust or other UMWA Health & Retirement Funds from January 1, 1997 to the present.

25.    All documents concerning the allegation in Paragraph 52 of the Complaint that BCOA owed duties of good faith and fair dealing to Freeman when negotiating the 2007 NBCWA.

26.    All documents concerning the allegation in Paragraph 53 of the Complaint that the 2007 NBCWA was used as a means by Consol to gain a competitive advantage over other coal producers.

27.    All documents concerning the allegation in Paragraph 55(c) of the Complaint that there was no objective need for increased contributions to the 1974 Pension Trust as required under the 2007 NBCWA.

28.    All documents concerning the allegation in Paragraph 55(d) of the Complaint that the contribution rate for the 1974 Pension Trust as specified in the 2007 NBCWA was arbitrary, capricious, or unreasonable.

29.    All documents reviewed or relied upon in the preparation of the Stanhagen Declaration.

30.    All documents concerning the statements made by Stanhagen in his Declaration.

31.    All documents reviewed or relied upon in the preparation of the Austin Declaration.

32.    All documents regarding communications Mr. Austin had with other bituminous coal companies concerning the contribution rate for the 1974 Pension Trust specified in the 2007 NBCWA.

33.    All documents concerning "strategies" discussed by Freeman and other bituminous coal operators to avoid agreeing to contribute to the 1974 Pension Trust at the rates contained in the 2007 NBCWA as alleged in Paragraph 4 of the Austin Declaration.

34.    All documents concerning the eligibility of Freeman's retirees for lump sum payments from the 1974 Pension Trust from 1998 to present.

35.    All documents concerning Freeman's effort to obtain for its retirees lump sum payments from the 1974 Pension Trust under Article XX.c. of the Freeman Agreements of 1998 and 2003.

36.     All documents concerning Freeman's communications with BCOA relating to the provision of lump sum payments to Freeman's retirees from the 1974 Pension Trust under Article XX.c. of the Freeman Agreements of 1998 and 2003.

Peter Buscemi
D.C. Bar No. 269092
Stanley F. Lechner
D.C Bar No. 370986
Charles P. Groppe
D.C. Bar No. 464035

DATED:  December 19, 2007

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel:     (202) 739-3000
Fax:    (202) 739-3001
E-mail: pbuscemi@morganlewis.com
         slechner@morganlewis.com
         cgroppe@morganlewis.com

*Counsel for Defendant*
Bituminous Coal Operators' Association, Inc.

## CERTIFICATE OF SERVICE

I, Charles P. Groppe, certify that, on behalf of Defendant BCOA, I served BCOA's First

Request for Production of Documents to Freeman United Coal Mining Company, via Hand

Delivery, this 19th day of December, 2007, upon:

>Paul M. Smith, Esq.
>Jessica R. Amunson, Esq.
>Jenner & Block LLP
>601 13th Street, NW
>Suite 12 South
>Washington, DC 20005
>psmith@jenner.com
>jamunson@jenner.com

>***Counsel for Plaintiff Freeman United Coal Mining Co.,***

with courtesy copies sent via Email and First Class Mail, postage prepaid, this 19th day of
December, 2007, upon:

>Paul M. Smith, Esq.
>Jessica R. Amunson, Esq.
>Jenner & Block LLP
>601 13th Street, NW
>Suite 12 South
>Washington, DC 20005
>psmith@jenner.com
>jamunson@jenner.com

>Susan C. Levy, Esq.
>Aaron M. Forester, Esq.
>Jenner & Block LLP
>330 N. Wabash Avenue
>Chicago, IL 60611
>slevy@jenner.com

>Gregory J. Ossi, Esq.
>Michael W. Robinson, Esq.
>Venable LLP
>8010 Towers Crescent Drive, Suite 300
>Vienna, VA 22182
>gjossi@venable.com
>mwrobinson@venable.com

>***Counsel for Plaintiff Freeman United Coal Mining Co.***

John R. Woodrum, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, NW
Fifth Floor
Washington, DC 20037
john.woodrum@ogletreedeakins.com

***Counsel for Monterey Coal Company***

Julia Penny Clark, Esq.
Andrew D. Roth, Esq.
Charlotte Garden, Esq.
Bredhoff & Kaiser P.L.L.C.
805 Fifteenth Street N.W.
Washington, DC  20005
JPClark@Bredhoff.com
aroth@bredhoff.com
CGarden@Bredhoff.com

***Counsel for Defendant UMWA 1974 Pension Plan
    and its Trustees***

Grant Crandall, Esq.
Deborah Stern, Esq.
United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031
dstern@umwa.org

John R. Mooney, Esq.
Mark J. Murphy, Esq.
Richard C. Welch, Esq.
Mooney, Green, Baker
  & Saindon, P.C.
1920 L Street, N.W.
Washington, DC 20036
jmooney@mooneygreen.com
mmurphy@mooneygreen.com
rwelch@mooneygreen.com

*Counsel for Defendant United Mine Workers*
  *of America*

Charles P. Groppe
*Counsel for Defendant*
*Bituminous Coal Operators' Association, Inc.*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave, NW
Washington, DC 20004
Telephone: (202) 739-3000
Fax: (202) 739-3001
E-mail: cgroppe@morganlewis.com

1-WA/2720240.1

# EXHIBIT 2

**Freeman's Responses to
BCOA's First Request for Production**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Holland, et al., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-cv-490 (PLF/AK) |
| | ) | |
| Freeman United Coal Mining Company, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Freeman United Coal Mining Company | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-cv-1050 (PLF/AK) |
| | ) | |
| v. | ) | |
| | ) | |
| United Mine Workers of America, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**FREEMAN UNITED COAL MINING COMPANY'S RESPONSES TO
BITUMINOUS COAL OPERATORS' ASSOCIATION'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

In accordance with Rule 34 of the Federal Rules of Civil Procedure and the Local Rules, Freeman United Coal Mining Company ("Freeman") responds to Bituminous Coal Operators' Association's ("BCOA's") Requests for Admission as follows:

**GENERAL OBJECTIONS**

All of the General Objections set forth herein are incorporated into each of Freeman's specific responses to BCOA's Requests, and have the same force and effect as if fully set forth with each response.

1

1.     Freeman objects to BCOA's discovery requests, including the Definitions and Instructions that precede them, to the extent that they are unduly burdensome, ambiguous, duplicative, vague, oppressing, harassing, overbroad, or attempt to place any burden or obligation upon Freeman beyond the requirements set forth in the Federal Rules of Civil Procedure or the Local Rules.  Freeman will respond according to its obligations under the Federal Rules of Civil Procedure and the Local Rules.

2.     Freeman objects generally to BCOA's discovery requests to the extent that they seek information and documents beyond those permitted by the Court's scheduling order in this case, which specifically stated that "[n]o discovery with respect to damages and no expert discovery shall take place unless by agreement of the parties or Order of the Court."

3.     Freeman objects generally to BCOA's discovery requests to the extent that they seek information and documents protected by any applicable privilege, including, without limitation, the attorney-client privilege or the work-product doctrine.   In preparing its responses to these discovery requests, Freeman has assumed that the requests are limited in time such that they do not seek attorney-client or attorney work-product material generated after the commencement of this litigation.

4.     Freeman objects generally to BCOA's discovery requests to the extent that they are not limited to time periods reasonably related to the matters at issue in this litigation, seek information on matters that are not relevant to this litigation, and/or are not reasonably calculated to lead to the discovery of admissible evidence.

5.     Freeman objects generally to BCOA's discovery requests to the extent

2

that they seek unavailable information or information not currently in Freeman's possession, custody, or control.

6.    Freeman objects generally to BCOA's discovery requests to the extent that they call for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, on the grounds that it is unduly burdensome, oppressive, and harassing, and would needlessly increase the cost of litigation.

7.    Freeman objects generally to BCOA's discovery requests to the extent that they call for a legal opinion or legal conclusion.

8.    No specific objection set forth in any of the following responses shall be deemed a waiver of any of Freeman's general objections.

9.    By making these responses, Freeman does not concede that the information given is properly discoverable or admissible. To the contrary, Freeman reserves the right to object to further discovery regarding the subject matter of the discovery requests and to object to the introduction into evidence of statements made in and documents produced in response to these discovery requests. Freeman reserves the right to supplement, amend, or correct its responses to these discovery requests if Freeman obtains other and further information concerning the subject matter of these discovery requests.

10.    Freeman objects generally to BCOA's definition of "you," "your," "Freeman," and "Plaintiff'" as referring to Freeman United Coal Mining Company, as well as its parent corporation, General Dynamics Corporation. Freeman has construed these document requests as referring only to Freeman United Coal Mining Company, as well as its agents, representatives, attorneys, employees, officered,

3

directors, and consultants.

11.     Freeman objects generally to BCOA's definition of the term "NBCWA" as including the document denominated the NBCWA of 2007.  Freeman continues to deny that the 2007 Agreement between UMWA and BCOA is an NBCWA.  Freeman has construed any references to the "2007 NBCWA" in the following requests as meaning the document denominated the 2007 NBCWA.

Subject to the foregoing, Freeman provides the following responses and specific objections:

### RESPONSES AND SPECIFIC OBJECTIONS

**REQUEST NO. 1:**    All documents concerning the sale of Freeman's coal mining operations to the Springfield Coal Company LLC in August 2007.

**RESPONSE NO. 1:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties.  Freeman further objects to this request because it seeks information and documents beyond the time period relevant to the claims in this case, which were filed in February 2007.

**REQUEST NO. 2:**    All documents concerning any communications between Freeman and Springfield Coal Company LLC related to the 1974 Pension Trust.

**RESPONSE NO. 2:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties.  Freeman further objects to this request because it seeks information and documents beyond the time period relevant to the claims in this case, which were filed in February 2007.

**REQUEST NO. 3:**    All documents concerning Freeman's communications

4

after January 1, 1997 with other bituminous coal companies regarding BCOA.

**RESPONSE NO. 3:** Freeman objects to this request in that is not limited to time periods reasonably related to the matters at issue in this litigation, seeks information on matters that are not relevant to this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 4:** All documents concerning Freeman's communications after January 1, 2007 with other bituminous coal companies regarding the UMWA 1974 Pension Trust, including, but not limited to, a participating employer's obligation to contribute to the Trust.

**RESPONSE NO. 4:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it seeks information and documents beyond the time period relevant to the claims in this case, which were filed in February 2007. Freeman further objects to this request because it is unduly burdensome and ambiguous. Subject to and without waiving any objections, Freeman will provide documents responsive to this request to the extent that such documents exist.

**REQUEST NO. 5:** All correspondence and communications between Freeman and the UMWA concerning Freeman's participation in the 1974 Pension Trust as agreed to in the 1998 and 2003 Freeman Agreements.

**RESPONSE NO. 5:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it is unduly burdensome and ambiguous.

Freeman further objects that this request assumes "Freeman's participation in the 1974 Pension Trust as agreed to in the 1998 and 2003 Freeman Agreements" when no such participation has been established.

**REQUEST NO. 6:**    All documents concerning Freeman's agreement to incorporate the 1974 Trust documents into its 1998 and 2003 Agreements with the UMWA.

**RESPONSE NO. 6:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it is unduly burdensome and ambiguous. Freeman further objects that this request assumes "Freeman's agreement to incorporate the 1974 Trust documents into its 1998 and 2003 Agreements with the UMWA" when no such agreement has been established.

**REQUEST NO. 7:**    All documents provided to or received from BCOA concerning the 1974 Pension Trust for the period January 1, 1997 to the present.

**RESPONSE NO. 7:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it is unduly burdensome and calls for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation.

**REQUEST NO. 8:**    All correspondence and communications between Freeman and BCOA concerning the financial or funding status of the 1974 Pension

6

Trust for the plan years 1998 to the present.

**RESPONSE NO. 8:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it is unduly burdensome and calls for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation.

**REQUEST NO. 9:** All correspondence and communications between Freeman and BCOA concerning the UMWA 1974 Pension Trust.

**RESPONSE NO. 9:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it is unduly burdensome and calls for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. Freeman further objects that this request is not time-limited in any manner.

**REQUEST NO. 10:** All correspondence and communications concerning Freeman's participation in the 1974 Pension Trust from 1998 to the present.

**RESPONSE NO. 10:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it is unduly burdensome and vague.

**REQUEST NO. 11:** Any analysis performed by, performed for, provided to, or relied upon by Freeman from 1998 to the present concerning its contribution obligation to the 1974 Pension Trust.

**RESPONSE NO. 11:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it is unduly burdensome and vague.

**REQUEST NO. 12:** Any analysis performed by, performed for, provided to, or relied upon by Freeman concerning the economic impact on Freeman or other companies of the contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA.

**RESPONSE NO. 12:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it is unduly burdensome and vague. Freeman further objects because this request calls for information and documents regarding damages and the Court has ordered that "[n]o discovery with respect to damages . . . shall take place unless by agreement of the parties or Order of the Court."

**REQUEST NO. 13:** Any communications between Freeman and any current or former BCOA member company concerning the contribution rates to the 1974 Pension Trust contained in the 2007 NBCWA.

**RESPONSE NO. 13:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman

8

further objects to this request because it is unduly burdensome and vague. Subject to and without waiving any objections, Freeman will provide documents responsive to this request to the extent that such documents exist.

**REQUEST NO. 14:** Any documents concerning the meaning or interpretation of the evergreen clause contained in the 1974 Pension Trust's plan and trust documents (or the trust documents for any other UMWA Health & Retirement Fund).

**RESPONSE TO REQUEST NO. 14:** In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the only relevant documents in its possession concerning the meaning or interpretation of the 1974 Pension Trust's plan and trust documents are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 15:** Any documents concerning the meaning or interpretation of the guarantee clause contained in the NBCWA and Freeman Agreements of 1998 and 2003.

**RESPONSE NO. 15:** Freeman objects to this request on the grounds that it seeks information and documents regarding the guarantee clause, which is the subject of a stipulation the parties have filed with the Court.

**REQUEST NO. 16:** Any documents concerning Freeman's obligation to the 1974 Pension Trust (or any other UMWA Health & Retirement Fund) under the guarantee clause.

**RESPONSE NO. 16:** Freeman objects to this request on the grounds that it seeks information and documents regarding the guarantee clause, which is the subject of a stipulation the parties have filed with the Court.

9

**REQUEST NO. 17:**  All documents referred to in Paragraph 35 of Freeman's Complaint filed against BCOA, the UMWA, and the 1974 Pension Trust on or about February 14, 2007.

**RESPONSE NO. 17:**  Freeman objects to this request because it calls for information in documents already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. BCOA is already in possession of or has readily available pages 287 and 288 of the document denominated the 2007 NBCWA.

**REQUEST NO. 18:**  All documents concerning Freeman's allegation that BCOA is a mere "instrumentality" of Consol as alleged in Freeman's Complaint.

**RESPONSE NO. 18:**  Freeman objects to this request because it calls for information in documents already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. BCOA is already in possession of, or has readily available, the document denominated the 2007 NBCWA, the documents relating to the negotiation of the document denominated the 2007 NBCWA, the Stanhagen declaration, the BCOA constitution and bylaws, and Consol's SEC and other public filings.  In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the additional documents in its possession concerning Freeman's allegation that BCOA is a mere "instrumentality" of Consol are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 19:**  All documents concerning the allegation that the contribution rate specified in the 2007 NBCWA imposes greater financial burdens on Freeman than on Consol as alleged in Paragraph 40 of Freeman's Complaint.

**RESPONSE NO. 19:**  Freeman objects to this request because it calls for information in documents already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. BCOA is already in possession of, or has readily available, the document denominated the 2007 NBCWA, the 1974 Plan and Trust documents, the Stanhagen declaration, and Consol's SEC and other public filings.  In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the additional documents in its possession concerning the allegation that the contribution rate specified in the document denominated the 2007 NBCWA imposes greater financial burdens on Freeman than on Consol are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 20:**  All documents concerning any withdrawal liability owed or potentially owed by Freeman to the 1974 Pension Trust from January 1, 1997 to the present.

**RESPONSE NO. 20:**  Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties.  To the extent that BCOA contends that this request is relevant to Freeman's claim for damages against BCOA, Freeman objects that the Court's scheduling order in this case provided that "[n]o discovery with respect to damages . . . shall take place unless by agreement of the parties or Order of the Court."

**REQUEST NO. 21:**  All documents concerning the allegation that Freeman agreed to contribute to the 1974 Pension Trusts only if the rates were set by a "true multiemployer bargaining unit" as alleged in Paragraph 45(c) of the Complaint.

**RESPONSE NO. 21:**  Freeman objects to this request because it calls for

11

information in documents already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. BCOA is already in possession of, or has readily available, the *Pittston* cases and other caselaw regarding BCOA's multiemployer status, the document denominated the 2007 NBCWA and past NBCWAs, the 1974 Plan and Trust documents, and the BCOA constitution and bylaws. In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the additional documents in its possession concerning the allegation that Freeman agreed to contribute to the 1974 Pension Trusts only if the rates were set by a "true multiemployer bargaining unit" are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 22:** All documents concerning the allegation in Paragraph 45(d) of the Complaint that the evergreen clause does not require Freeman to contribute to the 1974 Pension Trust at the rates contained in the 2007 NBCWA.

**RESPONSE NO. 22:** Freeman objects to this request because it calls for information in documents already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. BCOA is already in possession of, or has readily available, the *Pittston* cases and other caselaw regarding the evergreen clause, the document denominated the 2007 NBCWA and past NBCWAs, the 1974 Plan and Trust documents, and the BCOA constitution and bylaws. In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the additional documents in its possession concerning the allegation that the evergreen clause does not require Freeman to contribute to the 1974 Pension Trust at the rates contained in the 2007 NBCWA are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 23:** All documents concerning any directions, instructions, or suggestions that Freeman provided to BCOA when BCOA negotiated contribution rates for the 1974 Pension Trust during the period from 1997 to the present.

**RESPONSE NO. 23:** Freeman objects to this request in that it is unduly burdensome and calls for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. Subject to and without waiving any objections, Freeman states that it will provide documents responsive to this request to the extent that such documents exist.

**REQUEST NO. 24:** Any documents concerning BCOA's alleged role as Freeman's agent during negotiation of contribution rates to the 1974 Pension Trust or other UMWA Health & Retirement Funds from January 1, 1997 to the present.

**RESPONSE NO. 24:** Freeman objects to this request in that it is unduly burdensome and calls for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation.

**REQUEST NO. 25:** All documents concerning the allegation in Paragraph 52 of the Complaint that BCOA owed duties of good faith and fair dealing to Freeman when negotiating the 2007 NBCWA.

**RESPONSE NO. 25:** Freeman objects to this request in that it is unduly burdensome and calls for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. BCOA is already in possession of, or has readily available, caselaw regarding its obligations as the

13

"employers' agent" to "raise the contribution rate," *see United Mine Workers of America 1950 Ben. Plan and Trust v. BCOA*, 898 F.2d 177, 181 (D.C. Cir. 1990), as well as the document denominated the 2007 NBCWA and past NBCWAs, the 1974 Plan and Trust documents, and the BCOA constitution and bylaws. In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the additional documents in its possession concerning the allegation that the evergreen clause does not require Freeman to contribute to the 1974 Pension Trust at the rates contained in the 2007 NBCWA are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 26:** All documents concerning the allegation in Paragraph 53 of the Complaint that the 2007 NBCWA was used as a means by Consol to gain a competitive advantage over other coal producers.

**RESPONSE NO. 26:** Freeman objects to this request because it calls for information in documents already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. BCOA is already in possession of, or has readily available, the document denominated the 2007 NBCWA, the 1974 Plan and Trust documents, the Stanhagen declaration, and Consol's SEC and other public filings. In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the additional documents in its possession concerning the allegation that the document denominated the 2007 NBCWA was used as a means by Consol to gain a competitive advantage over other coal producers are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 27:** All documents concerning the allegation in Paragraph 55(c) of the Complaint that there was no objective need for increased contributions to

14

the 1974 Pension Trust as required under the 2007 NBCWA.

**RESPONSE NO. 27:**  Freeman objects to this request in that it is unduly burdensome and calls for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation.  BCOA is already in possession of, or has readily available, the 2002 NBCWA, the document denominated the 2007 NBCWA, the 1974 Plan and Trust documents, the United Mine Workers of America 1974 Pension Plan Actuarial Valuation Report as of July 1, 2005 (Mercer Human Resource Consulting, January 1, 2006), and the Stanhagen declaration. In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the additional documents in its possession concerning the allegation that there was no objective need for increased contributions to the 1974 Pension Trust as set forth in the document denominated the 2007 NBCWA are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 28:**  All documents concerning the allegation in Paragraph 55(d) of the Complaint that the contribution rate for the 1974 Pension Trust as specified in the 2007 NBCWA was arbitrary, capricious, or unreasonable.

**RESPONSE NO. 28:**  Freeman objects to this request in that it is unduly burdensome and calls for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation.  BCOA is already in possession of, or has readily available, the 2002 NBCWA, the document denominated the 2007 NBCWA, the 1974 Plan and Trust documents, the United Mine Workers of America 1974 Pension Plan Actuarial Valuation Report as of July 1, 2005

15

(Mercer Human Resource Consulting, January 1, 2006), and the Stanhagen declaration. In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the additional documents in its possession concerning the allegation that the contribution rate for the 1974 Pension Trust as specified in the 2007 NBCWA was arbitrary, capricious, or unreasonable are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 29:** All documents reviewed or relied upon in the preparation of the Stanhagen Declaration.

**RESPONSE NO. 29:** Freeman states that there are no such documents.

**REQUEST NO. 30:** All documents concerning the statements made by Stanhagen in his Declaration.

**RESPONSE NO. 30:** Freeman objects to this request in that it is unduly burdensome and calls for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA, and thus would needlessly increase the cost of litigation. Freeman hereby incorporates General Objection No. 3 as if fully set forth herein. In accordance with Instruction No. 6 of BCOA's requests, Freeman states that the additional documents in its possession concerning the statements made by Stanhagen in his Declaration are documents Freeman has received in response to its own discovery requests.

**REQUEST NO. 31:** All documents reviewed or relied upon in the preparation of the Austin Declaration.

**RESPONSE NO. 31:** . Freeman hereby incorporates General Objection No. 3 as if fully set forth herein. Freeman further states that the only document reviewed or relied upon in the preparation of the Austin Declaration was the document

16

denominated the 2007 NBCWA, which is already within BCOA's possession.

**REQUEST NO. 32:** All documents regarding communications Mr. Austin had with other bituminous coal companies concerning the contribution rate for the 1974 Pension Trust specified in the 2007 NBCWA.

**RESPONSE NO. 32:** Freeman objects to this request in that it seeks information and documents that are not in Freeman's possession, custody, or control. Subject to and without waiving any objection, Freeman states that it has no such documents.

**REQUEST NO. 33:** All documents concerning "strategies" discussed by Freeman and other bituminous coal operators to avoid agreeing to contribute to the 1974 Pension Trust at the rates contained in the 2007 NBCWA as alleged in Paragraph 4 of the Austin Declaration.

**RESPONSE NO. 33:** Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence. Freeman further objects to this request because it is unduly burdensome and vague. Freeman further objects to this request in that it seeks information and documents regarding "other bituminous coal operators" that are not currently in Freeman's possession, custody, or control. Subject to and without waiving any objections, Freeman states that it will provide documents responsive to this request to the extent that any such documents exist.

**REQUEST NO. 34:** All documents concerning the eligibility of Freeman's retirees for lump sum payments from the 1974 Pension Trust from 1998 to present.

**RESPONSE NO. 34:** Freeman objects to this request in that it seeks

17

information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 35:**  All documents concerning Freeman's effort to obtain for its retirees lump sum payments from the 1974 Pension Trust under Article XX.c. of the Freeman Agreements of 1998 and 2003.

**RESPONSE NO. 35:**  Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 36:**  All documents concerning Freeman's communications with BCOA relating to the provision of lump sum payments to Freeman's retirees from the 1974 Pension Trust under Article XX.c. of the Freeman Agreements of 1998 and 2003.

**RESPONSE NO. 36:**  Freeman objects to this request in that it seeks information and documents that are not relevant to the claims or defenses of the parties and not calculated to lead to the discovery of admissible evidence.

Date: January 18, 2008     Respectfully submitted,

              /s/ Paul M. Smith
             Paul M. Smith
             DC Bar No. 358870
             Jessica Ring Amunson
             DC Bar No. 497223
             JENNER & BLOCK LLP
             601 13th Street, NW
             Washington, DC 20005
             Tel: (202) 639-6000
             Fax: (202) 661-4993
             psmith@jenner.com
             jamunson@jenner.com

             Susan C. Levy (*pro hac vice*)
             JENNER & BLOCK LLP

18

333 North Wabash Avenue
Chicago, IL 60611
Tel:    (312) 923-2772
Fax:    (312) 840-7772
slevy@jenner.com

Gregory J. Ossi
DC Bar No. 460243
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Tel:    (703) 760-1600
Fax:    (703) 812-8949
gjossi@venable.com

***Counsel for Freeman United
Coal Mining Company***

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January 2008, I caused to be served by

email and first-class mail Freeman's Response to BCOA's Request for Production of

Documents upon:

DEBORAH STERN
United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031

JOHN R. MOONEY
MARK J. MURPHY
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036

*Counsel for United Mine Workers of America*

PETER BUSCEMI
STANLEY F. LECHNER
CHARLES P. GROPPE
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004

*Counsel for Bituminous Coal Operators' Association, Inc.*

JULIA PENNY CLARK
ANDREW D. ROTH
CHARLOTTE GARDEN
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street N.W.
Suite 1000
Washington, DC 20005

DAVID W. ALLEN
LARRY D. NEWSOME
CHRISTOPHER F. CLARKE
UMWA HEALTH & RETIREMENT FUNDS
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C. 20037

*Counsel for 1974 Pension Trust*

20

JOHN R. WOODRUM
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, Fifth Floor
Washington, DC 20037

***Counsel for Monterey Coal Company***


/s/ Jessica Ring Amunson
Jessica Ring Amunson
DC Bar No. 497223
JENNER & BLOCK LLP
601 13th Street, NW
Washington, DC 20005
Tel:    (202) 639-6000
Fax:    (202) 661-4993
jamunson@jenner.com

***Counsel for Freeman***

21

# EXHIBIT 3

**January 25, 2008 Letter from Charles P. Groppe
to Paul M. Smith and Jessica Ring Amunson**

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
www.morganlewis.com



**Charles P. Groppe**
202.739.5681
cgroppe@morganlewis.com

January 25, 2008

**VIA EMAIL AND FIRST CLASS MAIL**

Paul M. Smith, Esq.
Jessica Ring Amunson, Esq.
Jenner & Block LLP
601 13th Street, NW
Washington, DC 20005

Re:     *Holland, et al., v. Freeman United Coal Mining Co., et al.*, Case No. 1:07-cv-0490
        (D.D.C.) (PLF/AK); *Freeman United Coal Mining Co. v. United Mine Workers of
        America, et al.*, Case No. 1:07-cv-1050 (D.D.C.) (PLF/AK)

Dear Counsel:

This letter addresses the recent responses served by Freeman United Coal Mining Company
("Freeman") to BCOA's outstanding discovery requests, as well as Freeman's January 24, 2008
letter regarding certain "issues" that Freeman has identified in one of BCOA's interrogatory
responses served on Freeman the same day.

First, on Friday, January 18, 2008, Freeman provided BCOA its responses to BCOA's First
Request for Production of Documents and Requests for Admissions. In its responses, Freeman
indicated that it would produce documents in response to only four of the Document Requests,
Nos. 4, 13, 23, and 33, and only "to the extent such documents exist." To date, not a single
document has been produced. Please produce your responsive documents promptly, or, if you
maintain that no responsive documents exist, please promptly amend your written responses to
state as such.

In addition to indicating that it *may* have documents responsive to four of BCOA's requests,
Freeman has asserted objections to 25 of BCOA's remaining document requests. [1] As a result of

---

[1]     BCOA originally served 36 document requests on Freeman. Freeman has represented that it
        has no documents in response to five of BCOA's requests, and has indicated that it will not
        produce documents in response to the remaining two requests in light of the parties'
        stipulation addressing the Guarantee Clause.

**Morgan Lewis**
COUNSELORS AT LAW

Paul M. Smith, Esq.
Jessica Ring Amunson, Esq.
January 25, 2008
Page 2

these objections, Freeman has refused to provide *any* responsive documents related to the issues raised by Freeman in its complaint.

As discussed in detail below, Freeman's objections are unfounded, and appear to have been asserted solely for the purpose of disguising the lack of any factual justification or support for Freeman's refusal to honor its contractual obligation under the evergreen clause to contribute to the UMWA 1974 Pension Trust at the rate set forth in the National Bituminous Coal Wage Agreement ("NBCWA") of 2007:

- *Document Requests Nos. 18, 19, 21, 22, 25, 26, 27 and 28:* These requests reference, and seek materials directly related to, specific allegations raised in Freeman's complaint. In response to each of these requests, Freeman has asserted the same boilerplate objection that the information sought already is in BCOA's possession or that the information is readily accessible to BCOA. Accordingly, Freeman has refused to produce any such material because it claims to do so "would needlessly increase the cost of litigation."

  Each of these responses then provides several examples of documents that presumably are responsive to BCOA's specific requests. It is unclear from Freeman's responses, however, whether Freeman has provided an exhaustive list of materials that Freeman claims are "already in BCOA's possession," or whether Freeman knows of other documents responsive to BCOA's requests that Freeman simply does not want to produce because of its new-found concern over litigation costs. BCOA thus requests that Freeman clarify whether the documents listed in Freeman's response are the only documents Freeman is aware of that are responsive these specific requests. To the extent that these lists are not exhaustive, BCOA demands that Freeman promptly produce any other such materials.

- *Document Requests Nos. 1 and 2:* These requests seek all documents related to Freeman's recent sale of its mining operations to Springfield Coal Company LLC, as well as all communications between the two companies related to the UMWA 1974 Pension Trust. Freeman's objections that these requests seek (1) information not relevant to the issues in this case or (2) information outside the time period covered by the complaint are absurd on their face, for Freeman *completed* the sale of its operations a scant 6 months after it filed its complaint in this action, and Freeman's discussions with the purchaser of its operations undoubtedly encompassed Freeman's contractual obligations to the UMWA 1974 Pension Plan. BCOA thereby demands that Freeman produce all such materials promptly.

- *Document Request No. 3:* This request seeks all communications Freeman has had with other bituminous coal operators after January 1, 1997 regarding BCOA. Freeman has refused to produce documents on the grounds that this request (1) is not limited to a time

Morgan Lewis
COUNSELORS AT LAW

Paul M. Smith, Esq.
Jessica Ring Amunson, Esq.
January 25, 2008
Page 3

period reasonably related to this litigation, (2) seeks information not relevant to the litigation, and (3) is not calculated to lead to the discovery of admissible evidence. Again, Freeman's objections are absurd on their face. Count II of Freeman's complaint alleges that, notwithstanding Freeman's unilateral revocation of membership in BCOA during 1997, BCOA nonetheless owed some duty to Freeman when BCOA negotiated the contribution rate for the 1974 Pension Trust under the evergreen clause. BCOA is entitled to discover communications that Freeman had with other coal companies since Freeman's withdrawal from BCOA. Among other things, such material is related to the state of Freeman's knowledge of BCOA's activities and about the mounting pension costs in the coal industry, both of which Freeman has put at issue in this case. Accordingly, BCOA demands that Freeman produce all such materials promptly.

- **Document Requests Nos. 5 and 6:** These requests seek information related to (1) Freeman's communications with the UMWA and (2) Freeman's 1998 and 2003 agreements with the UMWA that incorporated by reference the UMWA 1974 Pension Trust's governing plan and trust documents. Freeman in part has objected on the grounds that such information is not relevant, even though, in those very agreements, Freeman directly negotiated with the UMWA its continued participation in the Trust and assumed certain obligations to the Trust without BCOA's involvement. Freeman also has objected to these requests on the grounds that (1) Freeman's participation in the 1974 Pension Trust and (2) Freeman's agreement to incorporate into its 1998 and 2003 Agreements with the UMWA the governing 1974 Pension Trust plan and trust documents have not been "established." These objections are nonsense, and have been asserted solely for the purpose of denying BCOA proper discovery under the Federal Rules of Civil Procedure. BCOA therefore demands that Freeman produce all materials responsive to this request promptly.

- **Document Requests Nos. 7, 8 and 9:** These requests seek various communications between Freeman and BCOA involving the UMWA 1974 Pension Trust from 1997 to the present. In addition to asserting the same baseless objections asserted in response to Document Request No. 3, Freeman has objected on the grounds that the information calls for materials "created or maintained by BCOA," materials already in BCOA's possession, or materials "readily accessible to BCOA." As such, Freeman has refused to produce any materials on the grounds that such production would only "needlessly increase the cost of litigation." Freeman's new-found concern for the cost of this litigation is hypocritical, for, from the outset of this case, Freeman has insisted on pursuing expensive and wasteful discovery of facts that BCOA and the other defendants indicated were not in dispute, and refused to place this litigation on a track that would have controlled the very costs that Freeman's feigns concern over now. Freeman's injection of this issue to avoid responding to BCOA's discovery is untenable, and BCOA demands that Freeman produce all responsive materials promptly.

Morgan Lewis
COUNSELORS AT LAW

Paul M. Smith, Esq.
Jessica Ring Amunson, Esq.
January 25, 2008
Page 4

- **Document Request No. 10:**  This request seeks correspondence and communications related to Freeman's participation in the UMWA 1974 Pension Trust.  Incredibly, Freeman has objected on the grounds that the information sought is not relevant or calculated to lead to the discovery of admissible evidence.  BCOA reminds Freeman that this case involves Freeman's contractual obligation to contribute to the 1974 Pension Trust under the evergreen clause, an obligation that Freeman incurred because of its continued participation in the 1974 Pension Trust from at least 1978 until its sale of its mining operation in August 2007.  Freeman's objection that such material is not relevant to the claims and defenses in this case is entirely without merit.  BCOA thus demands that Freeman produce all relevant materials promptly.

- **Document Requests No. 11 and 12:**  These requests seek information related to the economic impact the contribution obligation to the UMWA 1974 Pension Trust has had on Freeman and other companies.  Freeman has objected to these two requests on relevance grounds despite the fact that Freeman itself has put in issue the economic effect of contributions to the 1974 Pension Trust and despite the fact that Freeman posed these same document requests to BCOA in its First Set of Document Requests.  *See* Freeman First Set of Document Request Nos. 17 and 18.  Obviously, Freeman considered the information sought by these requests to be relevant when it asked BCOA for this material.  Because the mere passage of time has not suddenly rendered such material irrelevant, BCOA demands that Freeman promptly produce any such material.

- **Document Request No. 20:**  This request seeks all documents related to any withdrawal liability Freeman owes to the UMWA 1974 Pension Trust.  Freeman has objected to this request on relevance grounds despite the fact that the contribution obligation that Freeman has refused to honor also is a critical component of the withdrawal liability that Freeman now owes the UMWA 1974 Pension Trust.  On information and belief, Freeman's concerns about any potential withdrawal liability predate the filing of its complaint in this case, and such information certainly is relevant to BCOA's defenses.  As such, BCOA demands that Freeman promptly produce any material responsive to this request.

- **Document Request No. 24:**  This request seeks any documents concerning BCOA's alleged role as Freeman's agent when BCOA negotiated with the UMWA the contribution rate for the UMWA 1974 Pension Trust.  Freeman claims that this request is unduly burdensome, calls for information created or maintained by BCOA, or encompasses information either in BCOA's possession or readily accessible to BCOA.  As such, Freeman has refused to produce such material on the grounds that it would needlessly increase the cost of this litigation.  From the outset of this case, BCOA has denied that it ever served as a purported agent of Freeman in any capacity after Freeman unilaterally revoked its BCOA membership on July 29, 1997.  BCOA thus is not aware of

Morgan Lewis
COUNSELORS AT LAW

Paul M. Smith, Esq.
Jessica Ring Amunson, Esq.
January 25, 2008
Page 5

any documents that would establish this relationship, and certainly does not possess any such documents. Accordingly, BCOA requests that Freeman promptly produce whatever documents it claims are responsive to this request, or revise its response to indicate it has no documents that would support its allegations.

- **Document Request No. 30:** This request seeks documents concerning the statements made by Mr. Stanhagen in his declaration. Freeman has objected to this request in the same manner it has objected to Request No. 24. Again, BCOA demands that Freeman promptly produce any responsive material.

- **Document Request Nos. 34, 35, and 36:** These requests seek information related to the eligibility of former Freeman employees for certain lump sum payments made to them by the UMWA 1974 Pension Trust. Freeman has objected to these requests on relevance grounds. In its complaint, however, Freeman has alleged that certain payments made to a different group of 1974 Pension Trust participants and beneficiaries were improper. Given this allegation, BCOA is entitled to discovery about Freeman's efforts to obtain for its own retirees a similar lump sum payment from the Trust. In addition, Freeman presumably knows that the eligibility of its own retirees for certain lump sum payments from the UMWA 1974 Pension Trust was disputed by the Trustees, resulting in a Trustee deadlock resolved by an arbitrator. BCOA is entitled to any documents Freeman possesses about this eligibility dispute, especially in light of Freeman's claim in this lawsuit that BCOA purportedly served as Freeman's agent with respect to certain matters involving the 1974 Pension Trust. As such, BCOA demands that Freeman promptly produce any responsive material.

In addition to these gross deficiencies, Freeman has failed to respond properly to BCOA's requests for admissions ("RFA"). This is especially so with respect to those RFAs that specifically seek information about the existence of documents that Freeman may have related to several of its allegations in this lawsuit. These RFAs are Nos. 24, 25, 26, 27, 28, and 36. With the exception of RFA 36, Freeman responded to these RFAs by incorporating by reference its responses to RFA Nos. 18 and 22. First, RFA Nos. 18 and 22 do not address whether Freeman possesses any documents and therefore do not seem to have any bearing on whether Freeman possesses documents related to its claims in this case. Moreover, when one cuts through the fog of objections asserted in its responses to RFA Nos. 18 and 22, it appears that Freeman has denied that it has no documents related to the subject matter of RFA Nos. 24 to 28. If this is so, then BCOA demands that Freeman produce promptly all documents that it possesses that support its denial of these specific RFAs. Otherwise, BCOA demands that Freeman correct its responses to BCOA's requests for admissions.

Finally, in Susan Levy's January 24, 2008 letter, Freeman raised several questions concerning BCOA's response to Interrogatory No. 3 that BCOA served January 18 on Freeman's counsel.

**Morgan Lewis**
COUNSELORS AT LAW

Paul M. Smith, Esq.
Jessica Ring Amunson, Esq.
January 25, 2008
Page 6

During discovery in this case, BCOA has provided to Freeman the documents from which Freeman can ascertain (1) the changes made to BCOA's by-laws; (2) the dates when such amendments were approved; and (3) the BCOA members who were present when these amendments were approved when such amendments were done at a meeting. In addition, BCOA's actual interrogatory response provides other information that should answer Freeman's questions.

Please let us know promptly when Freeman will correct its discovery responses and produce its responsive documents.

Sincerely,

Charles P. Groppe

c:  Counsel of Record
    Peter Buscemi, Esq.
    Stanley F. Lechner, Esq.

1-WA/2907481.1

# EXHIBIT 4

**January 29, 2008 Email
from Charles P. Groppe to Jessica Ring Amunson**



Charles P.
Groppe/WA/MLBLaw
01/29/08 10:08 AM

To    "Amunson, Jessica Ring" <JAmunson@jenner.com>

cc    "Marks, Adrianna K." <AKMarks@Venable.com>,
      cclarke@umwafunds.org, cgarden@bredhoff.com,
      dallen@umwafunds.org, "Smith, David S."
      <DSSmith@Venable.com>, dstern@umwa.org, "Winters,
      Daniel J" <DWinters@jenner.com>,
      jmooney@mooneygreen.com, jpclark@bredhoff.com,
      mmurphy@mooneygreen.com,
      pbuscemi@morganlewis.com, "Smith, Paul M"
      <PSmith@jenner.com>, slechner@morganlewis.com, "Levy,
      Susan C" <SLevy@jenner.com>,
      mmurphy@mooneygreen.com, dstern@umwa.org,
      jpclark@bredhoff.com, cgarden@bredhoff.com,
      cclarke@umwafunds.org, dallen@umwafunds.org

bcc    dlfassio@aol.com; mdfbcoa@aol.com

Subject  RE: BCOA - Freeman - Correspondence/Privilege Log

Jessie:

BCOA's privilege log satisfies the obligations imposed under Fed. R. Civ. P 26(b)(5).   In addition, BCOA has produced thousands of pages of documents and answered several interrogatories in response to Freeman's discovery requests in this case from which Freeman can ascertain additional information regarding the individuals disclosed on BCOA's privilege log.  To the extent that Freeman still has concerns about specific individuals on BCOA's log, please let us know and we will address such requests on a case-by-case basis.

In addition, when can we expect Freeman's response to BCOA's own letter of January 25 letter that addressed Freeman's deficient responses to BCOA's outstanding discovery requests?

Charlie

_____

Charles P. Groppe
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave, NW
Washington DC 20004

Direct: 202-739-5681
Main:  202-739-3000
Fax:    202-739-3001

_____

IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of: (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.  For information about why we are required to include this legend in emails, please see http://www.morganlewis.com/circular230.
"Amunson, Jessica Ring" <JAmunson@jenner.com>



"Amunson, Jessica Ring "
<JAmunson@jenner.com>
01/29/08 09:29 AM

To    cgroppe@morganlewis.com

cc    slechner@morganlewis.com, pbuscemi@morganlewis.com,
      "Levy, Susan C" <SLevy@jenner.com>, "Smith, David S."
      <DSSmith@Venable.com>, "Smith, Paul M"



<PSmith@jenner.com>, jmooney@mooneygreen.com,
mmurphy@mooneygreen.com, dstern@umwa.org,
jpclark@bredhoff.com, cgarden@bredhoff.com,
cclarke@umwafunds.org, dallen@umwafunds.org, "Winters,
Daniel J" <DWinters@jenner.com>, "Marks, Adrianna K."
<AKMarks@Venable.com>

Subject   RE: BCOA - Freeman - Correspondence/Privilege Log


Charlie,

Please let me know as soon as possible when Freeman can expect to
receive the information requested below.

Thank you.

Jessie


--------------------------------------------------------------------------

Jessica Ring Amunson

Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington DC 20005-3823
Tel (202) 639-6023
Fax (202) 661-4993
JAmunson@jenner.com
http://www.jenner.com/

CONFIDENTIALITY WARNING: This email may contain privileged or confidential
information and is for the sole use of the intended recipient(s). Any
unauthorized use or disclosure of this communication is prohibited. If you
believe that you have received this email in error, please notify the sender
immediately and delete it from your system.

--------------------------------------------------------------------------
-----Original Message-----

From: Amunson, Jessica Ring
Sent: Friday, January 25, 2008 2:14 PM
To: cgroppe@morganlewis.com
Cc: slechner@morganlewis.com; pbuscemi@morganlewis.com; Levy, Susan C;
Smith, David S.; Smith, Paul M; jmooney@mooneygreen.com;
mmurphy@mooneygreen.com; dstern@umwa.org; jpclark@bredhoff.com;
cgarden@bredhoff.com; cclarke@umwafunds.org; dallen@umwafunds.org;
Winters, Daniel J; 'Marks, Adrianna K.'
Subject: RE: BCOA - Freeman - Correspondence/Privilege Log

Charlie:

Pursuant to Rule 26(b)(5), please provide Freeman with information
regarding the identity of the individuals named in BCOA's privilege log
and the position(s) they held as of the date of the document for which
the privilege is claimed.  Without such information, Freeman is unable
to assess the applicability of the privilege.

Kindly provide this information by close of business on Monday, January 28th.

Thank you.

Jessie

-----Original Message-----
From: cgroppe@morganlewis.com [mailto:cgroppe@morganlewis.com]
Sent: Wednesday, January 23, 2008 8:24 PM
To: Amunson, Jessica Ring
Cc: slechner@morganlewis.com; pbuscemi@morganlewis.com; Levy, Susan C;
Smith, David S.; Smith, Paul M; jmooney@mooneygreen.com;
mmurphy@mooneygreen.com; dstern@umwa.org; jpclark@bredhoff.com;
cgarden@bredhoff.com; cclarke@umwafunds.org; dallen@umwafunds.org
Subject: BCOA - Freeman - Correspondence/Privilege Log

Jessie:

Please see the attached correspondence, as well as BCOA's updated privilege log in this case.

(See attached file: Correspondence.pdf)(See attached file: Log.pdf)

Let us know if you have any questions.

Charlie
_____

Charles P. Groppe
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave, NW
Washington DC 20004

Direct: 202-739-5681
Main:   202-739-3000
Fax:    202-739-3001
_____

IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of: (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
For information about why we are required to include this legend in emails, please see http://www.morganlewis.com/circular230.
DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential.  If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

# EXHIBIT 5

**February 5, 2008 Letter from from Charles P. Groppe
to Paul M. Smith and Jessica Ring Amunson**

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  202.739.3000
Fax:  202.739.3001
www.morganlewis.com



Morgan Lewis
COUNSELORS AT LAW

**Charles P. Groppe**
202.739.5681
cgroppe@morganlewis.com

February 5, 2008

**VIA EMAIL AND FIRST CLASS MAIL**

Paul M. Smith, Esq.
Jessica Ring Amunson, Esq.
Jenner & Block LLP
601 13th Street, NW
Washington, DC 20005

Re:    *Holland, et al., v. Freeman United Coal Mining Co., et al.*, Case No. 1:07-cv-0490
       (D.D.C.) (PLF/AK); *Freeman United Coal Mining Co. v. United Mine Workers of
       America, et al.*, Case No. 1:07-cv-1050 (D.D.C.) (PLF/AK)

Dear Counsel:

This letter addresses several recent questions raised by Freeman United Coal Mining Company
("Freeman") regarding BCOA's response to Interrogatory No. 3, its privilege log, and its
document productions.  *See* Email dated February 1, 2008 and the correspondence cited therein.

First, Freeman's statement that BCOA has provided no explanation for the July 2006 and May
2007 amendments to BCOA's By-Laws is simply false.  As BCOA set forth in its verified
answer to Interrogatory No. 3, BCOA first amended its By-Laws on July 14, 2006 to create a
new class of membership in BCOA called the "Industry Committee Member."  *See* BCOA
Response and Objections to Interrogatory No. 3.  On May 22, 2007, BCOA amended its By-
Laws to increase the size of BCOA's Board of Directors.  *Id.*  As BCOA indicated in its
responses, BCOA also made several technical changes to its By-Laws when making these
changes.  These technical changes are self-evident from a comparison of the By-Laws that
BCOA has produced to Freeman during discovery.  It is not clear what additional information
Freeman seeks regarding the reasons for these amendments.

Second, Freeman seeks information regarding the principal drafters of these changes, as well as
information regarding the persons involved in that process.  The changes made to BCOA's By-
Laws in 2006 and 2007 were done on the advice of, and by, BCOA's counsel.  BCOA does not
believe that information regarding the drafters of and changes to BCOA's By-Laws has any
bearing on the claims raised by Freeman in this litigation, and Freeman's request for such

Morgan Lewis
COUNSELORS AT LAW

Paul M. Smith, Esq.
Jessica Ring Amunson, Esq.
February 5, 2008
Page 2

information serves no purpose other than to burden BCOA with additional litigation expense. Nonetheless, BCOA has created an addendum to its privilege log that reflects the privileged written communications regarding the By-Law amendment process. These entries also include information regarding when such communications occurred. Given the fact that such material is protected by the attorney-client privilege, BCOA does not perceive any need to address any electronic discovery issues related to this material; all of it is privileged.

Third, Freeman seeks information regarding when the amendments themselves were adopted and who was "present" when this occurred. Again, Freeman's question rests in part on a willful misreading of the documents that BCOA has produced in discovery. Those documents clearly indicate that the 2006 By-Laws became effective on July 14, 2006, and that they were adopted by written consent in lieu of a meeting. BCOA has no other documents to furnish Freeman regarding these amendments. In addition, although again BCOA does not see its relevance, BCOA is producing a copy of the May 22, 2007 minutes of its annual membership meeting that provides information regarding who was present when BCOA approved its current By-Laws.

Fourth, Freeman has requested that BCOA update its document production and its privilege log through at least May 22, 2007, the date on which Freeman asserts BCOA "ratified" the 2007 NBCWA. Once again, Freeman misrepresents the contents of documents that BCOA has produced in discovery, for the draft minutes from BCOA's May 22, 2007 Annual Board of Directors' meeting clearly indicate that the 2007 NBCWA had been approved, confirmed, and ratified prior to the May 2007 Annual Meeting. *See* Draft Minutes of the Annual Board of Directors Meeting (BCOA 13709-11). As noted above, BCOA has updated its privilege log to include privileged communications related to the BCOA By-Law amendment process. We do not have any additional privileged documents that relate to the approval, confirmation, or ratification of the 2007 NBCWA.

Fifth, BCOA has located one document that is responsive to Freeman's outstanding discovery requests. The bates label range for this document, as well as the document BCOA noted above it also would produce, is "BCOA 25255" to "BCOA 25261."

Sixth, Freeman has requested information on several individuals listed on BCOA's privilege log. Mr. Burton, Mr. Cohn, Mr. Needles, and Ms. Hinsch currently are attorneys with Morgan, Lewis & Bockius LLP. Mr. Klinger was in-house counsel for Peabody at the time the documents listed on BCOA's privilege log were generated. These persons, as well as Mr. Fassio, Ms. Friedman, and Mr. Dufek, were involved in the giving and receiving of legal advice and counsel to BCOA and BCOA's members in connection with, among other things, BCOA's role as collective bargaining association on behalf of its membership and its role as a settlor of the UMWA 1974 Pension Trust and other UMWA Health and Retirement Plans. Mr. Navarre was, we believe, the Executive Vice President and Chief Financial Officer for Eastern Associated Coal Co., a Peabody-affiliated company. In addition, Mr. Navarre was Chairman of BCOA's Board of

**Morgan Lewis**
COUNSELORS AT LAW

Paul M. Smith, Esq.
Jessica Ring Amunson, Esq.
February 5, 2008
Page 3

Directors until Peabody withdrew its membership in BCOA. Ms. Fiehler worked for Peabody or one of its affiliated companies at the relevant time.

Finally, on January 25, 2008, BCOA wrote to Freeman regarding Freeman's grossly deficient responses to BCOA's outstanding discovery requests. At present, BCOA has yet to receive a reply or a single document in response to any of its document requests. If Freeman ever intends to respond, please let us have your response by noon tomorrow.

Sincerely,

Charles P. Groppe

c: Susan C. Levy, Esq.
   Daniel J. Winters, Esq.
   David S. Smith, Esq.
   Michael W. Robinson, Esq.
   Gregory J. Ossi, Esq.
   Adrianna K. Marks, Esq.
   Julia Penny Clark, Esq.
   Andrew D. Roth, Esq.
   Charlotte Garden, Esq.
   David Allen, Esq.
   Christopher Clarke, Esq.
   John R. Mooney, Esq.
   Mark J. Murphy, Esq.
   Deborah Stern, Esq.
   Peter Buscemi, Esq.
   Stanley F. Lechner, Esq.

# EXHIBIT 6

**February 6, 2008 Letter
from Jessica Ring Amunson to Peter Buscemi *et al.***

# JENNER&BLOCK

February 6, 2008

*VIA ELECTRONIC MAIL*

Jenner & Block LLP          Chicago
601 Thirteenth Street, NW    Dallas
Suite 1200 South             New York
Washington, DC 20005         Washington, DC
Tel 202-639-6000
www.jenner.com

Jessica Ring Amunson
Tel  202 639-6023
Fax  202 661-4993
jamunson@jenner.com

Peter Buscemi
Stanley F. Lechner
Charles P. Groppe
Morgan, Lewis & Bockius, L.L.P.
1111 Pennsylvania Avenue, N.W.
Seventh Floor
Washington, DC 20004-2541

Re:     *Holland et al. v. Freeman United Coal Mining Co., et al.*, Case No. 07-cv-0490, and
        *Freeman United Coal Mining Co. v. UMWA, et al.*, Case No. 07-cv-1050.

Gentlemen:

I am writing to respond to the specific issues raised in Charles Groppe's letter dated January 25, 2008 letter regarding certain of Freeman's responses to BCOA's discovery requests.

**Document Requests Nos. 4, 13, 23 and 33**: In its responses, Freeman objected to these requests on several grounds but agreed to provide responsive non-privileged documents to the extent that such documents exist. Without waiving its objections, Freeman states that, with regard to Document Request Numbers 4, 13, and 33, it possesses no responsive documents. Further, with regard to Document Request Number 23, which seeks documents dating back to 1997, Freeman states that it has found no responsive documents to date but will provide responsive documents to the extent that any are located.

**Document Requests Nos. 18, 19, 21, 22, 25, 26, 27, and 28**: As stated in Freeman's responses, each of these requests calls for documents already in BCOA's possession or readily accessible to BCOA. Freeman stated in response to these requests that responsive documents include the documents Freeman received in response to its own discovery requests in this litigation. Pursuant to Instruction No. 6 of BCOA's requests, Freeman need not provide such materials to BCOA. In addition to these documents, Freeman also identified other responsive documents which Freeman assumes BCOA already possesses (*i.e.*, Consol's public filings, certain court decisions, etc.). If BCOA does not possess these materials, please advise. Finally, in response to Request No. 22, in addition to the documents identified, Freeman also possesses the 2003 Freeman Agreement, which it believes BCOA already possesses. If BCOA is not in possession of this document, please let us know and we will provide you with a copy.

**Document Requests Nos. 1 and 2**: BCOA asserts that these requests regarding the sale of Freeman's coal mining operations to Springfield Coal seek relevant materials because "Freeman's discussions with the purchaser of its operations undoubtedly encompassed Freeman's contractual obligations to the UMWA 1974 Pension Plan." Even if true, this would

Peter Buscemi
Stanley F. Lechner
Charles P. Groppe
February 6, 2008
Page 2

not explain the relevance of BCOA's Request No. 1 for **"[a]ll** documents concerning the sale of Freeman's coal mining operations to the Springfield Coal Company LLC in August 2007," which is clearly overbroad.  Without waiving its objections, in response to Request No. 2 and BCOA's subsequent clarification of the potential relevance of such materials, Freeman will produce those portions of the Asset Purchase Agreement between Freeman and Springfield that concern Springfield's contractual obligations to the UMWA 1974 Pension Plan as Freeman's successor.

**Document Request No. 3**:    BCOA seeks "[a]ll documents concerning Freeman's communications after January 1, 1997 with other bituminous coal companies regarding BCOA," and asserts that such materials are relevant because they show the "state of Freeman's knowledge of BCOA's activities and about the mounting pension costs in the coal industry."  BCOA fails to explain, however, why Freeman's knowledge of BCOA's activities after January 1, 1997 is relevant to this litigation.  Moreover, BCOA has not articulated why Freeman's supposed knowledge about "mounting pension costs in the coal industry" is germane to the claims or defenses of any party.  Freeman therefore stands on its objections to this clearly overbroad request and awaits further clarification from BCOA.

**Document Requests Nos. 5 and 6**:    Request No. 5 seeks "[a]ll correspondence and communications between Freeman and the UMWA concerning Freeman's participation in the 1974 Pension Trust as agreed to in the 1998 and 2003 Freeman Agreements" and Request No. 6 seeks "[a]ll documents concerning Freeman's agreement to incorporate the 1974 Trust documents into its 1998 and 2003 Agreements with the UMWA."  BCOA has failed to articulate why this material is relevant.  There is no issue in this litigation with regard to Freeman's participation in the 1974 Trust under the terms of the 1998 and 2003 Freeman Agreements.  The issue in this litigation is whether Freeman is obligated to participate in the 1974 Pension Trust under the terms of the 2007 Agreement between UMWA and BCOA/Consol.  Accordingly, Freeman stands on its objections to these requests.  Without waiving such objections, Freeman will provide BCOA with copies of its 1998 and 2003 agreements with UMWA if BCOA does not possess these materials.

**Document Requests Nos. 7, 8, and 9**:  BCOA asserts in its letter that these requests seek "various communications between Freeman and BCOA involving the UMWA 1974 Pension Trust from 1997 to the present."  However, BCOA's actual document requests are not similarly limited in scope.  Request No. 9 seeks "[a]ll correspondence and communications between Freeman and BCOA concerning the UMWA 1974 Pension Trust," and has no time limitation.  To the extent that these requests are in fact limited in scope as BCOA has stated in its letter, BCOA has failed to explain why such communications from 1997 to present are relevant to this litigation.  Likewise, BCOA has failed to explain why BCOA would not be in possession of any communications that exist between Freeman and BCOA.  The burden of locating and producing these documents is the same for BCOA as for Freeman and BCOA.  Nevertheless, without

Peter Buscemi
Stanley F. Lechner
Charles P. Groppe
February 6, 2008
Page 3

waiving its objections, Freeman will collect and produce such documents (from 1997/1998 to present) to the extent they exist.

**Document Request No. 10**:    BCOA seeks "[a]ll correspondence and communications concerning Freeman's participation in the 1974 Pension Trust from 1998 to the present." BCOA feigns indignation at Freeman's objection based on the relevance of these materials and "reminds Freeman that this case involves Freeman's contractual obligation to contribute to the 1974 Pension Trust under the evergreen clause, an obligation that Freeman incurred because of its continued participation in the 1974 Pension Trust from at least 1978 until its sale of its mining operation in August 2007." Freeman needs no reminder of what this litigation is about. There is no issue at all in this litigation with respect to Freeman's participation in the 1974 Pension Trust up until the time the Trust began demanding contributions at the rate set forth in the 2007 Agreement. Therefore, Freeman's participation in the 1974 Pension Trust prior to the start of this litigation is not relevant and is not at issue in this litigation. Without waiving its objections, Freeman will collect and produce non-privileged responsive documents to the extent they exist.

**Document Requests Nos. 11 and 12**: BCOA seeks "information related to the economic impact the contribution obligation to the UMWA 1974 Pension Trust has had on Freeman and other companies." BCOA asserts that such requests are relevant to this litigation because Freeman has itself put in issue the economic effect of the 1974 Pension Trust contributions and posed similar requests to BCOA. BCOA's request ignores, however, two points. First, at issue in Count II of Freeman's complaint is whether BCOA breached a duty owed to Freeman by setting unreasonable and unjustified contribution rates not whether Freeman breached a duty to BCOA. Thus, BCOA fails to explain how Freeman's own requests to BCOA render like requests to Freeman relevant to any issue in this litigation. Further, to the extent that BCOA's requests are relevant to Freeman's claim for damages against BCOA, the Court's scheduling order in this case provides that "[n]o discovery with respect to damages . . . shall take place unless by agreement of the parties or Order of the Court." Nevertheless, without waiving any of its objections, Freeman states that it will collect and produce non-privileged documents responsive to these requests to the extent that such documents exist.

**Document Request No. 20**: BCOA seeks "[a]ll documents concerning any withdrawal liability owed or potentially owed by Freeman to the 1974 Pension Trust from January 1, 1997 to the present." BCOA states that on "information and belief, Freeman's concerns about any potential withdrawal liability predate the filing of its complaint in this case, and such information certainly is relevant to BCOA's defenses." However, BCOA has failed to articulate why this information is relevant to its defenses. As Freeman stated in its response, at most this information would be relevant to Freeman's claim for damages against BCOA, but the Court's scheduling order in this case provides that "[n]o discovery with respect to damages . . . shall take place unless by agreement of the parties or Order of the Court." Without waiving any of its objections, Freeman states that it will collect and produce non-privileged documents responsive to these requests to the extent that such documents exist.

Peter Buscemi
Stanley F. Lechner
Charles P. Groppe
February 6, 2008
Page 4

**Document Request No. 24**: BCOA seeks "[a]ny documents concerning BCOA's alleged role as Freeman's agent during negotiation of contribution rates to the 1974 Pension Trust or other UMWA Health & Retirement Funds from January 1, 1997 to the present." Freeman objected to this request on the grounds that, *inter alia*, it called for information in documents created or maintained by BCOA, for information already in BCOA's possession, or for information readily accessible to BCOA. In response, BCOA stated that it is "not aware of any documents that would establish this relationship, and certainly does not possess any such documents." Freeman refers BCOA to: (i) Freeman's Response to Defendants Motion to Dismiss and/or Transfer, filed in the Central District of Illinois on April 16, 2007 (which set forth at length the basis of the agency relationship between BCOA and Freeman); (ii) Judge Scott's Order issued on May 25, 2007 (denying BCOA's motion to dismiss Count II of Freeman's Complaint and stating that "the parties clearly intended that some obligations would survive the termination of Freeman's membership in the BCOA"); (iii) the evergreen clause, as well as the NBCWAs of 1978, 1981, 1984, 1988, and 1993, to which Freeman was a signatory while a member of BCOA; and (iv) the Court's decisions in *United Mine Workers of America 1974 Pension Trust v. Pittston Co.*, 793 F. Supp. 339 (D.D.C. 1992), *aff'd, United Mine Workers of America 1974 Pension Plan, et al. v. Pittston Co.*, 984 F.2d 469 (D.C. Cir.), *cert. denied,* 509 U.S. 924 (1993) ("Pittston"), and *United Mine Workers of America 1950 Ben. Plan and Trust v. BCOA*, 898 F.2d 177 (D.C. Cir. 1990). If BCOA would like Freeman to supply it with any of these documents, please let us know and we would be happy to do so. In addition, Freeman states that additional responsive documents include the documents Freeman received in response to its own discovery requests in this litigation. Pursuant to Instruction No. 6 of BCOA's requests, Freeman need not provide such materials to BCOA.

**Document Request No. 30**: BCOA seeks "[a]ll documents concerning the statements made by Stanhagen in his Declaration." As Freeman noted in its response to Request No. 29, there were no documents reviewed or relied upon in the preparation of the Stanhagen Declaration. Freeman hereby states (as it already did in response to Request No. 30) that the documents in its possession concerning the statements made by Stanhagen in his Declaration are documents Freeman has received in response to its own discovery requests and Freeman need not produce them to BCOA.

**Document Requests Nos. 34, 35, and 36**: Freeman stands on its objections to these irrelevant requests. BCOA's bald assertion that it is "entitled to any documents Freeman possesses about this eligibility dispute," without in any way explaining what this eligibility dispute has to do with the instant lawsuit does not establish the relevance of the materials requested. Accordingly, Freeman awaits further clarification from BCOA as to the purported relevance of this material.

BCOA also asserts that Freeman has "failed to respond properly to BCOA's requests for admissions." In particular, BCOA takes issue with Freeman's responses to requests 24, 25, 26, 27, 28, and 29 and demands that if Freeman has any documents related to the subject matter of

Peter Buscemi
Stanley F. Lechner
Charles P. Groppe
February 6, 2008
Page 5

these requests, Freeman should admit such and produce them immediately. As is evident from Freeman's responses to Requests No. 18 and 22, which are incorporated in Freeman's responses to each of the foregoing Requests, Freeman is in possession of documents relating to BCOA's duties to Freeman. As discussed above, Freeman presumes that BCOA is in possession of these materials: Freeman's Response to Defendants Motion to Dismiss and/or Transfer, filed in the Central District of Illinois on April 16, 2007 (which set forth at length the basis of the agency relationship between BCOA and Freeman); Judge Scott's Order issued on May 25, 2007 (denying BCOA's motion to dismiss Count II of Freeman's Complaint and stating that "the parties clearly intended that some obligations would survive the termination of Freeman's membership in the BCOA"); the evergreen clause, as well as the NBCWAs of 1978, 1981, 1984, 1988, and 1993, to which Freeman was a signatory while a member of BCOA; and the Court's decisions in *United Mine Workers of America 1974 Pension Trust v. Pittston Co.*, 793 F. Supp. 339 (D.D.C. 1992), *aff'd*, *United Mine Workers of America 1974 Pension Plan, et al. v. Pittston Co.*, 984 F.2d 469 (D.C. Cir.), *cert. denied*, 509 U.S. 924 (1993) ("*Pittston*"), and *United Mine Workers of America 1950 Ben. Plan and Trust v. BCOA*, 898 F.2d 177 (D.C. Cir. 1990). If BCOA requires copies of these materials, please advise. Additional responsive documents include the documents Freeman received in response to its own discovery requests in this litigation. Pursuant to Instruction No. 6 of BCOA's requests, Freeman need not provide such materials to BCOA.

If you have any questions regarding the foregoing, please feel free to contact me.

Very truly yours,

Jessica Ring Amunson

cc:     Counsel of Record (via email)