IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Holland, et al., <br><br> Plaintiff, <br><br> v. <br><br> Freeman United Coal Mining Company, et al., <br><br> Defendants. | Case No. 07-cv-490 (PLF/AK) |
| Freeman United Coal Mining Company, <br><br> Plaintiff, <br><br> v. <br><br> United Mine Workers of America, et al., <br><br> Defendants. | Case No. 07-cv-1050 (PLF/AK) |

**BCOA'S REPLY IN SUPPORT OF ITS MOTION
TO COMPEL DISCOVERY AND FOR USE PRECLUSION**

In its Opposition to BCOA's Motion to Compel Discovery and For Use Preclusion ("Opposition"), Freeman United Coal Mining Company ("Freeman") persists in the conceit that one set of rules applies to Freeman and another to everyone else involved in this litigation. For example,

- Freeman sought and obtained the production of many thousands of pages of documents from parties and non-parties, yet it refused to produce *a single page* itself until *after* BCOA moved to compel, two days before the close of fact discovery;

- Freeman sought and obtained the broadest possible latitude for its own discovery, even going so far as to argue that the Federal Rules permit Freeman to pursue boundless discovery untethered to its claims, *see, e.g.*, Docket No. 43 (Freeman's Opposition to BCOA's and UMWA's Motions for Protective Orders), at 8 (asserting that "relevancy" during discovery should be broadly construed and given "liberal treatment"), yet in responding to BCOA's document requests, Freeman has sought to confine the inquiry within a scope far narrower than Freeman's own claims;

- Without any prior conference among counsel on the subject, Freeman moved to compel additional document discovery from BCOA and the UMWA, yet Freeman now complains about BCOA's filing a motion to compel using the very same procedure; and

- Even after BCOA wrote to inquire as to the whereabouts of Freeman's document production, Freeman refused to provide any information about when documents would be produced, yet Freeman now contends that BCOA somehow should have divined that some documents would be produced on the final day of fact discovery.

Fortunately, courts can ensure that the same rules apply to everyone, and that a single arrogant litigant cannot simply declare what it will or will not do during the course of litigation. Freeman should not be permitted to rely on its production or representations *after* the filing of BCOA's motion to compel as a basis for opposing that motion. Nor should Freeman be permitted to disregard the claims asserted in its own Complaint, as a basis for refusing to produce the materials sought by BCOA. And, given Freeman's

flouting of its discovery obligations, BCOA should not be required to rely on Freeman's current disclaimer of any intention to use any materials not produced in discovery. Rather, the Court should enter an order precluding such use, to avoid any future dispute on the subject.

No amount of words stitched together by Freeman can disguise the fact that, when BCOA filed its Motion to Compel two days before the close of fact discovery, Freeman had failed to produce a single document in response to BCOA's document requests. Since the filing of BCOA's Motion, Freeman has produced approximately 900 pages of materials by e-mail only (including approximately 300 pages after Freeman filed its present Opposition.) Moreover, it was not until BCOA moved to compel and Freeman filed its Opposition that Freeman stated that it had either no documents or no additional documents responsive to several of BCOA's outstanding requests.

Even taking into account Freeman's production and representations after the filing of BCOA's Motion to Compel, BCOA still has not received proper responses to five of its outstanding requests. Accordingly, BCOA requests that the Court order Freeman to respond fully to its Request Nos. 1, 2, 3, 5, and 6, and issue an order precluding Freeman from using or introducing in the future any material that Freeman has not produced in response to BCOA's document requests.

I. **FREEMAN CANNOT RELY ON STATEMENTS ABOUT ITS CONDUCT AFTER BCOA FILED ITS MOTION AS A BASIS FOR OPPOSING BCOA'S MOTION.**

In its Opposition, Freeman makes much of the fact that, at least according to Freeman, many of the issues raised by BCOA are now moot because Freeman has produced to BCOA some documents and provided additional responses to BCOA's outstanding document requests in its Opposition. But none of these documents were

3

produced, and none of these additional responses were provided, until after BCOA was obliged to file its Motion. Without that Motion, BCOA in all likelihood still would not have received a single document from Freeman.

Between January 18, 2008, the initial due date for Freeman's responses, and February 16, 2008, the day BCOA filed its Motion, Freeman responded to BCOA's inquiries about the status of Freeman's responses with bland assurances designed to disguise Freeman's utter failure to provide meaningful responses to BCOA's discovery. Among other things:

- Freeman initially told BCOA on January 18, 2008 that it would produce documents in response to four of BCOA's 36 document requests "to the extent such documents exist," only to reveal on February 6, 2008 that in fact it had no such responsive documents;

- Freeman also objected to 11 other requests on January 18, only to promise on February 6 that it actually would produce documents in response to these requests. Not until its present Opposition, however, did Freeman reveal that again, it really had no documents responsive to these requests.

- After receiving Freeman's January 18 responses, BCOA asked that Freeman clarify whether the documents identified in response to numerous of its requests were the only responsive documents that Freeman had or whether additional documents existed. Freeman provided no clarification until filing its present Opposition.

- Among other requests, BCOA sought information related to Freeman's 1998 and 2003 stand-alone collective bargaining agreements with the UMWA that continued Freeman's participation in the 1974 Pension Trust after Freeman withdrew from BCOA's membership. *See* Document Request Nos. 5 and 6 (attached as Exhibit 1 to BCOA's Motion). In its January 18 responses, Freeman asserted several objections to these requests, including an objection that alleged that Freeman's "participation" in the 1974 Pension Trust and its "agreement" to incorporate the 1974 Pension Trust's governing documents in the 1998 and 2003 bargaining agreements had not yet been "established." *See* Responses to Request Nos. 5 and 6 (attached as Exhibit 2 to BCOA's Motion). In its present Opposition, however, Freeman has reversed course and objected to these requests on relevance grounds, claiming that "[t]here is no issue in this litigation with regard to Freeman's participation in the 1974 Trust under the terms of the 1998 and 2003 Freeman Agreements."

4

Despite Freeman's repeated representations that it would produce material, it had not done so by Friday, February 15, 2007, the last business day of the extended discovery period that Freeman itself had requested to complete its own discovery. As a consequence, BCOA had no choice but to file its present Motion on February 16.

Only then did Freeman e-mail BCOA approximately 400 pages of material at approximately 8:30 pm on February 18, a federal holiday that Freeman itself had requested as the last official day of the discovery period. Freeman then e-mailed BCOA another 200 pages of documents at 5:30 p.m. on February 19. Not until its present Opposition, however, did Freeman explain that it either had no documents in response to 12 of BCOA's outstanding requests or that the documents that it previously identified were the only documents Freeman knew of that were responsive to BCOA's requests. *See* Opposition at 4-6 (discussing Request Nos. 7, 8, 9, 18, 19, 21, 22, 24, 25, 26, 27, and 28). Moreover, contrary to Freeman's representation in its Opposition that BCOA's Motion was rendered moot by Freeman's belated production on February 18 and February 19, Freeman produced another 300 pages of materials at approximately 8 p.m. on Friday, February 22, 2008, two days after filing its Opposition.

Freeman's effort now to use this sequence of events – that only demonstrates the need for BCOA's Motion to Compel – as a justification for denying that Motion is unfounded.

II. **FREEMAN'S ATTEMPT TO REFRAME THE ISSUES AND LIMIT THE SCOPE OF DISCOVERY IGNORES ITS CLAIMS ASSERTED IN THE COMPLAINT AND ITS PRIOR REPRESENTATIONS TO THE COURT REGARDING THE NEED FOR BROAD DISCOVERY.**

In its Opposition, Freeman also contends that much of BCOA's discovery is not relevant to the claims Freeman itself has raised in this case. In appointing itself the

5

guardian of relevancy here, however, Freeman conveniently has ignored the very issues raised in its own complaint, as well as the arguments Freeman itself previously made to the Court concerning the proper scope of discovery.

First, in its effort to thwart BCOA's discovery, Freeman claims that the "principal" issue in this case is whether the National Bituminous Coal Wage Agreement ("NBCWA") of 2007 is a "successor agreement" to prior NBCWAs within the meaning of the evergreen clause. Opposition at 1. Even if Count I of Freeman's Complaint were so limited (and did not encompass, as it does, the broader issue whether Freeman has an obligation to contribute to the 1974 Pension Trust in accordance with, among other things, the evergreen clause, the governing plan and trust documents, and the terms of Freeman's own collective bargaining agreements negotiated with the UMWA in 1998 and 2003), Freeman's characterization of this case ignores Count II, which seeks to impose liability on BCOA for some alleged breach of a duty allegedly owed Freeman as a former BCOA member. Given those allegations, BCOA posed several requests to Freeman addressing the nature of this purported agency relationship. *See*, *e.g.*, Document Request Nos. 3, 24. Freeman, however, completely ignoring its own Count II, has objected on relevance grounds to providing any materials to BCOA.

Freeman also seeks to severely limit the scope of discovery in a manner directly at odds with Freeman's prior efforts to expand discovery in this case. In its own motion to compel filed on November 22, 2007, Freeman requested that the Court give it wide latitude in exploring the bargaining history of both the 2002 and 2007 NBWAs, the structure of BCOA, and other topics far removed from Freeman's contribution obligation to the 1974 Pension Trust. Since the Court granted in part Freeman's motion in

6

December 2008, Freeman has taken discovery over, among other things, how many times a year BCOA holds its annual meeting; the mode of transportation taken by BCOA representatives to one such meeting in Pittsburgh; the relative size of the office space BCOA has leased over the last 30 years; the salaries of BCOA's employees; and a host of other topics far removed from Freeman's obligation to contribute now to the 1974 Pension Trust, *see, e.g.*, *Flynn v. Dick Corp.*, 384 F. Supp. 2d 189, 195 (D.D.C., *rev'd on other grounds*, 481 F.3d 824, 827 n.2 (D.C. Cir. Mar. 20, 2007) (discussing factors useful in determining whether collective bargaining agreement is a "successor" agreement), or the existence and nature of any alleged duty BCOA may owe its former member.

In its Opposition, however, Freeman now implies that virtually none of the discovery it has sought in this case has any relevance to its claims. Instead, Freeman represents that the only discovery that is necessary to determine its obligation to contribute under the evergreen clause is discovery directed at the "*intent of the parties involved in negotiating the clause*" back in 1978. Opposition at 2 (emphasis in original). Freeman's attempt to slam the door on BCOA's efforts to take meaningful discovery addressing all the issues raised in the Complaint is hypocritical, and directly contrary to what it previously told the Court when seeking its own discovery.

### III.   THE OUTSTANDING DISCOVERY THAT BCOA SEEKS

Despite Freeman's representations in its Opposition that BCOA's Motion is now moot, Freeman continues to assert baseless objections to several of BCOA's document requests and has produced few, if any, documents in response to them. As discussed below, Freeman's remaining objections are baseless, and BCOA requests that the Court order Freeman to produce all relevant materials within 7 days of the entry of an order compelling such production:

7

A.  **Document Request No. 3: Freeman's Communications after January 1, 1997 with other Coal Companies regarding BCOA.**

Freeman continues to object on relevance grounds to provide documents responsive to this request.[1] In Count II of its Complaint, however, Freeman alleges that BCOA breached some duty it owed Freeman when it negotiated the contribution rate for the 1974 Pension Trust that is set forth in the 2007 NBCWA. BCOA is entitled to explore this alleged agency relationship and specifically what Freeman may have said to other coal companies about BCOA, its alleged agent. In addition, BCOA is entitled to explore whether Freeman in fact ever viewed BCOA as its agent at any point prior to its filing this lawsuit.

B.  **Document Request Nos. 5 and 6: All Documents and Communications With or Involving the UMWA Related to (1) Freeman's Continued Participation in the 1974 Pension Trust after Withdrawing from BCOA and (2) Its 1998 and 2003 Bargaining Agreements that Incorporate the 1974 Pension Trust's Governing Trust Documents.**

Freeman refuses to produce any documents in response to these two document requests even though Freeman directly negotiated with the UMWA over its continued participation in the 1974 Pension Trust and agreed to incorporate the 1974 Plan's governing Trust documents in its 1998 and 2003 "Freeman-UMWA" bargaining agreements.[2] These materials are relevant among other reasons to shed light on what Freeman understood was the extent of its participation in the UMWA 1974 Pension Trust; its obligations regarding any future contribution requirements incorporated in the

---

[1]  Document Request No. 3 seeks "[a]l documents concerning Freeman's communications after January 1, 1997 with other bituminous coal companies regarding BCOA."

[2]  Document Request No. 5 seeks "[a]ll correspondence and communications between Freeman and the UMWA concerning Freeman's participation in the 1974 Pension Trust as agreed to in the 1998 and 2003 Freeman Agreements." Document Request No. 6 seeks "[a]ll documents concerning Freeman's agreement to incorporate the 1974 Trust documents into its 1998 and 2003 Agreements with the UMWA."

8

Trust documents; its understanding of what BCOA's role would be, if any, with respect to the Trust; and what information, if any, the UMWA provided to Freeman regarding the UMWA's understanding of what constitutes a "national agreement."

C. **Document Request Nos. 1 and 2: All Communications and Documents Regarding Freeman's Recent Sale of its Mining Operations to Springfield Coal Company LLC.**

To date, Freeman has produced only heavily-redacted copies of the actual asset purchase agreement between Freeman and Springfield Coal, the entity that recently purchased Freeman's mining operations. Freeman has objected to producing any other documents in response to these requests on the grounds that such material is not relevant to its claims.[3] This objection is baseless, for, among other things, Freeman's representations about its on-going obligation to the 1974 Pension Plan, the relative merits of this lawsuit, and the effect of Freeman's on-going liability on the overall transaction are relevant to BCOA's defenses in this action.

## CONCLUSION

For all of the foregoing reasons, and for the reasons contained in BCOA's Motion, BCOA requests that the Court grant its motion to compel and enter an order requiring Freeman to produce responsive documents within seven days of the entry of the Court's Order. BCOA also requests that the Court preclude Freeman from using or introducing any material not produced in response to any of BCOA's document requests. In addition, in light of Freeman's complete disregard of its discovery obligations, BCOA

---

[3] Document Request 1 seeks "[a]ll documents concerning the sale of Freeman's coal mining operations to the Springfield Coal Company LLC in August 2007." Document Request No, 2 seeks "[a]ll documents concerning any communications between Freeman and Springfield Coal Company LLC related to the 1974 Pension Trust."

9

renews its request that it be awarded attorneys' fees and costs incurred in connection with this motion.

                                        Respectfully submitted,

DATED: February 28, 2008

                                         /s/
                            Peter Buscemi
                            D.C. Bar No. 269092
                            Stanley F. Lechner
                            D.C Bar No. 370986
                            Charles P. Groppe
                            D.C. Bar No. 464035

                            MORGAN, LEWIS & BOCKIUS LLP
                            1111 Pennsylvania Ave., NW
                            Washington, DC 20004
                            Tel:   (202) 739-3000
                            Fax:  (202) 739-3001
                            E-mail: pbuscemi@morganlewis.com
                                          slechner@morganlewis.com
                                          cgroppe@morganlewis.com

                            *Counsel for Defendant*
                            Bituminous Coal Operators' Association, Inc.